**GIBSON, DUNN & CRUTCHER LLP**
BRIAN M. LUTZ, SBN 255976
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306
blutz@gibsondunn.com

LISSA M. PERCOPO (*pro hac vice*)
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Telephone: 202.887.3770
Facsimile: 202.530.9528
lpercopo@gibsondunn.com

**SIDLEY AUSTIN LLP**
SARA B. BRODY, SBN 130222
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: 415.772.1200
sbrody@sidley.com

*Attorneys for Defendants HP Inc., Dion J. Weisler, Catherine A. Lesjak, Steven J. Fieler, Enrique Lores, and Christoph Schell.*

*Additional counsel on following page*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE HP INC. SECURITIES LITIGATION | Case No. 3:20-cv-01260-SI<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Date: February 5, 2021<br>Time: 10:00 A.M.<br>Location: Courtroom 1, 17th Floor<br>Judge: Hon. Susan Illston<br><br>Date Action Filed: February 19, 2020 |

**WILSON SONSINI GOODRICH & ROSATI**
STEVEN SCHATZ, SBN 118356
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050
Telephone:  650.320.4856
SSchatz@wsgr.com

KATHERINE HENDERSON, SBN 242676
ONE MARKET PLAZA
SPEAR TOWER, SUITE 3300
SAN FRANCISCO, CA 94105-1101
Telephone:  415.947.2065
KHenderson@wsgr.com

*Attorneys for Defendant Catherine A. Lesjak*

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ............................................................................................ 1

II. ARGUMENT ................................................................................................................... 3

    A.    The Opposition Fails To Identify Contemporaneous Facts Raising A Strong Inference Of Scienter As To Any Defendant ...................................... 3

        1.    Familiarity With The Four Box Model Does Not Amount To Scienter ................................................................................................ 3

        2.    Defendants' 2019 Statements Do Not Support A Strong Inference Of Scienter .......................................................................... 7

        3.    Hearsay From A Single Confidential Witness Who Never Interacted With The Individual Defendants Does Not Support An Inference of Scienter .................................................................... 8

        4.    The Opposition Confirms That The Complaint Fails To Allege A Core Operations Theory ............................................................ 11

        5.    Plaintiffs Do Not Plead Facts Supporting A Deliberate Recklessness Theory .................................................................... 13

        6.    Plaintiffs' Remaining Arguments Fail To Show That The Complaint Pleads A Strong Inference Of Scienter ...................... 14

    B.    The Opposition Confirms That Plaintiffs Fail To Plead An Actionable Misstatement ....................................................................... 16

        1.    The Vast Majority Of Challenged Statements Are Inactionable Forward-Looking Statements ...................................... 17

        2.    The Opposition Confirms That Statements About The Reliability And Predictive Capability Of The Four Box Model Are Inactionable Opinion Statements ............................................ 22

        3.    The Opposition Points To No Facts That Render Any Of The Remaining Statements False When Made .................................... 23

    C.    The Opposition Cannot Salvage Plaintiffs' Claims Under Section 20(a) Or Section 20A ......................................................................... 25

CONCLUSION .................................................................................................................. 25

Gibson, Dunn & Crutcher LLP

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Adaptive Broadband Sec. Litig.*,
2002 WL 989478 (N.D. Cal. Apr. 2, 2002) ...................................................................15

*Alfus v. Pyramid Tech. Corp.*,
745 F. Supp. 1511 (N.D. Cal. 1990) ...........................................................................25

*In re Am. Apparel, Inc. S'holder Litig.*,
855 F. Supp. 2d 1043 (C.D. Cal. 2012) .........................................................................6

*Applestein v. Medivation, Inc.*,
2011 WL 3651149 (N.D. Cal. Aug. 18, 2011)...........................................................14, 15

*In re Aqua Metals, Inc. Sec. Litig.*,
2019 WL 3817849 (N.D. Cal. Aug. 14, 2019)..................................................................16

*In re AST Research Sec. Litig.*,
887 F. Supp. 231 (C.D. Cal. 1995) ...............................................................................25

*In re Atlas Mining Co., Sec. Litig.*,
670 F. Supp. 2d 1128 (D. Idaho 2009)............................................................................7

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008)........................................................................................12

*Bielousov v. GoPro, Inc.*,
2017 WL 3168522 (N.D. Cal. July 26, 2017)................................................................19

*In re Boeing Sec. Litig.*,
40 F. Supp. 2d 1160 (W.D. Wash. 1998).......................................................................19

*Broderick v. PricewaterhouseCoopers LLP*,
169 F. App'x 496 (9th Cir. 2006) ..................................................................................7

*Cement Masons & Plasterers Joint Pension Tr. v. Equinix, Inc.*,
2012 WL 685344 (N.D. Cal. Mar. 2, 2012)..................................................................21

*In re Century Aluminum Sec. Litig.*,
749 F. Supp. 2d 964 (N.D. Cal. 2010) ...........................................................................5

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017)...........................................................................20, 22, 23

*City of Westland Police and Fire Ret. Sys. v. Sonic Sols.*,
2009 WL 942182 (N.D. Cal. Apr. 6, 2009) ...................................................................25

ii

Gibson, Dunn &
Crutcher LLP

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132 (C.D. Cal. 2008) ..............................................................................25

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010)............................................................................................22

*In re CV Therapeutics, Inc.*,
   2004 WL 1753251 (N.D. Cal. Aug. 5, 2004)......................................................................18

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005)..............................................................................................7

*Desai v. Gen. Growth Props., Inc.*,
   654 F. Supp. 2d 836 (N.D. Ill. 2009) ..................................................................................19

*In re ECOtality, Inc. Sec. Litig.*,
   2014 WL 4634280 (N.D. Cal. Sept. 16, 2014) ...................................................................11

*Gammel v. Hewlett-Packard Co.*,
   2013 WL 1947525 (C.D. Cal. May 8, 2013) ......................................................................11

*Harris v. Ivax Corp.*,
   182 F.3d 799 (11th Cir. 1999)............................................................................................19

*In re Int'l Rectifier Corp. Sec. Litig.*,
   2008 WL 4555794 (C.D. Cal. May 23, 2008) ......................................................................5

*Iron Workers Local 580 Joint Funds v. Nvidia Corp.*,
   2020 WL 1244936 (N.D. Cal. Mar. 16, 2020)....................................................................11

*Kipling v. Flex Ltd.*,
   2020 WL 2793463 (N.D. Cal. May 29, 2020) .....................................................................19

*In re LeapFrog Enters., Inc. Sec. Litig.*,
   527 F. Supp. 2d 1033 (N.D. Cal. 2007) ..............................................................................19

*Lloyd v. CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016)........................................................................................9, 10

*McCasland v. FormFactor Inc.*,
   2008 WL 2951275 (N.D. Cal. July 25, 2008).....................................................................17

*Mulligan v. Impax Labs., Inc.*,
   36 F. Supp. 3d 942 (N.D. Cal. 2014) ..................................................................................12

*Nguyen v. Endologix*,
   962 F.3d 405 (9th Cir. 2020)...................................................................................5, 12, 14

*Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*,
   2018 WL 3126393 (N.D. Cal. June 26, 2018) ....................................................................11

iii

Gibson, Dunn &
Crutcher LLP

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004).................................................................................................7

*In re NVIDIA Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014)...................................................................................11, 12, 15

*In re NVIDIA*,
  2011 WL 4831192 (N.D. Cal. Oct. 12, 2011)...........................................................................12

*Oklahoma Police Pension & Ret. Sys. v. LifeLock, Inc.*,
  780 F. App'x 480 (9th Cir. 2019) .............................................................................................9

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)............................................................................................................22, 23

*Paciga v. Invuity Inc.*,
  2019 WL 3779694 (N.D. Cal. Aug. 12, 2019)...........................................................................5

*In re Pivotal Sec. Litig.*,
  2020 WL 4193384 (N.D. Cal. July 21, 2020).........................................................................12

*In re PMI Group, Inc. Sec. Litig.*,
  2009 WL 3681669 (N.D. Cal. Nov. 2, 2009).............................................................................6

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014)......................................................................................5, 9, 19

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
  2012 WL 1868874 (N.D. Cal. May 22, 2012) ........................................................................19

*Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*,
  732 F. App'x 543 (9th Cir. 2018) ...........................................................................................19

*Provenz v. Miller*,
  102 F.3d 1478 (9th Cir. 1996)................................................................................................20

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017).............................................................................................6, 18, 21

*Rabkin v. Lion Biotechnologies, Inc.*,
  2018 WL 905862 (N.D. Cal. Feb. 15, 2018)...........................................................................12

*In re Rackable Sys., Inc. Sec. Litig.*,
  2010 WL 3447857 (N.D. Cal. Aug. 27, 2010)........................................................................6, 8

*Reese v. Malone*,
  747 F.3d 557 (9th Cir. 2014)...............................................................................................6, 13

*Robb v. Fitbit Inc.*,
  2017 WL 219673 (N.D. Cal. Jan. 19, 2017) ...........................................................................10

iv

Gibson, Dunn &
Crutcher LLP

*Roberti v. OSI Sys., Inc.*,
   2015 WL 1985562 (C.D. Cal. Feb. 27, 2015).................................................................................6, 20

*Roberts v. Zuora, Inc.*,
   2020 WL 2042244 (N.D. Cal. Apr. 28, 2020) ....................................................................................20

*Rodriquez v. Gigamon Inc.*,
   325 F. Supp. 3d 1041 (N.D. Cal. 2018) ..............................................................................................19

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001).................................................................................................4, 14, 23

