1
2
3
4                          UNITED STATES DISTRICT COURT
5                        NORTHERN DISTRICT OF CALIFORNIA
6
7    ELECTRICAL WORKERS PENSION              Case No. 20-cv-01260-SI
     FUND, LOCAL 103, I.B.E.W., et al.,
8
                   Plaintiffs,              **ORDER GRANTING DEFENDANTS'
9                                           MOTION TO DISMISS**
           v.
10                                          Re: Dkt. Nos. 49, 50, 62
     HP INC., et al.,
11
                   Defendants.
12

13          Now before the Court is defendants' motion to dismiss plaintiffs' amended complaint.  Dkt.

14   No. 49.  Plaintiffs and defendants have filed requests for judicial notice. Dkt. No. 50, 62.  For the

15   reasons set forth below, the Court **GRANTS** defendants' motion to dismiss with leave to amend.

16   The Court **GRANTS** plaintiffs' request for judicial notice and **GRANTS** defendants' request for

17   judicial notice.

18

19

20                                     **BACKGROUND**

21   **I.      Factual Background**

22          The following allegations are taken from the Amended Complaint ("AC"), which the Court

23   must treat as true for the purposes of this motion.

24          This matter arose in connection with statements by corporate executives of HP Inc. ("HP")

25   regarding HP's Four Box Model.  HP is a global provider of personal computers, printers, and

26   related supplies.  Dkt. No. 35, AC ¶¶ 2, 35.  In 2015, HP announced the Four Box Model, which

27   allowed HP to assess supplies revenue based on four factors: installed base, usage, printer supplies

28   market share or supplies attach, and price of supplies.  *Id*. ¶ 69.  According to HP, the Four Box

*United States District Court*
*Northern District of California*

Model used various forms of data and analytics to accurately predict supplies revenue. *Id.* ¶ 70.

During the class period, between February 23, 2017 and October 3, 2019, HP told investors that the Four Box Model predicted HP's supplies revenue would stabilize. *Id.* ¶¶ 88, 111, 242, 344. However, on February 27, 2019, HP's CEO, defendant Weisler, admitted that HP lacked statistically sufficient, accurate, and otherwise reliable telemetry data from HP's toner-based printer, meaning that the Four Box Model could not accurately predict supplies stabilization. *Id.* ¶ 174.

## II.      Current Matter

On February 19, 2020, the State of Rhode Island, Office of the General Treasurer, on behalf of the Employees' Retirement System of Rhode Island and Iron Workers Local 580 ("plaintiffs") filed this securities class action lawsuit against HP. Dkt. No. 1. On July 20, 2020, plaintiffs filed an amended complaint, bringing suit against HP, Inc.; Dion J. Weisler, President and Chief Executive Officer of HP from November 2015 to November 2019; Catherine A. Lesjak, Chief Financial Officer from November 2015 to July 2018, interim Chief Operating Officer from July 2018 to February 2019; Steven J. Fieler, Chief Financial Officer since July 2018; Enrique Lores, President of Imaging, Printing and Solutions; and Christoph Schell, Chief Commercial Officer since November 2019 (collectively "defendants"). Dkt. No. 35, AC ¶¶ 35; 37-42.

Plaintiffs allege violations of Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b–5, promulgated thereunder by the SEC, 17 C.F.R. § 240.10b–5. *Id.* ¶¶ 388-413. Plaintiffs allege defendants made false and misleading statements by failing to disclose the Four Box Model's lack of "reliable telemetry data from HP's toner-based printers and, instead, unbeknownst to investors, utilized inaccurate, stale, and lagging third-party survey data." *Id.* ¶ 279. Plaintiffs also allege violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against individual defendants for their roles as controlling persons of HP and one another during the class period. *Id.* ¶¶ 398-404. Finally, plaintiffs allege that individual defendants violated Section 20A of the Exchange Act and SEC Rule 10b-5 promulgated thereunder for insider trading based on violations of the Exchange Act and contemporaneous insider trading of HP common stock. *Id.* ¶¶ 405-413.

1    On October 2, 2020, defendants filed the present motion to dismiss plaintiff's amended

2    complaint.  Dkt. No. 49.  On December 11, 2020, plaintiffs filed an opposition.  Dkt. No. 59.

