**KESSLER TOPAZ MELTZER**
      **& CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
(jjoost@ktmc.com)
Stacey M. Kaplan (Bar No. 241989)
(skaplan@ktmc.com)
One Sansome Street, Suite 1850
San Francisco, CA  94104
Telephone: (415) 400-3000

**BERNSTEIN LITOWITZ BERGER**
      **& GROSSMANN LLP**
John J. Rizio-Hamilton (admitted *pro hac vice*)
(johnr@blbglaw.com)
Jeremy P. Robinson (admitted *pro hac vice*)
(jeremy@blbglaw.com)
1251 Avenue of the Americas
New York, NY  10020
Telephone: (215) 554-1400

[Additional Counsel Appear on Signature Page]

*Lead Counsel for Lead Plaintiffs and*
*the Settlement Class*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE HP INC. SECURITIES LITIGATION | Case No. 3:20-cv-01260-SI |
| | CLASS ACTION |
| | **LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Judge:     Hon. Susan Illston |
| | Date:      July 28, 2023 |
| | Time:      10:00 a.m. |

MOTION FOR FINAL APPROVAL OF
SETTLEMENT

Case No. 3:20-cv-01260-SI

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION ................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 2

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 2

I.      PRELIMINARY STATEMENT ................................................................. 2

II.     THE SETTLEMENT WARRANTS FINAL APPROVAL ................................................................. 5

        A.      Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class in the Action ................................................................. 7

        B.      The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel with the Assistance of an Experienced Neutral ................................................................. 8

        C.      The Settlement Provides the Settlement Class Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and the Other Rule 23(e)(2) Factors ................................................................. 10

                1.      The Amount Offered in Settlement ................................................................. 10

                2.      The Strength of Lead Plaintiffs' Case ................................................................. 12

                3.      The Complexity, Expense, and Duration of Continued Litigation ................................................................. 15

                4.      Risk of Maintaining Class Action Status ................................................................. 16

                5.      The Extent of Discovery Completed and the Stage of Proceedings ................................................................. 16

                6.      The Experience and Views of Counsel ................................................................. 17

                7.      Existence of a Governmental Investigation ................................................................. 18

                8.      The Reaction of Settlement Class Members to Date ................................................................. 18

        D.      The Remaining Rule 23(e)(2) Factors Also Support Final Approval ................................................................. 19

III.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL ................................................................. 21

IV.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ................................................................. 22

V.      NOTICE OF THE SETTLEMENT SATISFIED THE REQUIREMENTS OF RULE 23, DUE PROCESS, AND THE PSLRA ................................................................. 23

VI.     CONCLUSION ................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018)..............................................................................................9

*In re Apollo Grp., Inc. Sec. Litig.*,
2010 WL 5927988 (9th Cir. June 23, 2010) ...........................................................................12

*Azar v. Blount Int'l, Inc.*,
2019 WL 7372658 (D. Or. Dec. 31, 2019) ..............................................................................11

*In re Biolase, Inc. Sec. Litig.*,
2015 WL 12720318 (C.D. Cal. Oct. 13, 2015)..................................................................... 11-12

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .................................................................................................8, 9

*In re Bofl Holding, Inc. Sec. Litig.*,
2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) ..........................................................................15

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ..............................................................................................5, 6

*In re Celera Corp. Sec. Litig.*,
2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ..................................................................... 14-15

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices, & Prods. Liab. Litig.*,
2019 WL 2554232 (N.D. Cal. May 3, 2019) .............................................................................7

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ........................................................................................ *passim*

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) .............................................................................................6, 21

*Davis v. Yelp, Inc.*,
2023 WL 3063823 (N.D. Cal. Jan. 27, 2023)............................................................................7

*Destefano v. Zynga, Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...........................................................................10

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)...........................................................................................................14, 15

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974).................................................................................................................23

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ....................................................................................................7

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019)..............................................................................11

*Fleming v. Impax Labs., Inc.*,
  2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) ............................................................................22

*Fleming v. Impax Labs. Inc.*,
  2022 WL 2789496 (N.D. Cal. July 15, 2022)........................................................................15, 22

*In re Google LLC St. View Elec. Commc'ns Litig.*,
  2020 WL 1288377 (N.D. Cal. Mar. 18, 2020)............................................................................18

*Hampton v. Aqua Metals, Inc.*,
  2021 WL 4553578 (N.D. Cal. Oct. 5, 2021)...............................................................................21

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...............................................................................................6, 8

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012).................16

*Hefler v. Wells Fargo & Co.*,
  2018 WL 4207245 (N.D. Cal. Sept. 4. 2018) .........................................................................9, 20

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)........................................................................6, 22

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F. 3d 713 (11th Cir. 2012) ...................................................................................................12

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ........................................................................................................5

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
  2012 WL 5199742 (D. Nev. Oct. 19, 2012) ...............................................................................12

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007)......................................................................................17

*Joh v. Am. Life Ins. Co.*,
  2020 WL 109067 (N.D. Cal. Jan. 9, 2020) ..................................................................................8

*Kendall v. Odonate Therapeutics, Inc.*,
  2022 WL 1997530 (S.D. Cal. June 6, 2022)...............................................................................12

*Knapp v. Art.com, Inc.*,
  283 F. Supp. 3d 823 (N.D. Cal. 2017) ........................................................................................12

*Kuraica v. Dropbox, Inc.*,
  2021 WL 5826228 (N.D. Cal. Dec. 8, 2021)......................................................................... 17-18

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ........................................................................................................6

*In re LendingClub Sec. Litig.*,
    282 F. Supp. 3d 1171 (N.D. Cal. 2017) ....................................................................................7

*In re LinkedIn User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015)............................................................................................15

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ......................................................................................... 16-17

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg.,*
    *Sales Practices & Prods. Liab. Litig.*,
    952 F.3d 471 (4th Cir. 2020) ..................................................................................................20

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ...............................................................................10, 12, 16, 17

*In re MGM Mirage Sec. Litig.*,
    708 F. App'x 894 (9th Cir. 2017)............................................................................................23

*Mild v. PPG Indus., Inc.*,
    2019 WL 3345714 (C.D. Cal. July 25, 2019)..........................................................................10

*Miller v. Ghirardelli Chocolate Co.*,
    2014 WL 4978433 (N.D. Cal. Oct. 2, 2014)............................................................................20

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)................................................................................................................23

*Nat'l Rural Telecomms. Coop. v. DirectTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................................17

*In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*,
    768 F. App'x 651 (9th Cir. 2019) ...........................................................................................20

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)...................................................................... 7-8

*Nguyen v. Radient Pharm. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ...........................................................................21

*Nobles v. MBNA Corp.*,
    2009 WL 1854965 (N.D. Cal. June 29, 2009)....................................................................12, 15

*Officers of Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ..................................................................................................10

*In re OmniVision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal 2008) ...................................................................................16

*In re Oracle Sec. Litig.*,
    1994 WL 502054 (N.D. Cal. June 18, 1994).........................................................................21

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ...............................................................................................7

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ...........................................................................15

*Quiruz v. Specialty Commodities, Inc.*,
2020 WL 6562334 (N.D. Cal. Nov. 9, 2020) ...................................................................... 17-18

*In re Rambus Inc. Derivative Litig.*,
2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ............................................................................16

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994) ...................................................................................................23