*S. Ferry LP, # 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008)..............................................................................................................11

*S. Ferry LP #2 v. Killinger*,
   687 F. Supp. 2d 1248 (W.D. Wash. 2009)..................................................................................7, 13

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999)..............................................................................................................14

*Tarapara v. K12 Inc.*,
   2017 WL 3727112 (N.D. Cal. Aug. 30, 2017).....................................................................................16

*In re Twitter, Inc. Sec. Litig.*,
   2020 WL 7260479 (N.D. Cal. Dec. 10, 2020) ...........................................................................4, 12

*Veal v. LendingClub Corp.*,
   2020 WL 3128909 (N.D. Cal. Jun. 12, 2020) ....................................................................................10

*Veal v. LendingClub Corp.*,
   423 F. Supp. 3d 785 (N.D. Cal. 2019) .................................................................................................9

*In re Verifone Sec. Litig.*,
   784 F. Supp. 1471 (N.D. Cal. 1992) ..................................................................................................25

*Waterford Twp. Police v. Mattel, Inc.*,
   321 F. Supp. 3d 1133 (C.D. Cal. 2018) .............................................................................................19

*Webb v. Solarcity Corp.*,
   884 F.3d 844 (9th Cir. 2018)..............................................................................................................11

*Welgus v. TriNet Grp., Inc.*,
   2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) .............................................................................15, 18

*Wochos v. Tesla, Inc.*,
   2018 WL 4076437 (N.D. Cal. Aug. 27, 2018)....................................................................................20

*Wozniak v. Align Tech., Inc.*,
   850 F. Supp. 2d 1029 (N.D. Cal. 2012) ...............................................................................................5

v

Gibson, Dunn &
Crutcher LLP

*Wyatt v. Mattel, Inc.*,
  2020 WL 364324 (C.D. Cal. Jan. 21, 2020) .............................................................................................19

*Xu v. Chinacache Int'l Holdings Ltd.*,
  2016 WL 4370030 (C.D. Cal. Aug. 15, 2016).........................................................................................19

*Yourish v. Cal. Amplifier*,
  191 F.3d 983 (9th Cir. 1999)......................................................................................................................7

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009)..................................................................................5, 8, 10, 12, 15

**Statutes**

15 U.S.C. § 78u-5...............................................................................................................................18, 20

Gibson, Dunn &
Crutcher LLP

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Case No. 3:20-cv-01260-SI

## I.    PRELIMINARY STATEMENT

In their opposition brief, Plaintiffs double down on their unsupported and implausible theory of fraud: that for over two years, Defendants intentionally lied to investors about the reliability of HP's model for projecting the future performance of the Supplies business.  But this theory cannot be reconciled with the years of accurate projections generated by the Four Box Model and Defendants' corresponding confidence in it.  Pointing to generic statements about the model and how it worked, Plaintiffs argue that the Defendants must have had "actual knowledge" about gaps in the underlying data that fed into the model and must have known that the model would be unable to detect changes in buyer behavior, leading to missed projections in 2019.  To support that argument Plaintiffs contort what HP's leadership actually said in February 2019—that they were "surprised" when "new data" showed that the model had overestimated HP's market share and that Supplies revenue would contract going forward—into an "admission" that Defendants knew all along that the Four Box Model was unreliable despite the undisputed fact that the model reliably predicted revenues for the prior two years.  That Plaintiffs resort to such contortions underscores the defects in their Complaint. The inferences they seek are implausible and insufficient under the PSLRA.

To plead scienter, Plaintiffs must allege particularized facts demonstrating each Defendant contemporaneously knew or was deliberately reckless in not knowing that throughout 2017 and 2018, the Four Box Model actually was unreliable because it was missing certain data, and that each Defendant nonetheless continued making projections about HP's Supplies business based on the model.  To plead falsity, Plaintiffs also must allege particularized facts demonstrating that the challenged statements were false or misleading when made, and that the projections and underlying assumptions fall outside the PSLRA's safe harbor.  They must also allege that Defendants did not believe their opinions concerning the reliability of the model or plead particularized, undisclosed facts about each Defendant's bases for those opinions that are so at odds with the challenged statements as to render them actionable.  None of Plaintiffs' arguments rebut Defendants' demonstration that Plaintiffs failed to meet their pleading burden on all counts.

***Scienter***: Plaintiffs' primary argument is that Defendants' "statements and conduct" demonstrate that Defendants had "actual knowledge" that the "Four Box Model lacked telemetry data

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Case No. 3:20-cv-01260-SI

Gibson, Dunn &
Crutcher LLP

and could not accurately gauge HP's market share" during the putative class period.  Opp. 27-29, 34-35.  But Plaintiffs point to no facts—and none are alleged—showing that anyone at HP, much less any Individual Defendant, knew or consciously disregarded before February 2019 that data was missing from the model or that the missing data would impact the reliability of the model and its ability to accurately project demand and revenue in the Supplies business.  Plaintiffs simply ignore that the company had been consistently meeting projections based on this data—a fact that weighs strongly against any inference of scienter.  Indeed, Plaintiffs do not dispute that it was "new" telemetry data added to the model in February 2019—rather than data Defendants had previously known—that then revealed the model's limitations.  AC ¶ 340.  Plaintiffs' failure to plead that any Defendant was previously aware of any deficiency dooms their case.

Plaintiffs fare no better with their other scienter arguments.  Their heavy reliance on allegations attributed to an unnamed former employee is misplaced because (1) this person is not alleged to have had *any* contact with the Individual Defendants and, thus, has no personal knowledge bearing on their scienter, and (2) his or her hearsay comments have nothing to do with the model or any Defendant's knowledge of contemporaneous facts purportedly undermining its reliability.  Stock sales pursuant to 10b5-1 plans by two Defendants who *increased* their holdings during the putative class period *undermine* any inference of scienter for them (let alone the other Defendants).  Plaintiffs' "core operations" argument also fails for several reasons, including the absence of facts demonstrating that the technical inputs into the model (as opposed to its consistently reliable outputs) were so central to HP's business that it would be absurd to suggest that senior executives—none of whom worked on the technical side of the business—would not be aware of any gaps.

The bottom line is that Plaintiffs fail to plead *any* facts demonstrating that any Defendant knew or was deliberately reckless in not knowing that the model's projections were inaccurate or that Defendants' reliance on and belief in the reliability of the model was misplaced.  Given that HP met all of its projections for 2017 and 2018, any such inference is implausible.  *See* Mot. 7-8; *see also* AC ¶¶ 73, 89, 241, 247, 250.  The most plausible inference to be drawn from these facts is that the Individual Defendants meant what they said all along—that for two years, they believed the Four Box Model was a reliable tool for predicting Supplies revenue, and that they were "surprised" in

Gibson, Dunn & Crutcher LLP

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Case No. 3:20-cv-01260-SI

February 2019 when new data showed that the model's assumptions had not reflected recent changes in buyer behavior, particularly in overseas markets, and that revenue would stagnate going forward. Plaintiffs do not address this argument because it wholly undermines their scienter theory. Because Plaintiffs fail to plead specific facts giving rise to a strong inference that the Individual Defendants intentionally lied to investors or deliberately blinded themselves to particular facts that undermined the model's reliability, the Court should dismiss the Complaint.

***Falsity***: The Opposition also confirms that Plaintiffs have failed to plead any actionable misstatement. It attempts to reorganize the Complaint into six overlapping categories of allegedly false or misleading statements. This does nothing but add confusion and demonstrates that the Complaint is an impermissible puzzle pleading. Regardless of how the Complaint or Plaintiffs' description of it is organized or reorganized, none of the challenged statements are actionable.

Plaintiffs cannot dispute that the vast majority of the statements challenged in the Complaint are forward-looking statements regarding projections. *See* App. 1 (chart). Defendants' forward-looking statements are protected by the PSLRA safe harbor because they were accompanied by meaningful cautionary language that identified specific risks. While that ends the inquiry, Plaintiffs also fail to plead that Defendants made the statements with actual knowledge of their purported falsity. Plaintiffs also do not contest that Defendants' statements expressing "confidence" or "belief" in the Four Box Model are opinion statements. Because the Complaint fails to allege that these opinion statements were affirmative misrepresentations and contains no facts showing that they were misleading by omission, they are inactionable. Finally, the Opposition's focus on statements made after new information came to light, and Plaintiffs' contrived description of certain statements, does not change the fact that the Complaint fails to plead that any statement was false when made.

The Court should grant Defendants' motion to dismiss all claims.

## II. ARGUMENT

### A. The Opposition Fails To Identify Contemporaneous Facts Raising A Strong Inference Of Scienter As To Any Defendant

#### 1. Familiarity With The Four Box Model Does Not Amount To Scienter

Plaintiffs plead no facts demonstrating that the Individual Defendants received reports or other information before February 2019 indicating that the Four Box Model was unreliable, let alone

3

Gibson, Dunn &
Crutcher LLP

that any Defendant believed the model was unreliable. Instead Plaintiffs argue that because HP's senior-most officers "admitted" they had access to and relied on the Four Box Model as a business planning tool and had an understanding of the types of data inputs it utilized, they must have known about the sources, robustness, and gaps in the millions of pieces of data that fed into the model. Opp. 27-28 (citing AC ¶¶ 89-90, 107, 295-305). According to Plaintiffs, in light of this "admission," the Court should infer that the Defendants intentionally defrauded investors by relying on the Four Box Model and describing it as reliable. This argument, and the inference Plaintiffs ask this Court to adopt, is baseless and should be rejected.