3    Defendants filed a reply on January 20, 2021.  Dkt. No. 70.

4    On October 2, 2020, defendants filed a request for judicial notice.  Dkt. No. 50.  On

5    December 11, 2020, plaintiffs filed an opposition to defendants' request for judicial notice and

6    submitted their own request for judicial notice.  Dkt. No. 61, 62.  On January 20, 2021, defendants

7    filed a reply in support of their request for judicial notice and an opposition to plaintiff's request for

8    judicial notice.  Dkt. No. 71.

9

10                                        **LEGAL STANDARD**

11    To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state

12    a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

13    This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a

14    sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

15    (2009).  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege

16    facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555,

17    570.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

18    cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does

19    a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*.

20    (quoting *Twombly*, 550 U.S. at 557).  "While legal conclusions can provide the framework of a

21    complaint, they must be supported by factual allegations." *Id*. at 679.

22    In deciding whether a plaintiff has stated a claim upon which relief can be granted, the court

23    must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the

24    plaintiff's favor.  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the

25    court is not required to accept as true "allegations that contradict exhibits attached to the Complaint

26    or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted

27    deductions of fact, or unreasonable inferences." *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992,

28    998 (9th Cir. 2010).

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    If the court dismisses a complaint, it must then decide whether to grant leave to amend. The

2    Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request

3    to amend the pleading was made, unless it determines that the pleading could not possibly be cured

4    by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and

5    internal quotation marks omitted).

6

7                                          **DISCUSSION**

8    **I.    Requests for Judicial Notice and Incorporation-by-Reference**

9        In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure,

10   the Court may generally consider matters properly subject to judicial notice or incorporated by

11   reference in the complaint.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322

12   (2007).  The Court "may judicially notice a fact that is not subject to reasonable dispute because it:

13   (i) is generally known within the trial court's territorial jurisdiction; or (ii) can be accurately and

14   readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID.

15   201.  The incorporation-by-reference doctrine allows the Court to consider documents that were

16   either "necessarily depended on" in the complaint or referenced in the complaint and not subject to

17   reasonable dispute. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

18       Plaintiffs and defendants requested judicial notice or incorporation-by-reference of various

19   documents, including SEC filings, transcripts of meetings, and an Order Instituting Cease-And-

20   Desist from the SEC.[1]  Dkt. No. 50, 62.  Both parties argue that the facts contained within each of

21   _____

22       [1] Defendants requested the Court take notice of twenty-three documents, including copies of
     HP's Annual Report on HP's Form 10-K,  Statements of Changes in Beneficial Ownership on HP's
23   Forms 4, transcripts of HP's earnings calls from 2017 to 2019, a transcript of HP's
     shareholder/analyst meetings, transcripts from HP's presentation at the Morgan Stanley Technology
24   Conference, a transcript of HP's presentation at the Bank of America Merrill Lynch Global
     Technology Conference, a transcript of HP's presentation at the Citi's Global Technology
25   Conference, a transcript of HP's presentation at the Deutsch Bank Technology Conference, and a
     transcript of HP's presentation at the Consumer Electronics Show Citigroup TMT Conference. Dkt.
26   Nos. 50; 51.
         Plaintiffs requested the Court take notice of an "Order Instituting Cease-And-Desist
27   Proceedings Pursuant to Section 8A of the Securities Act of 1933 and Section 21C of the Securities
     Exchange Act of 1934, Making Findings, and Imposing Remedial Sanctions and a Cease-And-
28   Desist Order."  Dkt. No. 62.  The Order was issued on September 30, 2020 by the Securities and
     Exchange Commission.

the opposing party's documents are subject to reasonable dispute.  Dkt. Nos. 61 (Plaint.'s Opp. to Defs' Req. for Jud. Notice) at 4, 6-7, 9 ,71; (Defs' Opp. to Plaintiffs' Request for Jud. Notice) at 8.

Without ruling on the admissibility of the exhibits, the Court **GRANTS** defendants' and plaintiffs' requests for judicial notice and takes notice of the existence of the parties' exhibits.  *See Coto Settlement v. Eisenberg,* 593 F.3d 1031, 1038 (9th Cir. 2010) ("On a motion to dismiss, [the court] may consider . . . matters of public record); *Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir.2006) (SEC filings subject to judicial notice). The Court does not take judicial notice of the truth of the contents that are subject to reasonable dispute.