*Spann v. J.C. Penney Corp.*,
314 F.R.D. 312 (C.D. Cal. 2016) .............................................................................................24

*Taafua v. Quantum Glob. Techs., LLC*,
2021 WL 579862 (N.D. Cal. Feb. 16, 2021) .............................................................................5

*Vataj v. Johnson*,
2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) .....................................................................11, 24

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
2019 WL 2077847 (N.D. Cal. May 10, 2019) ...........................................................................6

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
229 F. Supp. 3d 1052 (N.D. Cal. 2017) ...................................................................................18

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
895 F.3d 597 (9th Cir. 2018) .....................................................................................................5

*Yaron v. Intersect ENT, Inc.*,
2021 WL 5184290 (N.D. Cal. Nov. 5, 2021) ..........................................................................24

*Young v. LG Chem., Ltd.*,
783 F. App'x 727 (9th Cir. 2019) ............................................................................................24

**Statutes**

15 U.S.C. § 78u-4 ...........................................................................................................................24

28 U.S.C. § 1715............................................................................................................................18

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2022
Review and Analysis*, Cornerstone Research (2022)................................................................10

U.S. Courts of Appeals—Decisions in Cases Terminated on the Merits, by
Circuit and Nature of Proceeding, During the 12-Month Period Ending
June 30, 2022, Table B-5, U.S. Courts of Appeal Statistical Tables for
The Federal Judiciary (June 30, 2022)......................................................................................11

### NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION

PLEASE TAKE NOTICE that on July 28, 2023 at 10:00 a.m., via videoconference, the Honorable Susan Illston presiding, Court-appointed Lead Plaintiffs the State of Rhode Island, Office of the General Treasurer, on behalf of the Employees' Retirement System of Rhode Island, and Iron Workers Local 580 Joint Funds (together, "Lead Plaintiffs") will and hereby do move pursuant to Federal Rule of Civil Procedure ("Rule") 23(e)(1) for orders: (i) granting final approval of the proposed settlement of the above-captioned action ("Action") as set forth in the Stipulation and Agreement of Settlement dated March 2, 2023 (ECF No. 118-1) ("Stipulation" or "Stip."); and (ii) approving the proposed plan for allocating the net proceeds of the Settlement to the Settlement Class ("Plan of Allocation" or "Plan").

This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities that follows, the accompanying declarations, including the Joint Declaration of Jennifer L. Joost and Jeremy P. Robinson in Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Joint Declaration" or "Joint Decl."), the Stipulation, the papers and pleadings filed in this Action, the arguments of counsel, and any other matters properly before the Court.[1]

Lead Counsel are not aware of any opposition to the motion. Pursuant to the Court's Order Preliminarily Approving Settlement and Providing for Notice dated April 7, 2023 (ECF No. 124) ("Preliminary Approval Order"), any objections to the Settlement and/or Plan of Allocation must be filed by July 7, 2023, and will be addressed in Lead Plaintiffs' reply papers to be filed on July 21, 2023. A proposed judgment and order granting the relief requested herein will be submitted with Lead Plaintiffs' reply papers, after the objection deadline has passed.

---

[1] All capitalized terms not otherwise defined herein have the meanings ascribed to them in the Stipulation and Joint Declaration. Unless otherwise noted, all internal quotation marks, citations, or other punctuation are omitted, and all emphasis is added.

MOTION FOR FINAL APPROVAL OF SETTLEMENT    1    Case No. 3:20-cv-01260-SI

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether the Court should approve the proposed Settlement of the Action as fair, reasonable, and adequate under Rule 23(e)(2).

2.    Whether the Court should approve the Plan of Allocation as fair and reasonable.

3.    Whether the Court should finally certify the Settlement Class pursuant to Rules 23(a) and (b)(3) for the purposes of effectuating the Settlement only.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Lead Plaintiffs, on behalf of themselves and the Settlement Class, respectfully submit this Memorandum of Points and Authorities in support of their motion for final approval of the proposed Settlement, approval of the proposed Plan of Allocation, and certification of the Settlement Class for settlement purposes.

**I.    PRELIMINARY STATEMENT**

After nearly three years of litigation, including extensive investigation, the filing of multiple detailed complaints, two rounds of motion to dismiss briefing and argument, full briefing of Lead Plaintiffs' appeal from the Court's order and judgment dismissing the Action, and extended arm's-length negotiations, Lead Plaintiff and Lead Counsel have succeeded in securing a $10.5 million cash recovery for the Settlement Class. If approved by the Court, this Settlement will resolve all claims asserted in the Action. The Settlement is a favorable result for the Settlement Class and readily satisfies Rule 23(e)(2)'s standards for final approval.

As set forth herein, the Settlement provides a considerable benefit to the Settlement Class by conferring a certain and near-term recovery while avoiding the significant risks of continued litigation. Indeed, the Settlement was reached after the Court dismissed the Action in its entirety twice and while Lead Plaintiffs' appeal of the dismissal and judgment was scheduled for oral argument before the Ninth Circuit. Had the Ninth Circuit affirmed this Court's dismissal of the Action, Settlement Class Members would have recovered nothing. As the Court acknowledged at the hearing on Lead Plaintiffs' motion for preliminary approval, "[t]his is an excellent resolution of a challenging issue." ECF No. 128 at 3:5-6.

Moreover, even if successful on appeal, Lead Plaintiffs and the Settlement Class would face numerous additional risks on remand as well as further years of litigation and significant expense. While Lead Plaintiffs and Lead Counsel believe their claims against Defendants are meritorious, they recognize that the Court already determined that Lead Plaintiffs failed to adequately plead both (i) particularized facts demonstrating the falsity of Defendants' alleged misstatements; and (ii) a strong inference of scienter. To get past summary judgment and prevail at trial, Lead Plaintiffs would have to convince the Court (after two previously unsuccessful attempts), and ultimately a jury, that the statements at issue in the Action were false or misleading and that Defendants knew, or recklessly disregarded, that these statements were false or misleading. Lead Plaintiffs also would have to establish that the alleged misrepresentations and omissions proximately caused the Settlement Class's losses, as well as the amount of per-share damages.

Throughout the Action, Defendants asserted vigorous challenges to Lead Plaintiffs' claims. Had the Action been remanded, Defendants would continue to argue that they made no misrepresentations about HP's change from a "push" to a "pull" sales model, the reliability of HP's forecasting tool (i.e., the Four Box Model), their confidence in its predictive abilities, or HP's supplies business, that they had assumed no duty to disclose certain facts that Lead Plaintiffs claimed were misleadingly omitted, and that any omissions did not render their statements materially misleading. Joint Decl., ¶¶ 54-58. Defendants would further argue that many of the alleged misstatements were forward-looking statements shielded by the PSLRA's safe harbor provision, or inactionable opinion statements. *Id.*, ¶ 59. With respect to scienter, Defendants would continue to maintain that they believed their statements to be true and had no motive to mislead investors. Defendants would further assert that they did not know or have any reason to believe that the assumptions fed into the Four Box Model were flawed and HP's projections based on such model unreliable. *Id.*, ¶¶ 60-63.