Plaintiffs point to a handful of statements explaining the model and how it worked. Mr. Lores, for example, explained that the model used both "historical trends" and "other insights that we're gathering" and allowed HP to make predictions and view information at "a very granular level." *See* AC ¶¶ 89-90, 299; *see id.* ¶ 297 (Mr. Lores stating HP "constantly work[ed] to improve and to refine" the model). Mr. Weisler found a "spreadsheet" derived from the model "impress[ive]." *See id.* ¶¶ 107, 296; Mot. 7-8 (explaining model's accuracy in 2017 and 2018). Ms. Lesjak noted that "many of your printers phone home to us" and "broadly, we can see inside the ZIP code level." *See* AC ¶ 90. And Mr. Fieler explained that the model was "only getting better with incremental data and insight from our installed base." *Id.* ¶ 296. But what is missing are facts to show that any of the Defendants were aware of any *problem*.

At most, these statements and others like them indicate some basic level of familiarity with the Four Box Model, the kind of inputs it used, and that HP was working to add data to the model over time. These statements do not admit or even suggest that the Individual Defendants monitored the detailed inputs into, as opposed to the output from, the model. Nor do these statements admit that the Defendants were aware of *flaws* in the model before February 2019, or that data gaps meant that the financial projections derived from the model were incorrect. *See Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001) (alleged awareness of operational issues did not show that defendants knew those issues would result in declining revenues); *In re Twitter, Inc. Sec. Litig.*, 2020 WL 7260479, at *13 (N.D. Cal. Dec. 10, 2020) (no inference of scienter despite defendants receiving daily reports of

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Case No. 3:20-cv-01260-SI

Gibson, Dunn &
Crutcher LLP

key metrics where complaint failed to "describe with particularity the specific contents" of the data).[1]

Instead of providing such facts, Plaintiffs ask this Court to infer that because the Individual Defendants were familiar with the model, which canvassed millions of printers phoning home before February 2019, they must also have known about a gap in the model, understood the future consequences of that gap on the model's reliability, and deliberately concealed from investors that despite the accuracy of its projections throughout 2017 and 2018, HP would have to adjust its year-end Supplies revenue projection in 2019 down by a few percentage points.[2]  Opp. 27-30; *see also* AC ¶¶ 351, 354 (initial 2019 year-end projection was "flat to up slightly" and by August it was projected to be down 4 or 5%).  There are simply no facts to support such extraordinary and unsupported inferences of fraud.  *See Nguyen v. Endologix*, 962 F.3d 405, 415 (9th Cir. 2020) (rejecting scienter allegations because "the PSLRA neither allows nor requires us to check our disbelief at the door.").

Nor is there any legal basis to do so.  *See* Mot. 14-16; *see also Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014) ("[m]ere access" is insufficient to establish "a strong inference of scienter."); *In re Century Aluminum Sec. Litig.*, 749 F. Supp. 2d 964, 973 (N.D. Cal. 2010) ("access" to information does "not support the inference" that defendants knew about "error[s]" within that information); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000-01 (9th Cir. 2009), *as amended* (Feb. 10, 2009) ("Allegations that . . . management had access to the purportedly manipulated quarterly accounting numbers, or that the management analyzed the

---

[1]  Courts routinely dismiss allegations of access to internal reports on facts much stronger than those alleged.  *See, e.g.*, *Wozniak v. Align Tech., Inc.*, 850 F. Supp. 2d 1029, 1042 (N.D. Cal. 2012) (no inference of scienter when internal reports that defendants received daily had "'no hard numbers or other specific information'"); *Paciga v. Invuity Inc.*, 2019 WL 3779694, at *6 (N.D. Cal. Aug. 12, 2019) (no inference of scienter without allegations of "specific negative information garnered" from weekly meetings and daily reports that contradict defendants' public statements); *In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *14–15 (C.D. Cal. May 23, 2008) (no inference of scienter because daily review of reports is "no basis" to presume defendants "should have noticed an intermittent data entry omission" or were "aware of the significance of such data entry omission").

[2]  Plaintiffs' claims necessarily fail as to Ms. Lesjak, who stepped down as CFO eight months before in July 2018, *i.e.*, at a time when the projections had consistently been met.  *See* Mot. 13, n.3; AC ¶ 38.  Moreover, Plaintiffs fail to address more generally the facts undermining scienter for Ms. Lesjak.  *See* Mot. 13, n.3; 21, n.10; 23, n.11; 24, n.12.

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Case No. 3:20-cv-01260-SI

Gibson, Dunn & Crutcher LLP

inventory numbers closely, do not support the inference that management was in a position to know that such data was being manipulated."). In a footnote, Plaintiffs argue that *In re Century Aluminum* and *Zucco Partners* are distinguishable because these cases involve "abstruse accounting principles," and here the lack of "sufficient telemetry data . . . was readily apparent to Defendants from their use of the model." Opp. 29 n.14. Plaintiffs are wrong. The Four Box Model was a complex financial model utilizing millions of data inputs from HP's business and market data from third parties. *See* Mot. 7; AC ¶ 206. No facts are pled (or cited) to support Plaintiffs' bald assertion that the lack of telemetry data from EMEA was "readily apparent" from use of the model.[3]

Because the Opposition fails to identify specific facts demonstrating that any of the Individual Defendants reviewed specific information that revealed the gaps in the model or revealed that it was unreliable, *In re Quality Systems, Inc. Securities Litigation*, 865 F.3d 1130 (9th Cir. 2017), and *In re PMI Group, Inc. Securities Litigation*, 2009 WL 3681669, (N.D. Cal. Nov. 2, 2009) (Illston, J.) are distinguishable. In both cases, the plaintiffs pled facts showing that the defendants "were aware in real time" of *specific* information, in particular internal reports in particular time periods that were "inconsistent" with defendants' statements to the market. *In re Quality Sys.*, 865 F.3d at 1145-46; *In re PMI Grp.*, 2009 WL 3681669, at *3 (specific allegations from internal reports and confidential witnesses that "individual defendants were aware of th[e] problems" sufficient to plead scienter). Plaintiffs do not allege that, before February 2019, *anyone* at HP—let alone any Individual

___

[3] Plaintiffs claim that Defendants "insert their own version of the facts." Opp. 34 (citing Mot. 21; AC ¶¶ 89-90, 299, 106). Not so. Defendants, instead, dispute Plaintiffs' attempt to conflate monitoring the model with purported knowledge that the model incorporated flawed data inputs. Plaintiffs' cases, in which the adverse information was apparent, are easily distinguishable. *See Reese v. Malone*, 747 F.3d 557, 571-72 (9th Cir. 2014) (information was not "obscured"), *overruled in part by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017); *Roberti v. OSI Sys., Inc.*, 2015 WL 1985562, at *11-12 (C.D. Cal. Feb. 27, 2015) (defendants had access to "contradicting" data). And, courts regularly decline to infer scienter based on an alleged failure to *detect* inaccuracies, flaws, or otherwise contradictory information. *See, e.g.*, *In re Rackable Sys., Inc. Sec. Litig.*, 2010 WL 3447857, at *7 (N.D. Cal. Aug. 27, 2010) (access to "contemporaneous information" on "difficulties . . . implementing" system insufficient to show knowledge or concealment of system's "alleged deficiencies"); *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1078-79 (C.D. Cal. 2012) (access to key employees insufficient to show defendant "in possession of concrete knowledge" of employees).

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Case No. 3:20-cv-01260-SI

Defendant—knew the model would later project demand inaccurately.[4]

Plaintiffs' "must have known" theory of fraud also falls apart based on a central indisputable fact that Plaintiffs fail to acknowledge or address in their Opposition: in quarter after quarter over two years of the putative class period, the Four Box Model *accurately* predicted HP's Supplies revenue. *See* Mot. 7-8; *see also* AC ¶¶ 73, 89, 241, 247, 250. The success of the model in predicting Supplies revenue over a sustained period strongly undercuts Plaintiffs' argument that the Individual Defendants knew or were deliberately reckless in not knowing of deficiencies in the model that surfaced only after two years of accurate projections.

### 2. Defendants' 2019 Statements Do Not Support A Strong Inference Of Scienter

Plaintiffs point to statements made by certain Defendants when the data gaps came to light, arguing that in these statements, Defendants "admitted" they knew about and withheld the problems from the market. The statements, however, belie that characterization; the 2019 statements were nothing akin to "I knew it all along." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 997 (9th Cir. 1999).[5]

---

[4] Plaintiffs' cases where courts inferred actual knowledge from defendants' statements are even further afield. *See, e.g.*, *In re Daou Sys., Inc.*, 411 F.3d 1006, 1022-23 (9th Cir. 2005) (top executives admitted involvement with company's "every detail," and complaint alleged defendants monitored and "manually adjust[ed]" data at issue); *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1231 (9th Cir. 2004) (inferring company "must have been aware that it was not going to meet sales projections earlier" and that "its statements to the contrary were therefore made with scienter" when CEO stated that "[w]e know exactly how much we have sold in the last hour around the world"); *S. Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248, 1259-60 (W.D. Wash. 2009) (inferring actual knowledge from defendant's statements that he knew about the company's systems capacities *and* its "flaws" and "woes," which he later reassured investors were "fixed" when they were not). Unlike the admissions in *Daou* and *Oracle*, no statement here indicates that anyone knew "every detail" of the model or tracked every printer, much less that any Individual Defendant knew these details personally. *See* AC ¶ 250 (explaining that "many of []our printers phone home" and that HP was looking at customer tendencies "on average"); *id.* ¶ 90 (noting that "many of your printers phone home to us" and "broadly, we can see inside the ZIP Code level"). And unlike in *South Ferry*, there are no statements here indicating that anyone knew of any "flaws" in the Four Box Model before February 2019 (or before July 2018 for Ms. Lesjak).