## II.    Exchange Act Claims

Defendants move to dismiss plaintiffs' Section 10(b) claim for failure to adequately plead actionable misstatements and scienter, Section 20(a) claim for failure to plead an independent violation of the Exchange Act, and Section 20A claim for failure to plead an independent violation of the Exchange Act and contemporaneous trading.  Dkt. No. 49 at 11-39.

### A.    Section 10(b) of the Exchange Act

Section 10(b) of the Exchange Act makes it unlawful to "use or employ, in connection with the purchase or sale of any security...any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary."  15 U.S.C. § 78j(b).  A plaintiff asserting a claim under Section 10(b) must adequately allege (1) a material misrepresentation or omission by the defendant (falsity); (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014).

#### 1.    Material Misrepresentation

##### a.    Alleged Misstatements

Plaintiffs argue that, during the class period, defendants' statements about HP's Four Box Model and supplies revenue were false and misleading because of defendant Weisler's February 27,

United States District Court
Northern District of California

2019 admission that the Four Box Model lacked "statistically sufficient, accurate, and otherwise reliable telemetry data from HP's toner-based printers and . . . [used] third-party survey data." AC ¶¶ 167-169.  Plaintiffs argue that "without reliable telemetry data for commercial printers . . . Defendants had no reasonable basis to assure investors regarding the impact of HP's marketing efforts and changes to Supplies pricing . . . [or make] statements about the historical, current, or potential trajectory and sustainability of HP's Supplies business." *Id*. ¶¶ 169; 176; 181; 190; 198; 202; 214; 227; 232; 239; 245; 254; 259; 264; 267; 280; 288; 293.

### b.      Falsity

Defendants argue the AC fails to adequately plead why defendants' alleged misstatements were false or misleading.  Dkt. No. 49 at 35-38.  Plaintiffs argue defendants' admission on February 27, 2019 that HP did not have sufficient telemetry data establishes falsity. Dkt. No. 59 at 14.

The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires Section 10(b) claims to adequately plead falsity of alleged misstatements.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990–91 (9th Cir. 2009).  Falsity is adequately pled when the complaint states with particularity both the statements alleged to be misleading and the reason why the statement is misleading.  *In re Dao Systems Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005).

The AC fails to adequately plead why individual defendants' alleged misstatements were misleading.  Plaintiffs argue that falsity is established by defendants' February 27, 2019 admission that HP "*never* had telemetry data—or even 'statistically relevant' data—for a large key portion of its installed base . . . and instead relied on insufficient market surveys."  Dkt. No. 59 at 14, 15. Notably, plaintiffs' argument mischaracterizes the February 27, 2019 statement. According to the AC, on February 27, 2019, defendant Weisler said "[w]e did not have a *statistically significant* sample from the system telemetry and the instrumentation[.]" Dkt. No. 35, Compl. ¶ 348 (emphasis added).  Defendants' admission was that HP had telemetry data, though not a *statistically significant* amount.  Plaintiffs failed to how a lack of "a statistically significant sample from the system telemetry" causes defendants' prior statements about the Four Box Model to be misleading.

Moreover, the AC fails to give a reason why the lack of "a statistically significant sample

6

from the system telemetry" caused defendants' statements about the Four Box Model's use of data to be misleading. Defendants' statements during the class period only referenced the Four Box Model's use of trailing data, data that looks forward, and "big data"—not specifically a "system of telemetry" or telemetry data.  *See* Dkt. No. 35, AC ¶¶ 170 ("You have some assumptions. You've got some trailing data. You've got some data that looks forward. And we have all that data, as well. We have an incredible amount of data."); 206 ("Big data and analytics are becoming very important both in how do we manage our business but especially on how do we improve the profitability going forward and therefore, how we improve shareholder value."); 242 ("pricing is just a function of market elasticity and deeply understanding again, through big data, what the competitive environment is looking like region by region, country by country").   Defendants' alleged misstatements do not indicate that the Four Box Model exclusively relied on telemetry data. Because the AC fails to explain how defendants' alleged misstatements about certain types of data are misleading, the Court finds that the AC failed to adequately plead falsity. *Cf. Police Retirement System of St. Louis v. Intuitive Surgical*, *Inc. et al.*, 759 F.3d 1051, 1061 (9th Cir. 2014)  (holding disclosures are not required to follow "a rule of completeness . . . [because] '[n]o matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not.'") (internal citations omitted); *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (explaining PSRLA prohibits "misleading and untrue statements, not statements that are incomplete.")