Lead Plaintiffs would also face hurdles to establishing loss causation and the Settlement Class's full amount of damages. Defendants would likely argue that the price declines in HP's common stock were not caused by the revelation of the relevant truth concealed by Defendants' alleged misstatements, but rather, by lower-than-expected revenues for HP's supplies business. *Id.*,

¶¶ 64-65. Relatedly, Defendants would assert that Lead Plaintiffs could not "disaggregate" the price declines caused by disclosure of the relevant truth concealed by Defendants' alleged misstatements from the declines caused by other news released on the same day. *Id*., ¶ 66. Thus, even if Lead Plaintiffs succeeded in proving liability, the foregoing arguments, if accepted, had the potential to significantly diminish, or even eradicate, the Settlement Class's recovery.

As detailed in the Joint Declaration, based on their extensive investigation and prosecution of the Action, Lead Plaintiffs and Lead Counsel were well-informed of the strengths and weaknesses of the case prior to reaching the Settlement.[2] Moreover, the Settlement is the product of hard-fought, arm's-length negotiations between the Parties with the assistance of an experienced mediator, Jed D. Melnick of JAMS; the preparation and exchange of position statements on liability and damages; and extensive discussions. Joint Decl., ¶¶ 42-43. The Parties' negotiations culminated in Mr. Melnick's issuance of a mediator's proposal to resolve the Action for $10.5 million, which the Parties accepted on November 22, 2022. *Id*., ¶ 44 The Settlement is not "claims-made" and all Settlement proceeds, after the deduction of Court-approved fees and costs, will be distributed to Settlement Class Members who submit Claims accepted by the Court for payment.

Following a hearing on April 7, 2023, the Court preliminarily approved the Settlement, finding it likely that the Court will approve the Settlement at the final approval stage. ECF No. 124, ¶ 4. The Settlement has the full support of the sophisticated, institutional investor Lead Plaintiffs, and the reaction of the Settlement Class to date has been positive. While the objection deadline has not yet passed, following the dissemination of 634,337 Postcard Notices and 4,172 Notice Packets to Settlement Class Members and Nominees as well as publication of a summary notice online and in high-circulation media,[3] there have been no objections. Joint Decl., ¶¶ 78, 89.

---

[2]    The Joint Declaration is an integral part of this submission and, for the sake of brevity herein, Lead Plaintiffs respectfully refer the Court to the Joint Declaration for a detailed description of, *inter alia*: the claims asserted, the procedural history of the Action, the Settlement negotiations, the risks of continued litigation, compliance with the Court-approved notice plan, the reaction of the Settlement Class to date, and the Plan of Allocation.

[3]    *See* Declaration of Jack Ewashko Regarding (A) Dissemination of Postcard Notice and Notice Packet; (B) Publication of Summary Notice; (C) Establishment of Telephone Helpline and Settlement Website; and (D) Report on Requests for Exclusion Received to Date ("Ewashko Decl.") attached as Ex. 4 to the Joint Declaration, ¶¶ 8-10.

Given the foregoing considerations and the factors addressed below, Lead Plaintiffs and Lead Counsel respectfully submit that: (i) the Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Settlement Class; and (ii) the Plan of Allocation is a fair and reasonable method for equitably distributing the Net Settlement Fund to the Settlement Class. Lead Plaintiffs also request that the Court grant final certification to the Settlement Class for purposes of effectuating the Settlement.

## II.     THE SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e) requires judicial approval of any class action settlement. Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). Whether to grant such approval lies within the district court's sound discretion. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018). In exercising this discretion, a court should be guided by the Ninth Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *see also Taafua v. Quantum Glob. Techs., LLC*, 2021 WL 579862, at *3 (N.D. Cal. Feb. 16, 2021) ("The Ninth Circuit has declared that a strong judicial policy favors settlement of Rule 23 class actions.").

"Under [Rule] 23(e)(2), a district court may approve a class action settlement only after finding that the settlement is fair, reasonable, and adequate." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1120-21 (9th Cir. 2020). In making that determination, Rule 23(e)(2) provides that a court should consider whether:

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

(i)      the costs, risks, and delay of trial and appeal;

(ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv) any agreement required to be identified under Rule 23(e)(3); and

 (D) the proposal treats class members equitably relative to each other.

Consistent with Rule 23(e)(2)'s guidance, the Ninth Circuit has identified similar factors for courts to consider in deciding whether to approve a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (approving settlement after considering both the "Rule 23(e)(2) factors . . . and the factors identified in" Ninth Circuit case law).[4] Further, the Ninth Circuit has explained that a court's review of a settlement should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). In approving a settlement, a court "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

At the preliminary approval stage, the Court considered the Rule 23(e)(2) factors in assessing the Settlement, and found the Settlement to be fair, reasonable, and adequate, subject to further

---

[4]   The "goal" of the 2018 amendments to Rule 23(e)(2) was "not to displace" any of the factors historically articulated by the various Circuits, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Campbell*, 951 F.3d at 1121 n.10. "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

evaluation at the Settlement Hearing. ECF No. 124, ¶ 5. Nothing has changed to alter this previous analysis, and the factors supporting the Court's determination to preliminarily approve the Settlement apply equally now. *See, e.g.*, *Davis v. Yelp, Inc.*, 2023 WL 3063823, at *1 (N.D. Cal. Jan. 27, 2023) (reaffirming finding at preliminary approval stage); *In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"). Accordingly, the Settlement is fair, reasonable, and adequate and warrants final approval under the Rule 23(e)(2) factors and Ninth Circuit law.

### A.    Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class in the Action

In determining whether to approve a class action settlement, the Court should first consider whether Lead Plaintiffs and Lead Counsel "have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). To determine adequacy, "courts consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *See, e.g.*, *In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1182 (N.D. Cal. 2017). This factor clearly weighs in favor of the Settlement.

Lead Plaintiffs' claims, all of which are based on a common course of alleged wrongdoing by Defendants, are typical of other Settlement Class Members and Lead Plaintiffs have no interests antagonistic to the Settlement Class. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (adequacy of representation depends on "an absence of antagonism" and "a sharing of interest" between representatives and absent class members). In addition, Lead Plaintiffs—like all other Settlement Class Members—have an interest in obtaining the largest possible recovery from Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). As the only movants that stepped up to represent the Settlement Class at the lead plaintiff stage, Lead Plaintiffs have adequately represented the interests of the Settlement Class in both their vigorous prosecution of the Action

during the past three years—*inter alia*, communicating regularly with Lead Counsel regarding the posture and progress of the Action and reviewing all significant pleadings and briefs—as well as their participation in the negotiation and achievement of the Settlement. *See generally* Joint Decl., ¶ 7; *see also* Cheng Decl. ¶ 5; Tormey Decl. ¶ 5.

Likewise, Lead Plaintiffs retained counsel who are highly experienced in securities class action litigation and have successfully prosecuted many of these actions throughout the United States. S*ee* Joint Decl., Ex. 5A-5 (KTMC resume) & Ex. 5B-5 (BLB&G resume). Here, Lead Counsel actively pursued the claims asserted in the Action on behalf of the Settlement Class and aggressively negotiated a favorable Settlement through mediation. *See Churchill*, 361 F.3d at 576-77 (instructing courts to consider "*experience and views of counsel*") (emphasis in original).