[5] Plaintiffs mischaracterize *Yourish's* holding. As *Yourish* made clear, a later statement "do[es] not satisfy Rule 9(b)'s particularity requirements" if it "does not approach [an] 'I knew it all along' admission." 191 F.3d at 997. Defendants' opening brief accidentally misquoted *Yourish*, but the clear language of the case and subsequent cases applying it confirm Defendants' reading. *See Broderick v. PricewaterhouseCoopers LLP*, 169 F. App'x 496, 499 (9th Cir. 2006) (citing *Yourish*

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Case No. 3:20-cv-01260-SI

Gibson, Dunn &
Crutcher LLP

In early 2019, HP identified flawed inputs to the Four Box Model and explained to investors how it had discovered those flaws. *See* Mot. 8-9. After announcing revised projections, the Company explained that "new telemetry data indicated that HP's Supplies share," particularly for commercial sales in EMEA, "was significantly lower than what [HP] had assumed in [the] 4-box model." AC ¶ 340; *see also* Mot. 8-9, 12-13. That is, previous assumptions regarding commercial supplies had more heavily weighted "third party survey data and market research" due to less robust telemetry data in EMEA, and it was not until this "new telemetry data" became available in 2019, AC ¶ 340, that the Company learned these previous assumptions were flawed and that projections generated by the model were unreliable.

Contrary to Plaintiffs' contention, Opp. 30 & n.15, statements in early 2019 are in no way "admissions" that any Defendant knew of any gap in the data before February 2019. *See* Mot. 12-14 (citing cases). Defendants never said that the model used telemetry data to the exclusion of other data or projections demonstrating share, nor that every HP printer phoned home. *E.g.*, AC ¶¶ 8, 250. As Plaintiffs acknowledge, the model relied on third-party data and was continually improving with incremental data. *See id.* ¶¶ 73, 89, 170, 247, 296. It was not the "existence" of third-party data that revealed the lack of sufficient telemetry data in EMEA; it was—as the Complaint acknowledges—"new telemetry data" that revealed the model's prior share assumptions were flawed. *Id.* ¶ 340. The 2019 statements simply explain what had gone wrong; they give rise to *no* inference that any of the Defendants understood this *at the time of the challenged statements*, let alone that they intentionally deceived investors. *See In re Rackable Sys.*, 2010 WL 3447857, at *10 ("mere[] acknowledgements that the company could have been run better in the past[]" are insufficient to plead scienter).

**3.    Hearsay From A Single Confidential Witness Who Never Interacted With The Individual Defendants Does Not Support An Inference of Scienter**

Plaintiffs do not dispute that they must satisfy two pleading hurdles when relying on a confidential witness: first, the confidential witness "must be described with sufficient particularity to

---

[Footnote continued from previous page]
for rule that "only a later 'I knew it all along' admission is sufficient to satisfy the false when made standard"); *In re Atlas Mining Co., Sec. Litig.*, 670 F. Supp. 2d 1128, 1134 (D. Idaho 2009) (same).

Gibson, Dunn & Crutcher LLP

establish their reliability and personal knowledge" of the events they report, and second, the witness's "statements . . . must themselves be indicative of scienter." *Zucco*, 552 F.3d 981 at 995; Mot. 16-17. The Complaint pleads neither element for the single unnamed former employee.

Plaintiffs cannot meet the first hurdle; the former employee is not alleged to have any "first hand knowledge" of what the Individual Defendants "knew or did not know," and the Opposition confirms this. *Intuitive Surgical*, 759 F.3d at 1063; *see also* Mot. 17. Plaintiffs concede that the unnamed former employee had no contact with any Individual Defendant, and that his or her account about Defendant Weisler's purported awareness of and reaction to a forecast miss in EMEA is hearsay. *See* Opp. 32 ("FE-1's account [is] based on information supplied by FE-1's superiors . . ."). The former employee, therefore, is not in a position to know first-hand what *any* Individual Defendant knew about the model. He or she had no "direct (or indirect) contact with any of the Individual Defendants, and therefore cannot provide reliable insight into the Defendants' state of mind." *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 814 (N.D. Cal. 2019). For this reason alone, the allegations attributed to the former employee add nothing to the scienter analysis.[6]

Plaintiffs claim that this is the rare case where allegations attributed to a confidential witness who has admittedly never met or interacted with any Individual Defendant nonetheless are reliable. But the facts in the cases Plaintiffs cite are far different from what is alleged here. For example, in *Oklahoma Police Pension & Retirement System v. LifeLock, Inc.*, the confidential witness relayed that her supervisor—identified in the complaint by name—advised her that he had delivered specifically described reports *prepared by the confidential witness* to one of the individual defendants. 780 F. App'x 480, 485 n.5 (9th Cir. 2019); *see also Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1208 (9th Cir. 2016) (information relayed to confidential witness was "specific in time" and "reliable, plausible, or coherent."). Here, instead, Plaintiffs' confidential witness offers second- or

---

[6] Plaintiffs argue that allegations based on this former employee "confirm[] and bolster[]" an inference of scienter for all Defendants, *see* Opp. 31, but the allegations contain no mention of the other Individual Defendants and, therefore, cannot possibly add to an inference of scienter for them. And Plaintiffs baldly assert that "the deficiency of telemetry data and the problematic use of imputed market share assumptions spanned the Company and were not merely confined to the EMEA region," Opp. 32 n.18, but allege no such facts in their Complaint.

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Case No. 3:20-cv-01260-SI

Gibson, Dunn &
Crutcher LLP

third-hand rumors relayed on an unidentified date related not to the Four Box Model or its reliability, but rather to an "internal forecast [miss]" in EMEA "circa" Q2 2018. *See* AC ¶¶ 310-11. Plaintiffs do not allege that Mr. Weisler was told that this "earnings miss" meant that the model was flawed or unreliable. Nor do they specify who provided the information to Mr. Weisler, when it was provided to him, and from whom or when the confidential witness learned what Mr. Weisler supposedly was told. Plaintiffs' unspecified hearsay allegations are nothing close to the kind of specific and reliable facts relayed to a confidential witness sufficient to support an inference of scienter. *See, e.g., Lloyd*, 811 F.3d at 1208.

Plaintiffs also fail to meet the second hurdle—that the statements provided by the confidential witness are "indicative of scienter." *Zucco*, 552 F.3d 981 at 995 Plaintiffs allege that the former employee provided Mr. Weisler information about a regional forecast miss, that he was "really angry" about it and attended a "crisis meeting," and that EMEA was "unstable" and a "famous hot seat" (whatever that means). *See* AC ¶ 310-11. Even if these allegations came from a reliable source (they do not), they are not indicative of scienter because they have nothing to do with the Four Box Model or its reliability. *See Veal v. LendingClub Corp.*, 2020 WL 3128909, at *14 (N.D. Cal. Jun. 12, 2020) (confidential witnesses did not support any inference of scienter where none is alleged to have had any knowledge of the subject of the alleged fraud). And none of the information drawn from the confidential witness concerning what Mr. Weisler supposedly knew contradicts any of his challenged statements. *Robb v. Fitbit Inc.*, 2017 WL 219673 (N.D. Cal. Jan. 19, 2017) (cited at Opp. 32), therefore, is easily distinguishable. There, the confidential witnesses had either "personally generated" reports that contradicted the challenged statements or provided information to someone with a direct connection to an Individual Defendant.

The hearsay allegations drawn from an unidentified former employee about an earnings miss are unreliable, irrelevant, and provide no basis to demonstrate that Mr. Weisler—much less any other Defendant—was aware of problems with the Four Box Model prior to February 2019. *See* AC ¶ 311. These allegations cannot support a strong inference of scienter as to any Defendant.

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Case No. 3:20-cv-01260-SI

Gibson, Dunn &
Crutcher LLP

### 4. The Opposition Confirms That The Complaint Fails To Allege A Core Operations Theory

Plaintiffs argue that a strong inference of scienter exists because the Supplies business was HP's core business. Opp. 33. This argument misconstrues the core operations theory of scienter. Under this theory, "allegations regarding management's role in a company may . . . *help* to satisfy the PSLRA scienter requirement" where the Complaint provides specific facts that "suggest[] that defendants had actual access to the disputed information." *S. Ferry LP, # 2 v. Killinger*, 542 F.3d 776, 785-86 (9th Cir. 2008) (emphasis added). The theory also applies in rare circumstances where Plaintiffs demonstrate that "the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter." *Id.*; *see also Webb v. Solarcity Corp.*, 884 F.3d 844, 854 (9th Cir. 2018) (rejecting application of theory); *In re NVIDIA Sec. Litig.*, 768 F.3d 1046, 1064 (9th Cir. 2014) (rejecting core operations inference when plaintiffs do not allege that "specific information" about the fraud was conveyed to management). The Opposition fails to identify specific facts to satisfy that stringent requirement.