Plaintiffs also argue that defendants had "no reasonable basis" to believe the accuracy and reliability of the Four Box model because defendants did not have proper data for the Four Box Model. Dkt. No. 59 at 25-26.  However, the Four Box Model's predictions were accurate in 2017 and 2018, suggesting a reasonable basis for relying on the Four Box model.  *See* AC ¶¶193 (supplies growth achieving stabilization one quarter earlier than expected in 2017); 241 (estimating Supplies growth in 1Q18 to be between 5% and 7% and actual growth was 6%).

Accordingly, the Court finds that the AC fails to adequately plead with particularity why defendants' statements about "big data" are misleading. For this reason, the Court **GRANTS** defendants' motion to dismiss, with leave to amend.

United States District Court
Northern District of California

### c.      Forward Looking Statements

Defendants argue that most of the alleged misstatements in the AC are forward-looking statements protected by PSLRA's safe harbor provision.  Dkt. No. 49 at 27-31.  Given the Court's finding that the AC fails to adequately plead why defendants' alleged misstatements were misleading, the Court declines to rule on whether any of defendants' alleged misstatements are protected by the PSLRA's safe harbor provision.

### 2.      Scienter

"To adequately plead scienter, the complaint must. . . 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Zucco*, 552 F.3d at 991 (citing 15 U.S.C. § 78u–4(b)(2)). "[T]he inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations." *Tellabs*, 551 U.S. at 324. The scienter inquiry "is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 322–23. In *Zucco*, the Ninth Circuit explained that the scienter inquiry requires "a dual inquiry: first, we will determine whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter; second, if no individual allegations are sufficient, we will conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Zucco*, 552 F.3d at 992.

Plaintiffs argue that a strong inference of scienter is established by a confidential witness ("CW"), the core operations theory, defendants' statements and conduct, resignation by HP's CEO, temporal proximity between the last alleged misstatement and the February 2019 admission, and defendants' sales of stock.

For the reasons stated below, plaintiffs' allegations, neither individually nor holistically, plead a strong inference of scienter.

### a.      Confidential Witness

Plaintiffs rely on statements from one CW.  The Court may rely on statements from a CW if (1) the CW is described with sufficient particularity to establish reliability and personal knowledge of the information alleged; and (2) the statements themselves are indicative of scienter.  *Zucco,* 552 F.3d 995.

The AC fails to establish the CW's reliability and personal knowledge of the information alleged. The CW did not interact with any of the individual defendants and did not personally attend defendant Weisler's CEO briefing calls or meetings where defendant Weisler was allegedly told about missing supplies leads.  *See id.* at 996 (finding CWs unreliable and lacking personal knowledge where CWs were "simply not positioned to know the information alleged, many report only unreliable hearsay, and others allege conclusory assertions of scienter."). Moreover, the CW's statements about defendant Weisler's CEO briefing calls lacked sufficient detail about the actual events that occurred during the briefing calls themselves.  *Cf. Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014) (holding witness statements inadequate to plead scienter because witness "[did] not detail the actual contents of the reports the executives purportedly referenced or had access to."); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999) ("We would expect that a proper complaint which purports to rely on the existence of internal reports would contain at least some specifics from those reports.")

### b.      Core Operations Theory

Plaintiffs argue the core operations theory supports a strong inference of scienter.  Dkt. No. 59 at 33-34; 78 (Transcript) at 5. Plaintiffs assert defendants would have known of the lack of a statistically significant system telemetry because of defendants' access to the system telemetry.  Dkt. No. 59 at 34.  Plaintiffs also argue defendants repeatedly told investors that they knew the details of Four Box Model and the data used by the model at a "granular level."  Dkt. No. 59 at 34; 78 at 5-6.

Under the core operations theory, "[a]llegations regarding management's role in a corporate structure and the importance of the corporate information about which management made false or misleading statements may also create a strong inference of scienter when made in conjunction with

detailed and specific allegations about management's exposure to factual information within the company." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008).  The facts supporting a core operations theory may add to a strong inference of scienter in three circumstances: "(1) 'in any form,' as part of a holistic analysis; (2) on their own, 'where they are particular and suggest that defendants had actual access to the disputed information'; and (3) on their own 'in a more bare form, without accompanying particularized allegations, in rare circumstances where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter.'" *Webb v. Solarcity Corporation et al.*, 854 F.3d 844, 854 (9th Cir. 2018) (internal citations omitted).