### B.    The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel with the Assistance of an Experienced Neutral

The Court should next consider whether the settlement was "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). This includes consideration of related circumstances bearing on the procedural fairness of the settlement, including: (i) counsel's understanding of the strengths and weakness of the case based on factors such as "the extent of discovery completed and the stage of the proceedings," *Hanlon*, 150 F.3d at 1026; (ii) the presence or absence of any indicia of collusion, *see In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); and (iii) the involvement of a mediator, *see Joh v. Am. Life Ins. Co.*, 2020 WL 109067, at *7 (N.D. Cal. Jan. 9, 2020) ("The involvement of a neutral mediator is evidence that settlement negotiations were conducted at arm's length."). This factor supports final approval of the Settlement.

The Settlement is the product of a hard-fought, arm's-length negotiation process, including negotiations overseen by an experienced mediator, Jed Melnick, and the preparation and exchange of mediation submissions on liability and damages. Joint Decl., ¶¶ 42-43. Following extensive negotiations, Mr. Melnick issued a double-blind mediator's proposal to resolve the Action for $10.5 million. On November 22, 2022, both sides accepted the proposal. *Id*., ¶ 44.

As courts in this District have explained, the fact that the Parties reached a settlement through arm's-length negotiations between experienced counsel creates a presumption of fairness. *See In re*

---

*Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel."). The involvement of an experienced mediator in the settlement process, like Mr. Melnick here, further "confirms that the settlement is non-collusive." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018).

In addition, as noted above, Lead Plaintiffs possessed a thorough understanding of the strengths and weaknesses of the case before reaching the Settlement. As detailed in the Joint Declaration, Lead Counsel conducted an extensive investigation, including interviews (facilitated through in-house investigators) with dozens of former HP employees, prepared two detailed amended complaints, briefed and argued their opposition to motions to dismiss the complaints, and fully briefed an appeal of the Court's MTD Order. Joint Decl., ¶¶ 5, 96. The Parties' settlement negotiations further informed the Parties of the strength of each side's arguments. *Id.*, ¶ 43.

Finally, the Settlement has none of the indicia of possible collusion identified by the Ninth Circuit, such as a "clear-sailing" fee agreement or a provision that would allow settlement proceeds to revert to Defendants.[5] *See Bluetooth*, 654 F.3d at 947. In short, the Settlement was reached after arm's-length negotiations supervised by an experienced mediator and conducted by well-informed counsel, and was not a product of fraud, overreaching, or collusion among the Parties.[6]

---

[5]    *See* Stip., ¶ 15 ("Lead Counsel's application for attorneys' fees and/or Litigation Expenses is not the subject of any agreement between Defendants and Lead Plaintiffs other than what is set forth in this Stipulation."); *id.*, ¶ 13 ("The Settlement is not a claims-made settlement. Upon the occurrence of the Effective Date, no Defendant, Defendants' Releasee, or any other person or entity (including Defendants' insurance carriers) who or which paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, including without limitation, the number of Claims submitted, the collective amount of Recognized Claims of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.").

[6]    *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *9 (N.D. Cal. Sept. 4. 2018) ("[I]n light of the fact that the Settlement was reached after the parties engaged in motion practice and participated in multiple days of formal mediation, the Court concludes that the negotiations and agreement were non-collusive.").

---

MOTION FOR FINAL APPROVAL OF SETTLEMENT                          9                          Case No. 3:20-cv-01260-SI

**C.     The Settlement Provides the Settlement Class Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and the Other Rule 23(e)(2) Factors**

The remaining Rule 23(e)(2) factors overlap considerably with those articulated by the Ninth Circuit, and all entail "a 'substantive' review of the terms of the proposed settlement" that evaluate the fairness of the "relief that the settlement is expected to provide to" the Settlement Class. Fed. R. Civ. P. 23(e)(2) Advisory Comm. Notes to 2018 Amendment; *see also Churchill*, 361 F.3d at 575-77. As discussed below, these factors weigh in favor of the Settlement.

### 1.     The Amount Offered in Settlement

"The critical component of any settlement is the amount of relief obtained by the class." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) (amount of settlement is "generally considered the most important" factor). However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). By definition, a settlement "embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers of Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982); *see also Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *6 (C.D. Cal. July 25, 2019) ("Based on the significant risks of continued litigation and the Settlement amount, the Court finds that the amount offered for settlement is fair.").

Here, the $10.5 million Settlement constitutes a favorable result for the Settlement Class. Notably, the Settlement, in terms of the amount alone, exceeds the size of the median securities class action settlement in the Ninth Circuit between 2013 and 2022—i.e., $7.6 million.[7] Moreover the strength of the Settlement must be viewed in light of the particular circumstances of this case, including the Court's complete dismissal of the Action twice, which only underscores its adequacy.

---

[7]     *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2022 Review and Analysis*, Cornerstone Research, at 19 (2022), https://www.cornerstone.com/insights/reports/securities-class-action-settlements-2022-review-and-analysis/.

The Settlement also provides a meaningful financial benefit to the Settlement Class in comparison to the estimated potential damages and eliminates the significant risk that the Settlement Class could recover less, *or even nothing at all*, if the Action continued. Given that the case had been dismissed with prejudice, as a practical matter, there were no meaningful damages to speak of at the time of settlement. Setting this aside, Lead Plaintiffs' damages expert estimates that the maximum theoretically possible damages—if investors were to completely win their appeal of the Court's dismissal, then achieve complete success in every respect for both liability and damages at trial, and then prevail completely in the inevitable appeals—would be approximately $1.9 billion.[8] *Id.* Given the Court's dismissal of the Action in its entirety and the fact that only Lead Plaintiffs' appellate rights remained at the time of settlement, any assessment of the realistic value of potential damages at this stage of the Action must take into account a measure of the likelihood of success on the dismissed claims. For example, viewing the recovery obtained through the lens of the Ninth's Circuit's overall reversal rate in private civil appeals—12.8%[9]—the Settlement Class's "risk-adjusted" maximum potential recovery would be approximately $166 million to $243 million. *Id*. Here, the $10.5 million Settlement represents approximately 4% to 6% of these risk-adjusted maximum damages figures. This recovery is comparable to recovery percentages in other securities class actions. *See, e.g.*, *Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving settlement recovering "slightly more than 2% of [] estimated damages"); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019) (approving settlement representing between 5% and 9.5% of "maximum potential damages").[10] Considered against the

---

[8]    This amount would decline to $1.3 billion if, for example, Defendants prevailed on their arguments that the price declines following the alleged corrective disclosures in August 2019 and October 2019 were not causally connected to the alleged misstatements and omissions and eliminated the second and third corrective disclosures. Joint Decl., ¶ 70. The Settlement Class's potential recoverable damages would be subject to further reductions based on other arguments by Defendants. *Id*.

[9]    *See* U.S. Courts of Appeals—Decisions in Cases Terminated on the Merits, by Circuit and Nature of Proceeding, During the 12-Month Period Ending June 30, 2022, Table B-5, U.S. Courts of Appeal Statistical Tables for The Federal Judiciary (June 30, 2022), https://www.uscourts.gov/statistics/table/b-5/statistical-tables-federal-judiciary/2022/06/30.

[10]    *See also, e.g., Azar v. Blount Int'l, Inc.*, 2019 WL 7372658, at *7 (D. Or. Dec. 31, 2019) (approving settlement recovering 4.63% to 7.65% of the class's total estimated damages); *In re*

---

MOTION FOR FINAL APPROVAL OF
SETTLEMENT

11

Case No. 3:20-cv-01260-SI

significant risks involved with prosecuting this Action further, the Settlement Amount is fair, reasonable, and adequate, and thus, this factor strongly supports final approval.