As discussed above, Plaintiffs plead no facts showing that anyone at the company, let alone any Individual Defendant, was aware before February 2019 (or that Ms. Lesjak was aware before mid-2018) that the model was unreliable because it relied on flawed data. *See supra* pp. 3-7. *See In re ECOtality, Inc. Sec. Litig.*, 2014 WL 4634280, at *11 (N.D. Cal. Sept. 16, 2014) (access to reports insufficient to show company "possessed any contradictory information to which [d]efendants could be exposed."); *Iron Workers Local 580 Joint Funds v. Nvidia Corp.*, 2020 WL 1244936, at *11-12 (N.D. Cal. Mar. 16, 2020) (rejecting core operations theory because there were no "particularized allegations indicating [i]ndividual [d]efendants' detailed involvement with" the underlying data); *see also* Mot. 21. Because the Opposition is unable to cite "detailed and specific allegations about management's exposure" to information contradicting the challenged statements, the mere importance of the Supplies business does not "raise an inference of scienter." *Gammel v. Hewlett-Packard Co.*, 2013 WL 1947525, at *18-19 (C.D. Cal. May 8, 2013).

The premise of Plaintiffs' core operations argument also is flawed. Plaintiffs' theory is that HP's senior-most officers, overseeing tens of thousands of employees, must have monitored *millions*

of data points that fed into a projections model, and that through this monitoring, they knew first-hand that certain data was missing that rendered the model unreliable. The Ninth Circuit has rejected similar implausible scienter theories based on data "access." *Solarcity*, 884 F.3d at 857 (rejecting core operations theory because no allegations that defendants were "involved in accounting decisions as minute as the calculation"); *see also Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*, 2018 WL 3126393, at *7-8 (N.D. Cal. June 26, 2018) (no scienter under core operations theory without allegations of "specific involvement"). Here, the explanation of what went wrong in 2019—based on the discovery of "new" data—shows that Defendants *did not know* that demand had declined before then. And even if there were facts alleged demonstrating that Defendants had previously been aware of a problem (there are not), "[k]nowledge of the problem is insufficient to infer" an intent to defraud under the core operations theory. *Twitter*, 2020 WL 7260479, at *14 (regular reporting of disputed information insufficient to infer scienter under core operations theory).

This case is a far cry from Plaintiffs' "rare" cases where the court found an inference of lack of knowledge to be "absurd"—i.e., a CEO "in charge of financial reporting, accounting, and billing" in a company that "never employed more than fourteen employees." *Rabkin v. Lion Biotechnologies, Inc.*, 2018 WL 905862, at *12 (N.D. Cal. Feb. 15, 2018). This case also is nothing like *Berson v. Applied Signal Tech., Inc.*, where it was reasonable to assume that defendants were aware of "stop-work orders that allegedly halted tens of millions of dollars of the company's work," 527 F.3d 982, 988 (9th Cir. 2008), or *Mulligan v. Impax Labs., Inc.*, where the company received "repeated" FDA warnings issued to "'top management,'" 36 F. Supp. 3d 942, 970 (N.D. Cal. 2014). Here, Plaintiffs plead no facts suggesting that the absence of certain telemetry data, which later rendered the model incorrect by a few percentage points, was "so obvious" that it would be absurd to suggest that top management did not know about the problems before February 2019 and deliberately concealed them from the market. *Zucco*, 552 F.3d at 1001; *In re NVIDIA*, 2011 WL 4831192, at *11 (N.D. Cal. Oct. 12, 2011) (rejecting core operations theory when complaint contained "no specific allegations that anyone . . . concluded that the likely financial impact" of the problem was material); *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *17-18 (N.D. Cal. July 21, 2020) (rejecting core operations because not absurd to suggest management lacked knowledge when plaintiffs allege only "general[] access to

Gibson, Dunn & Crutcher LLP

sales reports" and attendance at meetings); *see also* AC ¶ 351.

### 5.     Plaintiffs Do Not Plead Facts Supporting A Deliberate Recklessness Theory

Plaintiffs do not dispute that to satisfy the deliberate recklessness standard, they must plead specific facts demonstrating "intentional or conscious misconduct," *In re NVIDIA Sec. Litig.*, 768 F.3d at 1053, which requires "more than '*mere* recklessness or a motive to commit fraud,'" *Endologix*, 962 F.3d at 414.  Plaintiffs assert that Defendants were deliberately reckless to "tout" the Four Box Model and its reliability "if they had no idea what data HP had or what data was actually used in the Model," "if they had not actually verified whether telemetry data was being received from laser printers in the installed base," or if they had not verified "whether they actually had the ability to calculate market share."  Opp. 35-36.  This idea—that either Defendants knew whether every printer HP had ever sold was or was not feeding into the Four Box Model and the consequences of those numbers, or they had "no idea" what data HP had or what data was actually used—is a false dichotomy.  Opp. 5.  Defendants never told investors that the Four Box Model was based on perfect data.  As Plaintiffs acknowledge, HP told investors that it was constantly adding new printers to the installed base, that many (not all) were phoning home, and that a subset of laser/commercial printers started sending information later than home printers.  *E.g.*, AC ¶ 8 (explaining that HP collected telemetry data from ink printers first, and then later began to collect this data from laser jet printers).  HP also told investors that third-party estimates were used in the model.  *E.g.*, *id.* ¶ 170 (describing model as including estimates from third-party analysts).

As Plaintiffs allege in the Complaint, the problem revealed in February 2019 was that "*new* telemetry data" not previously known "indicated that HP's Supplies share," particularly for commercial sales in EMEA, "was significantly lower than what [HP] had assumed in [the] 4-box model."  *See* AC ¶ 340 (emphasis added).  It was the delta between the Company's prior assumptions of market share and the new data from commercial printers coming online in EMEA that revealed the flaws in the Four Box Model—all to Defendants' surprise.  *Id.* ¶ 342.[7]

---

[7]   Because the problems with the Four Box Model were "obscured"—and there are no facts to suggest otherwise—this case is easily distinguishable from Plaintiffs' cases.  *Reese*, 747 F.3d at 572

Gibson, Dunn &
Crutcher LLP

At bottom, the Complaint fails to plead specific facts demonstrating that the impact of insufficient telemetry data from laser-based products on the model's reliability was "so obvious" that the Defendants must have deliberately blinded themselves to the truth for over two years of the putative class period.  Here again, Plaintiffs cannot escape the fact that the model consistently and accurately predicted Supplies revenue quarter after quarter, for two years, which strongly undercuts Plaintiffs' deliberate recklessness theory.  *See* Mot. 7-8; *see also Endologix*, 962 F.3d at 415.

### 6. Plaintiffs' Remaining Arguments Fail To Show That The Complaint Pleads A Strong Inference Of Scienter

**_Stock Sales_**: Plaintiffs claim that stock sales by two of the five Individual Defendants, Mr. Lores and Mr. Weisler, are suspicious because these officers sold a large amount of stock during the putative class period.[8]  Opp. 36.  But an inference of scienter is forcefully rebutted where—as here— these defendants "maintained more stock than they sold during the class period."  *Applestein v. Medivation, Inc.*, 2011 WL 3651149, at *8 (N.D. Cal. Aug. 18, 2011) (citing cases); *see also* Mot. 18-19.  Plaintiffs disagree, claiming that this Court can infer scienter as to Mr. Lores and Mr. Weisler because they did not increase their holdings via "open market purchases." Opp. 37 n.21.  But that is not the law of this Circuit.  *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) ("[W]e see no reason to distinguish vested stock options from shares because vested stock options can be converted easily to shares and sold immediately."), *superseded by statute on other grounds*; *Applestein*, 2011 WL 3651149, at *8 (defendants "actually held more stock . . . at the end of the class period than they did at the beginning because they accumulated vested options").  Here, Mr. Lores and Mr. Weisler significantly increased their HP stock holdings during the putative class period—Mr. Lores more than doubled his holdings, and Mr. Weisler increased his holdings by over 200%. Mot. 18 & n.6.  Plaintiffs do not dispute this, which strongly rebuts any inference of scienter.

Further, Plaintiffs do not dispute that all but one of the trades in question were made pursuant

[Footnote continued from previous page]
(information not "obscured from high-level executives."); *South Ferry*, 687 F. Supp. 2d at 1259-60 (defendant had "all of the information necessary").

[8]    Plaintiffs do not argue that *any* sale by the remaining Defendants was suspicious, which undercuts an inference of scienter as to *all* Defendants. *Ronconi*, 253 F.3d at 436.

Gibson, Dunn & Crutcher LLP

to a 10b5-1 plan or were executed in order to satisfy tax obligations, which cuts against any inference of scienter. *See* Mot. 19-20 & n.7-8; Opp. 36-37. Plaintiffs argue that Mr. Lores's and Mr. Weisler's trades pursuant to Rule 10b5-1 plans may support an inference of scienter because they entered into the plans "after they already had access to material, nonpublic information." Opp. 37. But aside from that threadbare recital, AC ¶ 327, Plaintiffs plead no facts, much less particularized facts, to suggest that either Mr. Lores or Mr. Weisler—or anyone—was aware of *any* adverse, material non-public information about the Four Box Model before they entered into those plans. *Applestein*, 2011 WL 3651149, at *8. Further undermining Plaintiffs' theory, Mr. Lores entered into his identified 10b5-1 plans **over a year** before the "new telemetry data" came to light in February 2019. *See* AC ¶ 333. The trading plans cut against any inference of scienter.[9]

***Temporal Proximity***: The "timing of a disclosure alone cannot establish a strong inference of scienter or even contribute strongly to such an inference." *Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at *20 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th Cir. 2019); *see also* Mot. 22-23. Here, the seven-week gap between the last alleged misstatement by one Individual Defendant and the first alleged corrective disclosure fails to support a strong inference of scienter. Plaintiffs offer no response to this argument, other than to accuse Defendants of "distort[ing] *Ranconi* [sic] and *Yourish*" to "establish a bright line rule regarding the length of time needed to constitute 'temporal proximity.'" Opp. 38 n.22. This is a puzzling argument. In these cases the Ninth Circuit held that a several week-gap between an optimistic statement and below-expectation earnings was inconsistent with scienter. These cases are directly on point and underscore why there is no reasonable inference

---

[9] Mr. Weisler's resignation also does not support an inference of scienter. *See* Mot. 20 n.9. Plaintiffs assert that Mr. Weisler's departure was "sudden," AC ¶ 144, but they ignore that Mr. Weisler remained in the CEO position for two months after announcing that he would resign and that he continued to serve the Company in various positions thereafter, *id.* ¶ 37. This entirely undermines Plaintiffs' implication that his departure had any connection with purported wrongdoing. *See In re NVIDIA*, 768 F.3d at 1062-63; *Zucco*, 552 F.3d at 1002 ("Mere conclusory allegations that [an officer] resigns or retires during the class period or shortly before the corporation issues its restatement, without more, cannot support a strong inference of scienter."). This is a far cry from *In re Adaptive Broadband Sec. Litig.*, 2002 WL 989478, at *14 (N.D. Cal. Apr. 2, 2002), where the CFO did not resign but instead was moved to a different position while the company was conducting an internal investigation and restating its financial statements.