The Court finds that the core operations theory does not establish a strong inference of scienter.  Defendants' alleged misstatements regarding different types of data or big data do not establish that defendants, as corporate executives, had actual access to the whole system of telemetry.  *See Police Retirement System of St. Louis v. Intuitive Surgical, Inc. et al.*, 759 F.3d 1051, 1062 (9th Cir. 2014) (requiring "plaintiff [to] produce either specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations . . . or witness accounts demonstrating that executive had actual knowledge in creating the false reports" for core operations theory to apply).  Moreover, defendants' statements about the Four Box Model using data at a "granular level," do not establish that the defendants were involved in the data collections or supplies revenue calculation decisions of the Four Box Model.  *See Web*, 854 F.3d at 857 (declining to apply core operations theory where corporate executives had "hands-on style and general accounting acumen" and not "involved in accounting decisions as minute as the calculation of the burden ratio and inclusion of prior period direct costs in the ratio's denominator."); *Zucco*, 552 F.3d 1000 (finding core operations theory does not apply where complaint had "allegations that senior management ... closely reviewed the accounting numbers generated ... each quarter ... and that top executives had several meetings in which they discussed quarterly inventory numbers").

### c.   Defendants' Statements and Conduct

Plaintiffs argue defendants' statements and conduct support a strong inference of scienter.

1    Dkt. No. 59 at 27.  Plaintiffs assert defendants knew of the falsity of their statements because they

2    personally monitored HP's data and the Four Box Model.  Dkt. No. 59 at 27.

3          However, defendants' statements of general access to the Four Box Model do not establish

4    that they personally monitored the system telemetry or had access to all data within the system.  *See*

5    *Webb*, 884 F.3d at 857 (failure to plead scienter where defendants only had "generalized access to

6    reports that may have documented its application"); *Glazer Capital Mgmt. LLP v. Magistri*, 549

7    F.3d 736,746 (9th Cir. 2008) ("[G]eneral allegations of defendants' 'hands-on' management style,

8    their interaction with other officers and employees, their attendance at meetings, and their receipt

9    of unspecified weekly or monthly reports are insufficient[] to create a strong inference of scienter.")

10   (internal citations omitted).

12          **d.      Resignation**

13          Plaintiffs argue defendant Weisler's sudden resignation from the CEO position provides a

14   strong inference of scienter.  The Court disagrees. The AC indicates that defendant Weisler's

15   resignation was due to a "family health matter."  Dkt. No. 35, AC ¶ 144. *See City of Dearborn*

16   *Heights*, 856 F.3d 605 (9th Cir. 2017) ("[A]n employee's resignation supports an inference of

17   scienter only when 'the resignation at issue was uncharacteristic when compared to the defendant's

18   typical hiring and termination patterns or was accompanied by suspicious circumstances.'")

19   (internal citations omitted).

21          **e.      Temporal Proximity**

22          Plaintiffs argue that the temporal proximity between defendants' alleged misstatements and

23   the February 2019 statement support a strong inference of scienter.  Dkt. No. 59 at 26-37.

24          The Court finds the seven-week gap between defendants' last alleged misstatement and the

25   alleged February 2019 statement is insufficient to establish scienter. *See Ronconi v. Larkin*, 253

26   F.3d 423, 437 (9th Cir. 2001) (concluding five-week period insufficient to establish scienter).

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### f.    Stock Sales

Plaintiffs argue that defendants' stock sales during the class period indicate a strong inference of scienter.  Dkt. No.

The Court finds that defendants' stock sales do not support a strong inference of scienter. Except for one stock sale, defendants' stock sales were made to either satisfy tax obligations or according to a 10b5-1 plan.  Dkt. No. 51-4 (Exhibit 4); 51-5 (Exhibit 5); 78 at 23.  *See Curry v. Yelp. Inc.,* 875 F.3d 1219, 1226 n.2 (9th Cir. 2017) (explaining "stock sales made pursuant to a Rule 10b5-1 plan . . . allows for stock sales over a predetermined period without concern for the market.");  *Metzler Inv. GMBH v. Corinthian Colleges*, 540 F.3d 1049, 1067 n.11 (9th Cir. 2008) ("Sales according to pre-determined plans may rebut [ ] an inference of scienter.'") (internal citations omitted).

The one stock sale that was neither sold for tax purposes nor pursuant to a 10b-5 plan was by defendant Lores on May 31, 2017.  AC ¶ 329.  To be considered suspicious, a stock sale must be "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001).