### 2.    The Strength of Lead Plaintiffs' Case

Courts evaluating proposed class action settlements consider the strength of the plaintiff's case and the risks of further litigation. *See Mego Fin.*, 213 F. 3d at 458. To determine whether the Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of [a] recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017); *see also Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *5 (S.D. Cal. June 6, 2022).

While Lead Plaintiffs and Lead Counsel believe their claims are meritorious, they recognize the numerous risks and uncertainties of further litigation—most notably, the Court's complete dismissal of this Action twice and the substantial possibility that the Ninth Circuit would affirm the Court's MTD Order, particularly given its overall reversal rate (12.8%) in private civil appeals. Moreover, even if successful on appeal, Lead Plaintiffs would have faced additional substantial hurdles on remand.[11]

*First*, Lead Plaintiffs faced challenges to proving that Defendants' statements were materially false and misleading when made. Defendants would vigorously argue, as they did at the motion to dismiss stage, that they made no misrepresentations about HP's supplies business, the change in HP's sales model, the reliability of HP's Four Box Model, or their confidence in that model's abilities. Joint Decl., ¶ 54. Defendants would further argue that they assumed no duty to

---

*Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (finding settlement recovering 8% of estimated damages "equals or surpasses the recovery in many other securities class actions"); *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement recovering approximately 3.5% of maximum damages).

[11]    *See Nobles v. MBNA Corp.*, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (noting that, although "[p]laintiff's claim has survived a motion to dismiss, [] success is not guaranteed if this matter were to proceed to jury trial"); *see also, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F. 3d 713 (11th Cir. 2012) (overturning jury verdict and award in favor of plaintiff on loss causation grounds); *In re Apollo Grp., Inc. Sec. Litig.*, 2010 WL 5927988 (9th Cir. June 23, 2010) (granting judgment to defendants and nullifying an unanimous jury verdict for plaintiff following trial).

---

MOTION FOR FINAL APPROVAL OF SETTLEMENT    12    Case No. 3:20-cv-01260-SI

disclose certain facts that Lead Plaintiffs claimed were misleadingly omitted, and that any omissions did not render their statements materially misleading. *Id*. More specifically, with respect to Defendants' alleged misrepresentations concerning HP's purported change in sales model and HP's inventory management practices ("Model Change Statements"), Defendants would assert that these statements were not misleading because HP did in fact change its sales model and, to the extent too much inventory was still pushed into the channel, it was only in immaterial amounts or because HP's model was incorrectly measuring the Company's market share. *Id*., ¶ 56. Defendants would also assert that, in describing its changed sales model, HP did not promise to eliminate all discounting, and thus, the fact that HP continued to engage in some amount of discounting did not render Defendants' statements materially misleading. *Id*. In addition, with respect to the health of HP's sales channel, Defendants would maintain that they had fully disclosed that their statements only referred to part of the channel, i.e., the "Tier 1" portion, and that, as a result, investors knew the truth with respect to this issue—an argument accepted by the Court in dismissing the Action. *Id*., ¶ 57; *see also* ECF No. 112 at 7-8. Likewise, with respect to Defendants' alleged misrepresentations regarding their access to real-time (telemetric) data about printing supplies for the purposes of estimating revenue, market share, and supplies business stabilization ("Data-Related Statements"), Defendants would argue that HP never represented that it exclusively relied on telemetry data to calculate its printing sales and, in fact disclosed to the market that the model's inputs included several different sources of data, only one of which was the data purportedly being sent from its printers— arguments also accepted by the Court in dismissing the Action. Joint Decl., ¶ 58; *see also* ECF No. 112 at 8-9.[12]

Additionally, Defendants would continue to aggressively dispute that the requisite element of scienter was satisfied. Defendants would argue, as they did throughout the Action, that they believed their statements to be true. For example, Defendants would assert that they did not know or have any reason to believe that the assumptions fed into the Four Box Model were flawed or that

---

[12]     Additionally, Defendants would continue to argue that many of the statements at issue were forward looking and protected by the PSLRA's safe harbor provision, or opinion statements and not actionable. Joint Decl., ¶ 59.

HP's projections based on such model were unreliable. *Id.*, ¶ 60. With respect to the Model Change Statements, Defendants would argue that—as far as HP executives were aware—HP had changed its sales model to a pull model prior to the Class Period and they had no knowledge of any significant discounting during the Class Period. *Id.*, ¶ 61. With respect to the Data-Related Statements, Defendants would argue that they believed HP had sufficient access to telemetry data and that, in all events, they fully disclosed to investors that they were relying on sources other than telemetry data and thus had no intent to mislead the market. *Id.*, ¶ 62. Moreover, they would have asserted that it was more credible for Defendants to conclude that HP had sufficient data because, for two years during the Class Period, the Four Box Model had accurately predicted sales and stabilization. *Id.* Defendants would also maintain that they had no motive to commit fraud (e.g., no suspicious stock sales) and would point to the absence of any "whistleblowers" or SEC enforcement action based on Class Period events to further evidence the absence of scienter. *Id.*, ¶ 63. Although Lead Plaintiffs and Lead Counsel believe their scienter arguments were persuasive, they also understood there was a real risk that the trier of fact could disagree.

*Second*, even if Lead Plaintiffs could establish liability, they still faced significant risks in proving loss causation and damages at trial. To establish these elements, Lead Plaintiffs would have to prove that the revelation of the relevant truth concealed by Defendants' alleged misrepresentations proximately caused the declines in the price of HP common stock.[13]

During the course of the Action, Defendants asserted that the price declines in HP common stock were caused by lower-than-expected revenues for HP's supplies business, rather than any information causally connected to Defendants' alleged misrepresentations. Joint Decl., ¶ 65. Defendants also would likely argue going forward that Lead Plaintiffs could not "disaggregate" the declines caused by disclosure of the information concealed by the alleged fraud from the declines caused by other news released on the same day. *Id.*, ¶ 66. Indeed, because the determination of damages is a complicated process requiring expert testimony, the jury's assessments of the experts'

---

[13] *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiff bears the burden of proving "that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover").

MOTION FOR FINAL APPROVAL OF SETTLEMENT    14    Case No. 3:20-cv-01260-SI

evidence could vary substantially at trial, reducing this crucial element to an uncertain "battle of experts." *In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (risks related to "battle of the experts" favored of settlement approval).

Lead Counsel carefully analyzed each of Defendants' arguments and related risks prior to agreeing to settle. If realized, any of these risks could have resulted in no recovery for the Settlement Class. By resolving the Action through the Settlement, in contrast, Lead Plaintiffs guaranteed the Settlement Class a cash recovery of $10.5 million. This factor strongly supports the Settlement.

### 3. The Complexity, Expense, and Duration of Continued Litigation

In addition to the risk of continued litigation, in evaluating the fairness of the Settlement, the "expense, complexity, and likely duration of further litigation," *Churchill*, 361 F.3d at 576, or "delay of trial and appeal" should be taken into account, Fed. R. Civ. P. 23(e)(2)(C)(i). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015); *see also Fleming v. Impax Labs. Inc.*, 2022 WL 2789496, at *5 (N.D. Cal. July 15, 2022) ("Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case."). Here, these factors further underscore the fairness of the Settlement.