15

of scienter based on the seven-week gap between Mr. Lores's last statement and the February 2019 announcement. *See* Mot. 22-23. And because the temporal proximity argument is insufficient as to Mr. Lores's January 8, 2019 statement, it necessarily fails as to the other Individual Defendants.

* * * * *

Whether viewed individually or holistically, Plaintiffs' scienter allegations cannot overcome the far more compelling inference that the Individual Defendants genuinely believed in the Four Box Model and its predictive abilities. This inference is all the more compelling given that the model repeatedly and accurately predicted Supplies revenue for two years of the putative class period, *see* Mot. 7-8, a fact, again, that Plaintiffs simply ignore. The Complaint provides no factual basis to infer that the Individual Defendants knew or recklessly disregarded the purported fact that the Four Box Model was unreliable throughout the class period. It also offers no cogent explanation why any individual who knew the model was using flawed data would continue using the model to predict future performance. The Court should dismiss the Complaint for failure to plead scienter.

**B.    The Opposition Confirms That Plaintiffs Fail To Plead An Actionable Misstatement**

The Opposition also underscores the fundamental deficiencies in the Complaint's falsity theory.[10] The Opposition attempts to organize the Complaint's more than one hundred paragraphs of undifferentiated block quotes into six categories of allegedly false and misleading statements. *See* Opp. 13.[11] These categories, however, overlap and comprise statements scattered throughout the Complaint. *See* App. 1 (chart); Opp. 13 (listing AC ¶¶ 204, 221, 230, 241, and 247 as each falling within three different categories). The Complaint is thus the very definition of an impermissible puzzle pleading—one that "requires the defendant(s) and the court to 'match up' the allegedly false

---

[10] Plaintiffs repeatedly misstate their own allegations. For example, the Opposition argues Defendants' class-period statements regarding market share were "demonstrably false" because "market share had declined, not increased." Opp. 18 (citing AC ¶ 132). However, *the cited paragraph says no such thing*. The announcement in Q1 2019 that HP would reduce its market share assumptions *going forward*, *see id.* (citing AC ¶¶ 135, 349), is not an admission that prior statements about its market share assumptions were "demonstrably false." *See* AC ¶¶ 339, 351.

[11] The Opposition also attempts to add allegations not found in the Complaint regarding HP's settlement with the Securities and Exchange Commission. Opp. 6. This is improper, but also beside the point given that the settlement addressed events and statements made before the putative class period in this action.

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Case No. 3:20-cv-01260-SI

Gibson, Dunn &
Crutcher LLP

and misleading statements that form the basis of the plaintiff's claim with the reasons those statements are misleading." *In re Aqua Metals, Inc. Sec. Litig.*, 2019 WL 3817849, at *7 (N.D. Cal. Aug. 14, 2019).

Plaintiffs attempt to wave aside this fundamental defect by claiming that "the Complaint specifies the reason why each alleged statement was false and misleading." Opp. 13 n.3. But Plaintiffs point to no portion of the Complaint that provides that "specifi[cation]," instead citing generally to 137 paragraphs in the Complaint. *Id.* (citing Compl. ¶¶ 157-293). Just like the deficient puzzle pleading complaint in *McCasland v. FormFactor Inc.*, 2008 WL 2951275 (N.D. Cal. July 25, 2008), the Complaint here "lists an 'undifferentiated mass of public statements'" and "follows each set of statements with the 'same blanket paragraph' to assert falsity and fraudulence." *Id.* at *7. Plaintiffs cut and paste six variations of the same reason why the more than 50 challenged statements supposedly were false—namely, Plaintiffs' hindsight conclusion that HP lacked robust telemetry data and over-relied on third-party data when estimating the assumptions underlying the Four Box Model's projections. *See* App. 2 (chart). This kind of boilerplate, cut-and-paste pleading "contravenes applicable pleading standards." *FormFactor*, 2008 WL 2951275, at *7.

Even setting aside this threshold pleading deficiency, the Complaint fails to allege any actionable misstatement. The statements at issue either are protected forward-looking statements, inactionable opinion statements, or were not false when made.[12]

### 1. The Vast Majority Of Challenged Statements Are Inactionable Forward-Looking Statements

#### a. Statements About Revenue Projections, Future Plans, And Assumptions Underlying Those Projections Are Protected By The Safe Harbor

As Plaintiffs admit, the vast majority of the purportedly false and misleading statements in the Complaint "concer[n] the stabilization of HP's Supplies business and revenues." Opp. 13 (Category

---

[12] Statements within each of Plaintiffs' six categories are inactionable for the same reason: Categories #1, #3, and #4 contain statements that were not false when made, *see* Mot. 35-38; Categories #2 and #5 contain protected forward-looking statements, *see* Mot. 27-33; and Category #6 contains inactionable opinion statements, *see* Mot. 33-35. Because Plaintiffs' categories are overlapping, the correlation is not exact, as shown in the appended chart. *See* App. 1. The motion to dismiss contests every one of Plaintiffs' alleged false or misleading statements, but Plaintiffs abandon in the Opposition any challenge to statements in ¶¶ 199, 218, 235, 271, and 272.

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Case No. 3:20-cv-01260-SI

Gibson, Dunn &
Crutcher LLP

#5); *see* App. 1 (34 of 52 challenged statements fall at least in part in this category). Plaintiffs do not seriously contest that these statements are forward-looking. *See* Opp. 21-25. And for good reason: statements that Supplies revenues "***would be*** 'flat to slightly up,'" that Supplies revenue "***will stabilize*** by the end of 2017," that "***we project*** a stable or slightly positive revenue growth for supplies," and that "we have confidence in continued stabilization ***next year***," *id.* at 22 (emphases added), are all classic examples of "projection[s] of revenues," or "statements of future economic performance" shielded by the PSLRA's safe harbor, 15 U.S.C. § 78u-5(i)(1)(A), (C); *see* Mot. 28-30. Plaintiffs also do not contest that statements regarding the predictive capabilities of the Four Box Model are forward-looking statements. *See* Mot. 28 n.20 (arguing that those statements are forward looking); Opp. 25-26 (not contesting that those statements in Category #6 are forward looking).[13]

Plaintiffs contend that just two types of challenged statements are not forward looking. *See* Opp. 18-19, 21.[14] First, Plaintiffs assert that statements regarding HP's estimation of the trajectory of its market share for purposes of the Four Box Model's projections are unprotected statements of current fact. Opp. 18-19 (Category #2). Not so. As the presentation slides pasted into the Complaint make clear, the statements setting forth the content of the Four Box Model's four "boxes"—installed base, usage, market share, and pricing—were "projections," not statements of current data. *See* AC ¶¶ 205, 207-08 (2017 presentation, with footnote explaining "data are projections"); *id.* ¶¶ 272-274 (similar chart for 2018); *see also* Ex. 17, Mr. Lores's Oct. 3, 2018 Presentation, at 21 n.1 (footnote explaining "[d]ata are projections"). Other statements merely explained these projections. *See id.* ¶¶ 200 ("you've also seen us have progress in our market share"), 242 ("we're making improvements

---

[13] Plaintiffs do not dispute that statements about "driv[ing] continued improvements," AC ¶¶ 119, 235, and statements that the Four Box Model is a "good," AC ¶ 241, or "strong" predictive tool, *id.* ¶ 223, that enabled HP to "feel good about the guidance," AC ¶ 241, or "pleased that . . . Supplies revenue is in line with the expectations that we[re] set," *id.* ¶ 270, and "well positioned for the long term," *id.* ¶ 271, are "textbook examples of non-actionable puffery and corporate optimism that are not capable of objective verification or inducing the reliance of a reasonable investor," *TriNet*, 2017 WL 6466264, at *11. *See* Mot. 29 n.21.

[14] Plaintiffs mischaracterize the motion to dismiss as treating statements regarding "the four box model's access to and use of telemetry or 'big data'" and that "HP's Supplies business had stabilized" as forward looking statements. Opp. 16-17, 21. While those statements are inactionable for other reasons, *see infra* pp. 23-25; MTD at 35-38, Defendants did not argue that those statements were forward looking. *See* MTD at 28-31.

18

Gibson, Dunn & Crutcher LLP

in the aftermarket share"). These assumptions fall squarely within the PSLRA's safe harbor. 15 U.S.C. § 78u-5(i)(1)(D).