The AC fails to adequately plead how defendant Lores' stock sale during the class period was dramatically out of line with his prior trading practices.  Defendant Lores' May 31, 2017 stock sale disposed of 59,000 shares for a total of $ 1,109,218.  AC ¶ 329.  Similar to this stock sale, defendant Lores' prior trading history involved selling "approximately 114,000 shares of HP stock, for total proceeds of approximately $1,525,603." *Id*. 331.

Accordingly, when considering plaintiffs' scienter factors both individually and holistically, the Court finds that the AC fails to adequately plead a strong inference of scienter. The AC fails to adequately plead that defendants had actual knowledge of falsity at the time defendants made the alleged misstatements during the class period.  For this additional reason, the Court **GRANTS** defendants' motion to dismiss, with leave to amend.

### B.    Section 20(a) of the Exchange Act

Defendants move to dismiss plaintiffs' claims under Section 20(a) of the Securities

1   Exchange Act because the AC failed to adequately plead a violation of Section 10(b) of the

2   Securities Exchange Act.  Dkt. No. 49 at 38.  Plaintiffs argue the AC adequately plead a primary

3   violation of Section 10(b).  Dkt. No. 59. At 39.

4       For the reasons stated above, the Court finds plaintiffs failed to adequately plead a violation

5   of 10(b) of the Securities Exchange Act.  For this additional reason, the Court **GRANTS** defendants'

6   motion to dismiss, with leave to amend.

7

8       **C.**      **Section 20A of the Exchange Act**

9       Defendants move to dismiss plaintiffs' claims under Section 20A of the Exchange Act.

10  Plaintiffs argue the AC establishes contemporaneous trading by pleading that plaintiffs purchased

11  HP shares on the same day as one of defendant Lores's trades and within nine days of defendant

12  Weisler's trades.  Dkt. No. 59 at 38-39.

13      Section 20A of the Exchange Act requires plaintiffs to establish (1) an independent violation

14  of another provision of the securities laws, (2) defendants traded while in the possession of material,

15  nonpublic information, and (3) contemporaneous trading activity between plaintiffs and defendants.

16  *In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1488 (N.D. Cal. 1992), *aff'd.,* 11 F.3d 865 (9th Cir.

17  1993).

18              **1.**       **Independence Violation**

19      For the reasons stated above, the Court finds plaintiffs failed to adequately plead a violation

20  of 10(b) of the Securities Exchange Act. For this additional reason, the Court **GRANTS** defendants'

21  motion to dismiss, with leave to amend.

22

23              **2.**       **Contemporaneous Trading**

24      The Court finds that the AC adequately pleads contemporaneous trading.   The AC

25  adequately pleads two contemporaneous trades: (1) Defendant Weisler's sale of stock on November

26  6, 2017 and Lead Plaintiff Iron Worker's subsequent purchase on November 15, 2017 and (2)

27  Defendant Lores' sale on March 9, 2018 and Iron Workers' purchase on the same day.  *See In re*

28  *Verifone Sec. Litig.*, 784 F. Supp. at 1489 (9th Cir. 1993) ("[A] reasonable period of liability . . .

United States District Court
Northern District of California

13

1    could be as short as a few days, but no longer than a month"); *Evanston Police Pension Fund v.*

2    *McKesson Corp.*, 411 F. Supp. 3d 580, 591 (N.D. Cal. 2019) (holding contemporaneous trading

3    adequately pled when alleged insider's stock sales occurred six and nine days before plaintiff's

4    purchase).

5

6                                          **CONCLUSION**

7

8        For the foregoing reasons, the Court **GRANTS** defendants' motion to dismiss the Amended

9    Complaint and **GRANTS** plaintiffs leave to amend.  The Court also **GRANTS** defendants' request

10   for judicial notice and **GRANTS** plaintiffs' request for judicial notice.  <u>**Any amended complaint**</u>

11   <u>**must be filed no later than April 9, 2021.  The Case Management Conference currently**</u>

12   <u>**scheduled for March 28, 2021 is continued to Friday, May 7, 2021 at 3:00 p.m.**</u>

13

14

15       **IT IS SO ORDERED**.

16   Dated:  March 19, 2021

17                                          _____

18                                          SUSAN ILLSTON
                                            United States District Judge
19

20

21

22

23

24

25

26

27

28