Class action litigation is inherently complex. *See Nobles*, 2009 WL 1854965, at *2 (finding proposed settlement proper "given the inherent difficulty of prevailing in class action litigation"). This securities class action, prosecuted under the more restrictive provisions of the PSLRA, is no exception, as clearly demonstrated by the Court's dismissal of both the Complaint and Amended Complaint in their entirety.[14] *See* Joint Decl., ¶¶ 23, 35, 50.

Even if Lead Plaintiffs prevailed on their pending appeal, continued litigation of this Action presented numerous risks to Lead Plaintiffs' ability to establish liability and damages. *Id.*, ¶ 52. On

---

[14]    Indeed, "the heightened pleading requirement of the PSLRA and the application of *Dura Pharms*, 544 U.S. 336, which poses significant risks to plaintiffs' ability to survive . . . summary judgment and prevailing at trial, suggest that settlement here is prudent." *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007); *see also In re Bofl Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at *6 (S.D. Cal. Oct. 14, 2022) ("[I]t is well-recognized that securities actions in particular are often long, hard-fought, complicated, and extremely difficult to win.").

| MOTION FOR FINAL APPROVAL OF SETTLEMENT | 15 | Case No. 3:20-cv-01260-SI |
|---|---|---|

remand, Lead Plaintiffs would face substantial fact and expert discovery, class certification briefing, dispositive motion practice, pre-trial preparation, trial, and post-trial appeals—efforts that would impose substantial additional costs on the Settlement Class and possibly delay its ability to recover for additional years. In contrast, the Settlement avoids the risk, expense, and delay of continued litigation while providing a certain, near-term recovery for the Settlement Class. *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ("Considering these risks, expenses and delays, an immediate and certain recovery for class members . . . favors settlement of this action."). This factor supports final approval of the Settlement.

### 4. Risk of Maintaining Class Action Status

Given the posture of the case at the time of settlement, Lead Plaintiffs had not moved for class certification. While Lead Plaintiffs believe they would have ultimately obtained certification of a class had their appeal been successful and the Action been remanded to the Court for continued litigation, the Settlement removes this uncertainty. *See In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041-42 (N.D. Cal 2008) ("If the Court were to refuse certification, the unrepresented potential plaintiffs would likely lose their chance at recovery entirely. . . . As Defendants agree to the class certification for the purposes of the Settlement, there is much less risk of anyone who may have actually been injured going away empty-handed."). This factor favors the Settlement.[15]

### 5. The Extent of Discovery Completed and the Stage of Proceedings

In assessing a settlement, courts should consider the stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case. *See, e.g.*, *Mego Fin.*, 213 F. 3d at 459; *In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009). Moreover, "[i]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir.

---

[15] This factor would support the Settlement even if Lead Plaintiffs had obtained class certification, as the Court may exercise its discretion to re-evaluate the appropriateness of class certification at any time. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *see also Omnivision*, 559 F. Supp. 2d at 1041 ("[T]here is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class.").

1998); *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (finding informal discovery and investigation sufficient for parties to have "clear view" of case).

During the course of this Action, Lead Counsel spent significant time and resources analyzing and litigating the legal and factual issues of this case. These efforts included, among others: (i) conducting an extensive and ongoing investigation into the alleged fraud, including interviews with dozens of former HP employees;[16] (ii) reviewing materials obtained from the SEC in response to a successful Freedom of Information Act Request; (iii) researching and preparing the detailed Complaint and Amended Complaint; (iv) opposing two rounds of Defendants' motion to dismiss through briefing and oral argument; (v) fully briefing an appeal from the Court's dismissal of the Action in the Ninth Circuit; (vi) consulting with a damages expert; and (vii) engaging in extended arm's-length settlement negotiations with the assistance of Mr. Melnick. Joint Decl., ¶¶ 5, 96. As a result, Lead Plaintiffs and Lead Counsel were both sufficiently familiar with the strengths and weaknesses of the case to make an informed decision regarding settlement. *See Mego Fin.*, 213 F.3d at 459 (finding even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval). This factor weighs in favor of final approval.

### 6. The Experience and Views of Counsel

The informed opinion of experienced Lead Counsel that the Settlement is in the best interest of the Settlement Class should be afforded significant weight. *Nat'l Rural Telecomms. Coop. v. DirectTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel . . . because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."); *see also Quiruz v. Specialty Commodities, Inc.*, 2020 WL 6562334, at *7 (N.D. Cal. Nov. 9, 2020) ("[T]he fact that experienced counsel involved in the case approved the settlement

---

[16] This investigation also included the review and analysis of: (i) HP's public filings with the SEC; (ii) research reports by securities and financial analysts; (iii) transcripts of HP's conference calls with analysts and investors; (iv) Company presentations, press releases, and reports; (v) news and media reports concerning HP and other facts related to this action; (vi) price and volume data for HP's securities; and (vii) the Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933 and Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order issued by the SEC on or around September 30, 2020 ("Cease-and-Desist Order"). Joint Decl., ¶¶ 5, 14, 25.

after hard-fought negotiations is entitled to considerable weight."). As set forth above, Lead Counsel had a thorough understanding of the merits and risks of the Action prior to agreeing to resolve the Action. Lead Counsel also have extensive prior experience in securities litigation (*see* Joint Decl., Ex. 5A-5 and Ex. 5B-5 (firm resumes)). Therefore, Lead Counsel's belief that the Settlement represents a favorable outcome for the Settlement Class favors approval of the Settlement.

### 7.    Existence of a Governmental Investigation

Although there was an SEC investigation into HP, it concerned events that took place and statements that were made during the period before the Class Period alleged in this Action, and the Settlement is the *only* recovery for the Settlement Class.[17] This factor supports final approval.

Likewise, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b), Defendants provided notice of the Settlement to appropriate state and federal officials (ECF No. 119, ¶¶ 3-4) and, to date, there have been no objections (Joint Decl., ¶ 78). Courts have found this factor to weigh in favor of final approval where no state or federal officials have objected after receiving notice pursuant to CAFA. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 229 F. Supp. 3d 1052, 1067 (N.D. Cal. 2017) ("Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures.").

### 8.    The Reaction of Settlement Class Members to Date

"In addition to the enumerated fairness factors of Rule 23(e)(2), courts within the Ninth Circuit typically consider the reaction of the class members to the proposed settlement." *In re Google LLC St. View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *15 (N.D. Cal. Mar. 18, 2020); *see also Churchill*, 361 F.3d at 577. Moreover, "[a] court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Kuraica v.*

---

[17]    On or around September 30, 2020, the SEC's related investigation resulted in the issuance of a Cease-and-Desist Order related to "HP's failure to disclose between November 2015 and June 2016 material information regarding its print supplies channel inventory management and sales practices." ECF No. 89-1 at 2. Pursuant to the SEC's Cease-and-Desist Order, HP was required to pay $6 million in civil money penalties to the government. *Id.* at 11; *see also* Joint Decl., ¶ 25.

---

MOTION FOR FINAL APPROVAL OF SETTLEMENT                    18                    Case No. 3:20-cv-01260-SI

*Dropbox, Inc.*, 2021 WL 5826228, at *5 (N.D. Cal. Dec. 8, 2021). Here, as of this filing, there are no objections to the Settlement. Joint Decl., ¶ 78. Lead Plaintiffs support the Settlement as well. *Id.*, ¶ 7; *see also* Cheng Decl., ¶ 6 & Tormey Decl., ¶ 6. This factor favors approval of the Settlement.