Plaintiffs' cases are not to the contrary. In each, the defendants knowingly misled investors about concrete, then-verifiable aspects of their business. *See In re Quality Sys.*, 865 F.3d at 1143 ("the state of [the company's] sales pipeline"); *In re CV Therapeutics, Inc.*, 2004 WL 1753251, at *10 (N.D. Cal. Aug. 5, 2004) (omission of "detailed information about the FDA's serious reservations" concerning a drug); *In re Boeing Sec. Litig.*, 40 F. Supp. 2d 1160, 1169 (W.D. Wash. 1998) (statements "concern[ing] present production problems"); *Rodriquez v. Gigamon Inc.*, 325 F. Supp. 3d 1041, 1050 (N.D. Cal. 2018) ("large deferred service," "healthy product backlog," and "consistent quarterly linearity"); *Desai v. Gen. Growth Props., Inc.*, 654 F. Supp. 2d 836, 848 (N.D. Ill. 2009) ("We had offers from groups of life companies."); *Kipling v. Flex Ltd.*, 2020 WL 2793463, at *10 (N.D. Cal. May 29, 2020) (company was "driv[ing] significant volume"). In this case, by contrast, the contents of the Four Box Model were expressly "projections" and thus could not be verified "until some point in time after the statement [wa]s made." *In re LeapFrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1046 (N.D. Cal. 2007) (quoting *Harris v. Ivax Corp.*, 182 F.3d 799, 805 (11th Cir. 1999)). "[E]xamined as a whole," these statements about the model's contents and assumptions "relate[] to future expectations and performance" and are therefore protected as forward looking. *Intuitive Surgical*, 759 F.3d at 1059.

Second, Plaintiffs contend that statements that "we remain on track to stabilize supplies revenue" are not forward looking. Opp. 21 (Category #4). Although the courts in Plaintiffs' cases did conclude that the phrase "on track" can refer to current facts rather than a forward-looking projection, more recent decisions hold that "while the phrases 'on plan' and 'on track' sound in the present tense, they refer to . . . future financial goals and are therefore forward-looking." *Wyatt v. Mattel, Inc.*, 2020 WL 364324, at *5 & nn.7-9 (C.D. Cal. Jan. 21, 2020) (collecting cases); *accord Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543, 547 (9th Cir. 2018) ("The statement that Sites 5 and 6 were 'on track' falls within the safe harbor of forward-looking statements."); *Kipling*, 2020 WL 2793463, at *10 ("on track" statement forward looking); *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at *11 (N.D. Cal. May 22,

19

Gibson, Dunn & Crutcher LLP

2012) (same); *Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1150-51 (C.D. Cal. 2018) (same).  That is because "language that a company is 'on track' to meet a previously-made projection cannot 'meaningfully be distinguished from the future projection of which [it was] a part.'" *Bielousov v. GoPro, Inc.*, 2017 WL 3168522, at *4 (N.D. Cal. July 26, 2017) (alternation in original). Indeed, if the phrase "on track" were not considered forward looking, "the distinction between present statements and forward-looking statements would collapse." *Wochos v. Tesla, Inc.*, 2018 WL 4076437, at *5 (N.D. Cal. Aug. 27, 2018).

### b.    Defendants' Forward-Looking Statements Fall Within The PSLRA's Safe Harbor

Because Defendants' statements are forward-looking, they fall within the PSLRA's safe harbor unless Plaintiffs can show *both* that Defendants made the statements with "actual knowledge" that they were false, *and* that the statements were not "accompanied by meaningful cautionary statements."  15 U.S.C. § 78u-5(c)(1)(A)(i)-(B)(i).[15]  Plaintiffs fail to make either showing.

First, for the reasons stated above, *supra* pp. 3-16, Plaintiffs have failed to plead that, for any of the alleged misrepresentations, the speaker had "actual knowledge" of falsity.  This ends the inquiry.  Recognizing their inability to meet this standard, Plaintiffs invent a new one that allows plaintiffs to plead "actual knowledge" by "pleading that Defendants had no reasonable basis for their belief."  Opp. 25.  Neither decision Plaintiffs cite for this proposition adopted such a standard; indeed, neither even analyzes the PSLRA's safe harbor.  *Provenz v. Miller*, 102 F.3d 1478, 1487 (9th Cir. 1996); *Roberts v. Zuora, Inc.*, 2020 WL 2042244, at *8-10 (N.D. Cal. Apr. 28, 2020).  Both decisions invoked the pre-*Align* "no reasonable basis" standard for assessing the falsity of *opinion* statements.  *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017).  They provide no ground for reducing Plaintiffs' burden to plead actual

---

[15]  Plaintiffs argue that the Defendants' forward-looking statements are not protected by the safe harbor because they have alleged that they are misleading by omission.  Opp. 23.  The cases Plaintiffs cite, however, stand for a different proposition—that while the safe harbor applies to forward-looking statements, it does not apply to "omission[s] of present facts."  *E.g.*, *Roberti v. OSI Sys. Inc.*, 2015 WL 1985562, at *9 (C.D. Cal. Feb. 27, 2015).  As explained below, *infra* pp. 22-23, Plaintiffs' omission theory—that Defendants "lacked statistically relevant data from HP's office-based printers"—does not support Plaintiffs' fraud claims.

Gibson, Dunn & Crutcher LLP

knowledge of falsity for forward-looking statements. Opinion statements and forward-looking statements are different from one another, and they are governed by distinct legal standards.

Second, Defendants' forward-looking statements were accompanied by cautionary language. In their Opposition, Plaintiffs cherry pick portions of Defendants' cautionary language that they claim are "boilerplate." Opp. 23-24. Plaintiffs simply ignore cautionary language Defendants highlighted in their opening brief—language in which HP identified specific risks to the Supplies business, including challenges of "inventory management," "dynamic and accelerating market trends," and the "aggressive" nature of competition that can impact market share. Mot. 32 & n.23. HP also warned about the impact of macroeconomic trends on market share, a risk that materialized in Q1 2019. *See* Ex. 13, Q1 2019 Earnings Call Tr. at 11 (new market share information, combined with increased "macro uncertainty," resulted in pressure on "both our share and our Supplies pricing."). That HP used different cautionary language regarding the Company's competitors after making the alleged corrective disclosures does not "conced[e]" that the previous cautionary language was inadequate. Opp. 24. The new language simply highlighted certain risks from "aggressive" competition already identified in the previous cautionary language.[16]

Plaintiffs argue that the Defendants should have warned in HP's cautionary language of potential limitations of HP's telemetry data, and how that specifically could have affected Defendants' projections. But the PSLRA does not "require a listing of *all* factors that might make the results different from those forecasted," including those "that ultimately rende[r] the forward-

[16] This case is fundamentally different than *Quality Systems*, on which Plaintiffs rely. *See* Opp. 23-24. *Quality Systems* dealt with mixed forward-looking and non-forward-looking statements, but Plaintiffs do not identify any mixed statements here. The statement Plaintiffs cite—"we remain confident that supplies revenue growth … will stabilize by the end of 2017, consistent with our Four Box Model analytics that we see," Opp. 24—is entirely forward looking. The Four Box Model is a projection model, and thus the "analytics that we see" refers to the model's *projection* that Supplies revenue growth will stabilize by 2017 and the projection's underlying assumptions. *See* AC ¶ 161 (referring to the Four Box Model's "forecast"). And Plaintiffs say that *Quality Systems* requires that cautionary language amount to "an outright admission." 865 F.3d at 1147-48. But again, the context was completely different. In *Quality Systems*, the Ninth Circuit addressed circumstances in which the safe harbor could protect a forward-looking statement supported by an accompanying *false* statement of present fact. *See id.* Plaintiffs have not identified such accompanying statements. Opp. 24-25 (identifying only "consistent with our Four Box Model analytics that we see," which is neither a statement of present fact, nor false or misleading).

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Case No. 3:20-cv-01260-SI

Gibson, Dunn &
Crutcher LLP

looking statement incorrect." *Cement Masons & Plasterers Joint Pension Tr. v. Equinix, Inc.*, 2012 WL 685344, at *5 (N.D. Cal. Mar. 2, 2012) (quotation marks omitted). Defendants made this point in their opening brief, *see* Mot. 31-32, and Plaintiffs tellingly ignore it. HP's cautionary language identified "important factors" affecting "the forward-looking statement[s]." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010). Under controlling law, that is enough. *Id.*

> **2.    The Opposition Confirms That Statements About The Reliability And Predictive Capability Of The Four Box Model Are Inactionable Opinion Statements**

Plaintiffs do not dispute that statements regarding the Four Box Model's reliability and predictive capability are opinion statements. *See* Opp. 25-26 (Category #6). Instead, they argue that those opinion statements are nonetheless actionable. *Id.* Opinion statements are actionable, however, only if, in the case of an affirmative misrepresentation, "'the speaker did not hold the belief she professed' and that the belief is objectively untrue." *Align*, 856 F.3d at 615-16 (quoting *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185-86 (2015)). Alternatively, a plaintiff asserting a misrepresentation by omission must identify "particular (and material) facts going to the basis for the issuer's opinion—facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission made the opinion statement at issue misleading." *Id.* at 615-16 (quoting *Omnicare*, 575 U.S. at 194). Plaintiffs argue that *Align* permits them to challenge an opinion statement simply by arguing that Defendants lacked a "reasonable basis" for their opinions. Opp. 26. That is simply not the law. *Align* holds that the only way in which a Section 10(b) plaintiff may challenge an opinion statement under an omission theory is by complying with *Omnicare*'s requirements—that is, by pleading with particularity that a specific Defendant omitted material information about the bases of his or her opinions, which is "no small task for an investor." *Align*, 856 F.3d at 615-16 (quoting *Omnicare*, 575 U.S. at 194).