## D.    The Remaining Rule 23(e)(2) Factors Also Support Final Approval

In evaluating the Settlement, Rule 23(e)(2) instructs courts to also consider: (i) the effectiveness of the proposed method of distributing the relief provided to the class, including the method of processing class member claims; (ii) the terms of any proposed award of attorney's fees, including the timing of payment; (iii) any other agreement made in connection with the proposed settlement; and (iv) whether class members are treated equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv), (e)(2)(D). These additional Rule 23(e)(2) factors also weigh in favor of the Court's approval of the Settlement.

*First*, the proposed method of distribution and claims processing ensures equitable treatment of Settlement Class Members. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (e)(2)(D). Settlement Class Members' Claims will be processed and the Net Settlement Fund distributed pursuant to a standard method routinely approved in securities class actions. The Court-authorized Claims Administrator, A.B. Data, Ltd. ("A.B. Data"), will review and process all Claims received, provide each Claimant with an opportunity to cure any deficiency in their Claim or request judicial review of the denial of their Claim, if applicable, and will ultimately mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund, as calculated under the Plan of Allocation. *See infra* Part III; Joint Decl., ¶¶ 79-89. Importantly, none of the Settlement proceeds will revert to Defendants. *See* Stip., ¶ 13.

*Second*, the relief provided by the Settlement remains adequate upon consideration of the terms of the proposed award of attorneys' fees and Litigation Expenses incurred in prosecuting this Action, including the timing of any such Court-approved payments. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). As shown in the Fee and Expense Motion, the requested attorneys' fees of 18% of the Settlement Fund, made in accordance with the more restrictive of Lead Plaintiffs' retention agreements, and to be paid only upon the Court's approval, are reasonable in light of Lead Counsel's

efforts in prosecuting this Action over the past three years and obtaining a $10.5 million cash recovery, as well as the significant risks shouldered by Lead Counsel.[18]

As discussed in the Fee and Expense Motion, the requested fee is below the 25% benchmark for percentage fee awards in the Ninth Circuit and well within the range of fee percentages awarded by courts in this Circuit. *See In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019) (noting Ninth Circuit case law "permit[s] awards of attorneys' fees ranging from 20 to 30 percent of settlement funds, with 25 percent as the benchmark award"). Further, any fee award is separate from the approval of the Settlement, and no Party may terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees. *See* Stip., ¶ 16. Additionally, the proposal that any Court-awarded attorneys' fees be paid upon issuance of such an award is reasonable and consistent with common practice in similar cases, as the Stipulation dictates that if the Settlement were terminated or any fee award subsequently modified, Lead Counsel must repay the subject amount with interest. *Id.*[19]

*Lastly*, as previously disclosed, the only agreement the Parties entered into in addition to the initial Term Sheet and the Stipulation was a confidential Supplemental Agreement regarding requests for exclusion. *See* Stip., ¶ 36; *see also* Fed. R. Civ. P. 23(e)(2)(C)(iv). The Supplemental Agreement provides HP with the option to terminate the Settlement in the event that Settlement Class Members who request exclusion meet a certain threshold. This type of agreement is standard in securities class actions and has no negative impact on the Settlement's fairness. *See, e.g.*, *Hefler*, 2018 WL 4207245, at *11 ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

For the reasons set forth above and in the Joint Declaration, the Settlement is fair, reasonable, and adequate when evaluated under any standard, and, therefore, warrants the Court's final approval.

---

[18]    In connection with their fee request, Lead Counsel also seek payment from the Settlement Fund of their expenses in the total amount of $135,598.87 and Lead Plaintiff Iron Workers' costs incurred in representing the Settlement Claim in the amount of $10,000. Joint Decl., ¶¶ 108, 115.

[19]    Such provisions in class action settlements, sometimes termed "quick-pay" provisions, "have generally been approved by other federal courts." *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 487 (4th Cir. 2020); *see also, e.g.*, *Miller v. Ghirardelli Chocolate Co.*, 2014 WL 4978433, at *5 (N.D. Cal. Oct. 2, 2014).

## III.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL

A plan for allocating settlement proceeds under Rule 23 is evaluated under the same standard of review applicable to the settlement as a whole—the plan must be fair, reasonable, and adequate. *See, e.g.*, *Class Plaintiffs*, 955 F.2d at 1284-85; *Hampton v. Aqua Metals, Inc.*, 2021 WL 4553578, at *10 (N.D. Cal. Oct. 5, 2021). "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014). Further, "[a] plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994).

Here, the Plan (set forth in Appendix A to the Notice) was developed by Lead Counsel in consultation with Lead Plaintiffs' damages expert. Joint Decl., ¶ 82. The Plan is designed to equitably distribute the Net Settlement Fund to Settlement Class Members who timely submit valid Claims demonstrating they suffered economic losses proximately caused by Defendants' alleged materially false and misleading statements and omissions, as opposed to losses attributable to market or industry forces unrelated to the allegations in the Action. *Id*., ¶¶ 80-82; *see also* Notice, ¶ 67.

The Plan is based upon the estimated amount of artificial inflation in the per-share closing price of HP common stock which allegedly was proximately caused by Defendants' alleged materially false and misleading statements and omissions during the Class Period. Joint Decl., ¶ 82. To have a Recognized Claim under the Plan, a Claimant must have purchased or otherwise acquired HP common stock during the Class Period (i.e., between February 23, 2017 and October 3, 2019, inclusive) and held those shares over at least one of the days when corrective information was released to the market and partially removed the alleged artificial inflation from the price of HP common stock. *Id.*, ¶ 83.[20] A Claimant's loss under the Plan will depend upon several factors, including the date(s) the Claimant purchased/acquired their shares of HP common stock during the

---

[20]    Lead Plaintiffs allege that corrective information was released to the market on: February 27, 2019 (after the close of trading), August 22, 2019 (after the close of trading), and October 3, 2019 (after the close of trading), which partially removed the artificial inflation from the prices of HP common stock on: February 28, 2019, August 23, 2019, and October 4, 2019. *See* Notice, ¶ 68.

MOTION FOR FINAL APPROVAL OF SETTLEMENT                    21                    Case No. 3:20-cv-01260-SI

Class Period, and whether such shares were sold and if so, when and at what price, taking into account the PSLRA's statutory limitation on recoverable damages. *Id.*, ¶ 84. The sum of an Authorized Claimant's Recognized Loss Amounts for all their Class Period purchases/acquisitions is the Authorized Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *Id.*, ¶¶ 85-86; *see Fleming v. Impax Labs., Inc.*, 2021 WL 5447008, at *11 (N.D. Cal. Nov. 22, 2021) (approving allocation "on a *pro rata* basis according to each class member's recognized loss").

One-hundred percent of the Net Settlement Fund will be distributed to Authorized Claimants. Joint Decl., ¶ 87. If any funds remain after an initial distribution to Authorized Claimants, as a result of uncashed or returned checks or other reasons, subsequent cost-effective distributions will be conducted. *Id.*; *see also* Notice, ¶ 84. In the event any residual funds remain after all cost-effective distributions to Authorized Claimants, the Plan identifies the Investor Protection Trust (www.investorprotection.org) as the proposed *cy pres* recipient. Joint Decl., ¶ 88.[21] As noted in the Plan, payment will only be made to this charity when the residual amount left for re-distribution to Authorized Claimants is so small that a further re-distribution would not be cost effective. *Id*.