Plaintiffs fail to plead an actionable opinion under either a false statement or an omission theory. Plaintiffs have effectively abandoned any false statement theory; they all but concede they have not pled facts showing that the Defendants did not subjectively believe their statements about the Four Box Model's reliability and predictive capability. This is not surprising given that the Four Box Model accurately predicted Supplies revenue growth throughout 2017 and 2018, and revenue

22

Gibson, Dunn & Crutcher LLP

stabilization by the end of 2017.  Mot. 34-35.  The model's accuracy and consistency over those two years provide strong evidence both that Defendants believed in the model's reliability and that that belief was objectively reasonable.  Thus, Plaintiffs have failed to create "a factual dispute," Opp. 26, regarding whether any of Defendants' opinion statements are actionable false statements.

Plaintiffs have not pled a misrepresentation by omission either.  Plaintiffs have failed to plead any omitted facts allegedly existing at the time of the challenged statements that "'call into question the issuer's basis for offering the opinion.'"  *Align*, 856 F.3d at 615 (quoting *Omnicare*, 575 U.S. at 194).  The only purported omission Plaintiffs cite is HP's use of third-party data as part of the Four Box Model.  Opp. 26.  But Plaintiffs allege no facts demonstrating that Defendants knew at the time of their statements that this could lead to inaccurate projections.  Revelations after the challenged statements cannot satisfy Plaintiffs' burden to plead "particular (and material) facts" about what "knowledge [Defendants] did or did not have" at the time they made the statements.  *Align*, 856 F.3d at 615 (quoting *Omnicare*, 575 U.S. at 194).

Plaintiffs also ignore that HP *disclosed* the use of information other than telemetry data in the Four Box Model.  The Complaint acknowledges that Defendants explained the model's reliance on "historical trends," AC ¶¶ 89, 247, which included market data from third parties in addition to HP's telemetry data, *id.* ¶ 73 (HP "fine-tun[es] assumptions based on what [it is] seeing in the market *and also . . .* big data" (emphasis added)); *id.* ¶ 89 (model "only getting better with the *incremental data* and insight we get from our installed base" (emphasis added)); *see also id.* ¶ 170 (describing model as including estimates from third-party analysts).  *See* Mot. 7.  Because HP "publicly disclosed" that the model relied on data other than HP user data, Plaintiffs' alleged omission of the model's use of third-party data cannot render Defendants' opinion statements actionable.  *Align*, 856 F.3d at 619.

### 3.    The Opposition Points To No Facts That Render Any Of The Remaining Statements False When Made

The remaining statements in the Complaint do not support Plaintiffs' claims of securities fraud because the Complaint fails to allege that the statements "were false when made."  *Ronconi*, 253 F.3d at 433.  These include statements related to the Four Box Model's access to telemetry data (Category #1), statements regarding "true demand" (Category #3), and statements that HP's Supplies

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Case No. 3:20-cv-01260-SI

Gibson, Dunn & Crutcher LLP

revenue had stabilized (Category #4).

*First*, Plaintiffs point to no facts in the Complaint indicating that statements regarding access to telemetry data were false when made. Plaintiffs pin their argument on statements made after issues with HP's Supplies business came to light—the purported corrective disclosures—arguing that in light of HP's February 2019 announcement, Defendants' "prior statements were necessarily false when made." Opp. 14. But in marked contrast to the kind of "I knew it all along" admission required by *Yourish* and its progeny, *supra* pp. 7-8, these later statements showed that Defendants were "surprised" by the lower market share projections based on "new" telemetry data in 2019. Ex. 13, Q1 2019 Earnings Call Tr. at 10.

*Second*, Plaintiffs attempt to manufacture an actionable misstatement regarding "true demand." Opp. 19-20. Plaintiffs' argument rests on the faulty premise that HP told investors it had precisely calculated a level of "true demand" in the market and attempted to place products in the market to hit that magic number. But Plaintiffs allege no facts to support this theory; indeed, the very statements Plaintiffs challenge in their Complaint make clear that "true demand" was an estimate created through "inventory ceiling[s]" and "ranges." Mot. 37. Here, Plaintiffs attempt to change the meaning of "Defendants' actual words" by citing to paragraphs in the Complaint comprising only Plaintiffs' characterization of Defendants' statements. Opp. 20 (citing AC ¶¶ 6, 19, 43, 84, 128-29). That Defendants' actual estimates later turned out to be inaccurate does not render statements concerning HP's efforts to keep inventory levels consistent with estimated demand false when made.

*Third*, Plaintiffs do not seriously argue that HP's statement that Supplies revenue had stabilized in Q3 2017 was materially false or misleading. Opp. 20-21. Plaintiffs do not dispute that Supplies revenue *had* in fact stabilized in the second half of 2017 and all of 2018. The suggestion that Defendants lacked "the real-time data necessary to reliably and accurately understand the state of the Supplies business," *id.* at 21, does not mean Supplies revenue did not stabilize. Supplies revenue *did* stabilize, as Defendants had predicted. *See* Mot. 7-8. And Plaintiffs do not contend that HP misstated its quarterly revenue guidance, restated its financials, or should have issued a restatement.

\* \* \* \* \*

For all these reasons, Plaintiffs have failed to meet their burden of pleading with

24

Gibson, Dunn & Crutcher LLP

particularized facts that any of the statements alleged in the Complaint both fell outside the PSLRA safe harbor and were false or misleading when made.

**C.    The Opposition Cannot Salvage Plaintiffs' Claims Under Section 20(a) Or Section 20A.**

Because Plaintiffs have failed to plead a primary violation under Section 10(b), their secondary claims under Section 20(a) and Section 20A necessarily fail as well.

Defendants also showed in their opening brief that no Plaintiff traded "contemporaneously" with Mr. Weisler.  The only relevant purchase Plaintiffs cite was made nine days after one of Mr. Weisler's stock sales, and trades nine days apart are not "contemporaneous."  In response, Plaintiffs cite a decision in which one court observed that "the purchase of stock nine days after a sale pushes the contours of contemporaneousness." *See City of Westland Police and Fire Ret. Sys. v. Sonic Sols.*, 2009 WL 942182, at *12 (N.D. Cal. Apr. 6, 2009).  Plaintiffs provide no reason why this Court should "push the contours" here, particularly as other courts have applied a far stricter interpretation of "contemporaneous."  *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1522 (N.D. Cal. 1990) ("[T]he contemporaneous requirement has been deemed not met if plaintiff's trade occurred more than a few days apart from defendants' transactions."); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1204-05 (C.D. Cal. 2008) (adopting "contemporaneousness rule" to apply to trades made "on the same trading day, or one trading day after, the insider's transaction"); *In re AST Research Sec. Litig.*, 887 F. Supp. 231, 234 (C.D. Cal. 1995) (requiring trades "occur on the same day").  The Court should dismiss the Section 20A claim against Mr. Weisler on this separate basis.

Moreover, the single trade by Mr. Lores on a day when (or even within ten days of when) Plaintiffs happened to purchase shares was made pursuant to a 10b5-1 trading plan.  That trade and each of the trades Plaintiffs assert were "contemporaneous" with Mr. Weisler's sales occurred in or before March 2018—nearly a year before the "new telemetry data" came to light.  As such, Plaintiffs have failed to allege that any trade was made "while in possession of material, nonpublic information," rendering their allegations insufficient.  *See In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1488 (N.D. Cal. 1992), *aff'd*, 11 F.3d 865 (9th Cir. 1993).

**CONCLUSION**

Defendants respectfully request that the Court dismiss the Complaint.

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Case No. 3:20-cv-01260-SI

Gibson, Dunn & Crutcher LLP

DATED:  January 20, 2021

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Brian M. Lutz*
BRIAN M. LUTZ (SBN 255976)
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306
blutz@gibsondunn.com

LISSA M. PERCOPO (*pro hac vice*)
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
Telephone: 202.887.3770
Facsimile: 202.530.9528
LPercopo@gibsondunn.com

SIDLEY AUSTIN LLP
SARA B. BRODY, SBN 130222
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: 415.772.1200
sbrody@sidley.com

*Attorneys for Defendants HP Inc., Dion J. Weisler, Catherine A. Lesjak, Steven J. Fieler, Enrique Lores, and Christoph Schell*

By: */s/ Steven Schatz*
WILSON SONSINI GOODRICH & ROSATI
STEVEN SCHATZ, SBN 118356
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  650.320.4856
SSchatz@wsgr.com

KATHERINE HENDERSON, SBN 242676
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1101
Telephone:  415.947.2065
KHenderson@wsgr.com

*Attorneys for Defendant Catherine A. Lesjak*

26

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Case No. 3:20-cv-01260-SI

Gibson, Dunn &
Crutcher LLP

## CERTIFICATE OF SERVICE

I, Brian M. Lutz, declare as follows:

I am employed in the County of San Francisco, State of California, I am over the age of eighteen years and am not a party to this action; my business address is 555 Mission Street, Suite 3000, San Francisco, California 94105-0921, in said County and State.

I hereby certify that on January 20, 2021, the foregoing **REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** was filed with the Clerk of the Court via CM/ECF.  Notice of this filing will be sent electronically to all registered parties by operation of the Court's electronic filing systems.

DATED: January 20, 2021                    By: */s/ Brian M. Lutz*
                                                          Brian M. Lutz

Gibson, Dunn &
Crutcher LLP

27
REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Case No. 3:20-cv-01260-SI