Notably, more than 634,000 Postcard Notices and 4,100 Notice Packets advising Settlement Class Members of the Plan and their right to object to the Plan, have been mailed to potential Settlement Class Members and Nominees. To date, there have been no objections to the Plan. *Id.*, ¶ 89. Accordingly, Lead Counsel and Lead Plaintiffs believe the Plan is fair, reasonable, and adequate and warrants approval. Fed. R. Civ. P. 23(e)(2)(C)(ii), (e)(2)(D).

## IV.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

As set forth in Lead Plaintiffs' motion for preliminary approval of the Settlement, the Settlement Class satisfies all of the requirements of Rules 23(a) and (b)(3). ECF No. 118 at 14-18; Preliminary Approval Order, ¶¶ 1-3 (finding the Court will likely be able to certify the Settlement

---

[21]    The Investor Protection Trust ("IPT") is a 501(c)(3) nonprofit organization devoted to investor education and support of investor protection efforts. *See* Notice, ¶ 84; *see also Fleming*, 2022 WL 2789496, at *2 (finding "sufficient nexus" between class and IPT and approving IPT as *cy pres* recipient); *Hefler*, 2018 WL 6619983, at *11 (concluding "[IPT]'s mission of educating investors makes it an appropriate *cy pre[s]* beneficiary"). The Parties do not have any relationship to IPT. Joint Decl., ¶ 88 n7.

Class in connection with final approval). None of the facts supporting certification of the Settlement Class have changed since Lead Plaintiffs submitted their preliminary approval motion. Accordingly, Lead Plaintiffs respectfully request that the Court certify the Settlement Class under Rules 23(a) and (b)(3) for purposes of effectuating the Settlement.

## V.   NOTICE OF THE SETTLEMENT SATISFIED THE REQUIREMENTS OF RULE 23, DUE PROCESS, AND THE PSLRA

Lead Plaintiffs have provided the Settlement Class with adequate notice of the Settlement. Here, notice satisfied both: (i) Rule 23, as it was "the best notice . . . practicable under the circumstances" and directed "in a reasonable manner to all class members who would be bound by the" Settlement, Fed. R. Civ. P. 23(c)(2)(B) & (e)(1)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974); *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 896 (9th Cir. 2017); and (ii) due process, as it was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

In accordance with the Preliminary Approval Order, A.B. Data began mailing and/or emailing Postcard Notices and Notice Packets to potential Settlement Class Members and Nominees on April 28, 2023. Ewashko Decl., ¶¶ 3-4. Through June 22, 2023, A.B. Data has mailed a total of 634,337 Postcard Notices and 4,172 Notice Packets. *Id.*, ¶ 8. In addition, A.B. Data caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over *PR Newswire* on May 19, 2023. *Id.*, ¶ 10. A.B. Data also established and maintains a website dedicated to the Settlement, www.HPSecuritiesSettlement.com, to provide additional information about the Action and the Settlement as well as access to downloadable copies of the Notice, Claim Form, and other Settlement-related documents. *Id.*, ¶ 12. Copies of the Notice and Claim Form can also be downloaded from Lead Counsel's websites, www.ktmc.com and www.blbglaw.com. Pursuant to the Stipulation (ECF No. 118-1, ¶ 20), Defendants issued notice pursuant to CAFA (ECF No. 119).

Collectively, the notices apprise Settlement Class Members of, *inter alia*: (i) the Settlement amount; (ii) the reasons why the Parties are proposing the Settlement; (iii) the estimated average

| MOTION FOR FINAL APPROVAL OF SETTLEMENT | 23 | Case No. 3:20-cv-01260-SI |

recovery per affected share of HP common stock; (iv) the maximum amount of attorneys' fees and expenses that will be sought; (v) the identity and contact information for a representative from Lead Counsel to answer questions concerning the Settlement; (vi) the right of Settlement Class Members to object to the Settlement; (vii) the right of Settlement Class Members to request exclusion; (viii) the binding effect of a judgment on Settlement Class Members; (ix) the dates and deadlines for certain Settlement-related events; and (x) the opportunity to obtain additional information about the Action and the Settlement by contacting Lead Counsel, the Claims Administrator, or visiting the Settlement Website. *See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. § 78u-4(a)(7). The Notice also contains the Plan of Allocation and provides information on how to submit a Claim in order to be potentially eligible to receive a payment from the Net Settlement Fund. *See* Ewashko Decl., Ex. B at pp. 15-19. The content disseminated through this notice campaign was more than adequate, as it "generally describe[d] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Young v. LG Chem., Ltd.*, 783 F. App'x 727, 736 (9th Cir. 2019); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 330 (C.D. Cal. 2016) ("Settlement notices must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.").

In sum, this combination of individual first-class mail to all Settlement Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate publication, transmission over a newswire, and publication on internet websites, was "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Comparable notice programs are routinely approved by Courts in this Circuit. *See, e.g.*, *Yaron v. Intersect ENT, Inc.*, 2021 WL 5184290, at *2 (N.D. Cal. Nov. 5, 2021) (finding "dissemination of the Postcard Notice, the online posting of the Notice, and the publication of the Summary Notice . . . constituted the best notice practicable under the circumstances; . . . [and] satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the [PSLRA], and all other applicable law and rules"); *Vataj v. Johnson*, 2021 WL 5161927, at *5 (N.D. Cal. Nov. 5, 2021) (finding use of postcard notice in securities class action complied with Rule 23).

## VI.   CONCLUSION

For the reasons set forth herein and in the Joint Declaration, Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement, approve the Plan of Allocation, and grant final certification of the Settlement Class for settlement purposes.

Dated:  June 23, 2023

Respectfully Submitted,

**KESSLER TOPAZ MELTZER
   & CHECK, LLP**

/s/ Jennifer L. Joost
Jennifer L. Joost (Bar No. 296164)[22]
(jjoost@ktmc.com)
Stacey M. Kaplan (Bar No. 241989)
(skaplan@ktmc.com)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000

-and-

Gregory M. Castaldo (admitted *pro hac vice*)
(gcastaldo@ktmc.com)
280 King of Prussia Rd.
Radnor, PA 19087
Telephone: (610) 667-7706

*Counsel for Lead Plaintiff the State of Rhode Island, Office of the General Treasurer, on behalf of the Employees' Retirement System of Rhode Island and Co-Lead Counsel for the Settlement Class*

**BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP**

/s/ Jeremy P. Robinson
John J. Rizio-Hamilton (admitted *pro hac vice*)
(johnr@blbglaw.com)
Jeremy P. Robinson (admitted *pro hac vice*)

---

[22]    In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that concurrence in the filing of this document has been obtained from the signatories.

MOTION FOR FINAL APPROVAL OF
SETTLEMENT

25

Case No. 3:20-cv-01260-SI

(jeremy@blbglaw.com)
Alexander T. Payne (admitted *pro hac vice*)
(alex.payne@blbglaw.com)
Benjamin W. Horowitz (admitted *pro hac vice*)
(will.horowitz@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (215) 554-1400


-and-

Jonathan D. Uslaner (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470

*Counsel for Lead Plaintiff Iron Workers Local 580 Joint Funds and Co-Lead Counsel for the Settlement Class*