**KESSLER TOPAZ MELTZER
   & CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
(jjoost@ktmc.com)
Stacey M. Kaplan (Bar No. 241989)
(skaplan@ktmc.com)
One Sansome Street, Suite 1850
San Francisco, CA  94104
Telephone: (415) 400-3000

**BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP**
John J. Rizio-Hamilton (admitted *pro hac vice*)
(johnr@blbglaw.com)
Jeremy P. Robinson (admitted *pro hac vice*)
(jeremy@blbglaw.com)
1251 Avenue of the Americas
New York, NY  10020
Telephone: (215) 554-1400

*Lead Counsel for Lead Plaintiffs and
the Settlement Class*

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE HP INC. SECURITIES LITIGATION | Case No. 3:20-cv-01260-SI |
| | <u>CLASS ACTION</u> |
| | **LEAD COUNSEL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Judge:       Hon. Susan Illston<br>Date:        July 28, 2023<br>Time:        10:00 a.m. |

MOTION FOR ATTORNEYS' FEES AND
LITIGATION EXPENSES

Case No. 3:20-cv-01260-SI

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES  AND LITIGATION EXPENSES ................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 2

I.    PRELIMINARY STATEMENT .................................................................. 2

II.   LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE AND SHOULD BE APPROVED ....................................... 5

    A.    Lead Counsel Are Entitled to a Reasonable Fee from the Common Fund Created by the Settlement ................................................ 5

    B.    The Court Should Calculate the Fee as a Percentage of the Common Fund ............................................................................... 6

    C.    A Fee of 18% of the Settlement Fund Is Reasonable Under Either the Percentage-of-Recovery Method or Lodestar Method ......................................... 7

        1.    Lead Counsel's 18% Fee Request Is Substantially Less Than the 25% "Benchmark Percentage" Commonly Approved in This Circuit ........................................ 7

        2.    The Requested Fee Reflects a *Negative* Multiplier and Thus a Substantial Discount to Lead Counsel's Lodestar ................................... 8

    D.    Additional Factors Considered by Courts in the Ninth Circuit Support Approval of the Requested Fee ................................................ 11

        1.    The Result Achieved Supports the Fee Request ................................... 11

        2.    The Substantial Risks of the Litigation Support the Fee Request .................................................................................. 13

        3.    The Skill Required and the Quality of the Work Performed Supports the Fee Request ................................................ 14

        4.    The Contingent Nature of the Fee Supports the Fee Request .................. 15

        5.    The Requested Fee Is Supported by Awards in Similar Cases ................ 16

        6.    The Settlement Class's Reaction to Date and the Approval of Lead Plaintiffs Support the Fee Request ................................... 16

III.  LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED ............................................................ 17

IV.   LEAD PLAINTIFF IRON WORKER SHOULD BE AWARDED ITS REASONABLE COSTS UNDER 15 U.S.C. § 78u-4(a)(4) .......................................... 19

V.    CONCLUSION ...................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ....................................................................................6

*In re Amgen Inc. Sec. Litig.*,
    2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)...............................................................8, 10

*In re Anthem, Inc. Data Breach Litig.*,
    2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ......................................................................7

*In re Apple Inc. Device Performance Litig.*,
    2021 WL 1022866 (N.D. Cal. Mar. 17, 2021), *vacated and remanded on
    other grounds*, 50 F.4th 769 (9th Cir. 2022), *remanded on other grounds*,
    2023 WL 2090981 (N.D. Cal. Feb. 17, 2023) ...................................................................6, 15

*Atlas v. Accredited Home Lenders Holding Co.*,
    2009 WL 3698393 (S.D. Cal. Nov. 4, 2009) .......................................................................11

*Avila v. LifeLock Inc.*,
    2020 WL 4362394 (D. Ariz. July 27, 2020) ........................................................................18

*Baker v. SeaWorld Ent., Inc.*,
    2020 WL 4260712 (S.D. Cal. July 24, 2020) ................................................................ 19-20

*In re Banc of Cal. Sec. Litig.*,
    2020 WL 1283486 (C.D. Cal. Mar. 16, 2020)........................................................................8

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
    2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd on other grounds*,
    688 F.3d 713 (9th Cir. 2012) ....................................................................................... 15-16

*Barbosa v. Cargill Meat Sols. Corp.*,
    297 F.R.D. 431 (E.D. Cal. 2013) .........................................................................................14

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985).................................................................................................................5

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ..................................................................................................7

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980).................................................................................................................5

*In re Bofl Holding, Inc. Sec. Litig.*,
    2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) ............................................................8, 18, 19

*In re Cardinal Health, Inc. Sec. Litig.*,
    528 F. Supp. 2d 752 (S.D. Ohio 2007) ...............................................................................17

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)........................................................................................17

*Davis v. Yelp, Inc.*,
    2023 WL 3063823 (N.D. Cal. Jan. 27, 2023) .............................................................10

*Destefano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .................................................13, 14, 18

*Edenborough v. ADT, LLC*,
    2019 WL 4164731 (N.D. Cal. July 22, 2019).................................................................8

*In re Equity Funding Corp. of Am. Sec. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) ............................................................................15

*In re Extreme Networks, Inc. Secs. Litig.*,
    2019 WL 3290770 (N.D. Cal. July 22, 2019)..................................................... 8-9, 12

*Fischel v. Equitable Life Assurance Soc'y of the United States*,
    307 F.3d 997 (9th Cir. 2002) ....................................................................................7, 9

*Glass v. UBS Fin. Servs., Inc.*,
    331 F. App'x 452 (9th Cir. 2009) ..................................................................................6

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000)...........................................................................................5

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .....................................................................................16

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ...................................................................................... 17-18

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)........................................................ 9-10

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)......................................................................................................11

*In re Heritage Bond Litig.*,
    2005 WL 1594389 (C.D. Cal. June 10, 2005) .............................................................14

*Hopkins v. Stryker Sales Corp.*,
    2013 WL 496358 (N.D. Cal. Feb. 6, 2013) .................................................................10

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
    2012 WL 5199742 (D. Nev. Oct. 19, 2012) ...........................................................8, 12

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. May 31, 2007) ....................................................8, 20

*In re Initial Pub. Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009).................................................................... 10-11

*Johnson v. US Auto Parts Network, Inc.*,
 2008 WL 11343481 (C.D. Cal. Oct. 9, 2008)................................................................................13

*Kenny v. Montage Tech. Grp. Ltd.*,
 No. 3:14-cv-00722-SI, slip op. (N.D. Cal. Dec. 15, 2017), ECF No. 149.........................18, 20

*Khoja v. Orexigen Therapeutics, Inc.*,
 2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ...........................................................................10

*Kmiec v. Powerwave Techs., Inc.*,
 2016 WL 5938709 (C.D. Cal. July 11, 2016)................................................................................8

*Knight v. Red Door Salons, Inc.*,
 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ...............................................................................16

*In re Lucent Techs., Inc. Sec. Litig.*,
 327 F. Supp. 2d 426 (D.N.J. 2004) ...........................................................................................17

*Milbeck v. Truecar, Inc.*,
 No. 18-cv-02612-SVW-AGR, slip op. (C.D. Cal. Jan. 27, 2020), ECF No. 185 ....................18

*Missouri v. Jenkins*,
 491 U.S. 274 (1989).....................................................................................................................9

*Nguyen v. Radient Pharms. Corp.*,
 2014 WL 1802293 (C.D. Cal. May 6, 2014) ........................................................................6, 14

*In re Omnicom Grp., Inc. Sec. Litig.*,
 597 F.3d 501 (2d Cir. 2010)......................................................................................................15

*In re OmniVision Techs., Inc.*,
 559 F. Supp. 2d 1036 (N.D. Cal 2008) ...............................................................................16, 17

*In re Online DVD-Rental Antitrust Litig.*,
 779 F.3d 934 (9th Cir. 2015) ......................................................................................................7

*In re Oracle Corp. Sec. Litig.*,
 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) ...............15

*In re Pac. Enters. Sec. Litig.*,
 47 F.3d 373 (9th Cir. 1995) ........................................................................................................3

*In re Restoration Robotics, Inc. Sec. Litig.*,
 2021 WL 4124089 (N.D. Cal. Sept. 9, 2021) ...........................................................................19

*Rieckborn v. Velti PLC*,
 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ................................................................................8

*Robbins v. Koger Props., Inc.*,
 116 F.3d 1441 (11th Cir. 1997) ................................................................................................15

*Roberti v. OSI Sys., Inc.*,
 2015 WL 8329916 (C.D. Cal. Dec. 8, 2015)..............................................................................8

*Rodriquez v. Nike Retail Servs., Inc.*,
  2022 WL 254349 (N.D. Cal. Jan. 27, 2022) ................................................................8

*Roma Landmark Theaters, LLC v. Cohen Exhibition Co. LLC*,
  2021 WL 5174088 (Del. Ch. Nov. 8, 2021) ...............................................................10

*In re Sequential Brands Group, Inc.*,
  No. 21-11194 (JTD) (Bankr. Del. May 5, 2022), ECF No. 552 ................................10

*Stetson v. Grissom*,
  821 F.3d 1157 (9th Cir. 2016) .....................................................................................5

*Sudunagunta v. Nantkwest, Inc.*,
  2019 WL 2183451 (C.D. Cal. May 13, 2019) .............................................................8

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
  551 U.S. 308 (2007)................................................................................................5, 15

*Vataj v. Johnson*,
  2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) .........................................................8, 12

*Vincent v. Hughes Air W., Inc.*,
  557 F.2d 759 (9th Cir. 1977) .......................................................................................5

*Vincent v. Reser*,
  2013 WL 621865 (N.D. Cal. Feb. 19, 2013) .......................................................17, 18

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .............................................................................. *passim*

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2017 WL 1047834 (N.D. Cal. Mar. 17, 2017).............................................................10

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ...............................................................................5, 6, 15

*White v. Experian Info. Solutions, Inc.*,
  2018 WL 1989514 (C.D. Cal. Apr. 6, 2018), *aff'd in part*, *rev'd in part sub nom.*,
  *Radcliffe v. Hernandez*, 794 F. App'x 605 (9th Cir. 2019) .......................................9

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................................6, 19

**Other Authorities**

Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements:*
  *2022 Review and Analysis*, Cornerstone Research (2022).........................................12

U.S. Courts of Appeals—Decisions in Cases Terminated on the Merits, by
  Circuit and Nature of Proceeding, During the 12-Month Period Ending
  June 30, 2022, Table B-5, U.S. Courts of Appeal Statistical Tables for
  The Federal Judiciary (June 30, 2022)........................................................................12

### NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES

PLEASE TAKE NOTICE that on July 28, 2023 at 10:00 a.m., via videoconference, the Honorable Susan Illston presiding, Lead Counsel Kessler Topaz Meltzer & Check, LLP and Bernstein Litowitz Berger & Grossmann LLP, counsel for Court-appointed Lead Plaintiffs the State of Rhode Island, Office of the General Treasurer, on behalf of the Employees' Retirement System of Rhode Island, and Iron Workers Local 580 Joint Funds, will and hereby do move pursuant to Rule 23(h) of the Federal Rules of Civil Procedure ("Rules") for an order granting an award of attorneys' fees and litigation expenses in the above-captioned securities class action ("Action").

This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities that follows, the accompanying declarations, including the Joint Declaration of Jennifer L. Joost and Jeremy P. Robinson in Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Joint Declaration" or "Joint Decl."), the Stipulation and Agreement of Settlement dated March 2, 2023 (ECF No. 118-1) ("Stipulation" or "Stip."), the papers and pleadings filed in the Action, the arguments of counsel, and any other matters properly before the Court.[1]

Lead Counsel are not aware of any opposition to the motion. Pursuant to the Court's Order Preliminarily Approving Settlement and Providing for Notice dated April 7, 2023 (ECF No. 124) ("Preliminary Approval Order"), any objections to the request for attorneys' fees and Litigation Expenses must be filed by July 7, 2023, and will be addressed in Lead Plaintiffs' reply papers to be filed on July 21, 2023. A proposed order granting the relief requested herein will be submitted with Lead Plaintiffs' reply papers, after the objection deadline has passed.

---

[1] All capitalized terms not otherwise defined herein have the meanings ascribed to them in the Stipulation and Joint Declaration. Unless otherwise noted, all internal quotation marks, citations, or other punctuation are omitted, and all emphasis is added.

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether the Court should approve Lead Counsel's request for attorneys' fees.

2.    Whether the Court should approve Lead Counsel's request for litigation expenses.

3.    Whether the Court should approve Lead Plaintiff Iron Workers' request for reimbursement of reasonable costs related to its representation of the Settlement Class.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Lead Counsel respectfully submit this Memorandum of Points and Authorities in support of their motion for an award of attorneys' fees in the amount of 18% of the Settlement Fund. Lead Counsel also seek payment of $145,598.87 in Litigation Expenses that were reasonably and necessarily incurred in prosecuting and resolving the Action, which amount *includes* a proposed award pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for costs incurred by Lead Plaintiff Iron Workers directly related to its representation of the Settlement Class in the amount of $10,000.

**I.    PRELIMINARY STATEMENT**

Following nearly three years of dedicated litigation efforts, Lead Counsel, Kessler Topaz Meltzer & Check, LLP ("KTMC") and Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"), successfully negotiated a settlement of the Action with Defendants. The Settlement, if approved by the Court, will resolve this contentious litigation in its entirety in exchange for $10.5 million in cash. The Settlement not only eliminates the risks of continued litigation—most notably, the possibility that the Ninth Circuit would rule against Lead Plaintiffs in their pending appeal—but it also provides a meaningful and certain monetary recovery for the Settlement Class in circumstances where recovering anything for the Settlement Class was far from certain. In fact, the likelihood of any recovery was especially remote here because the Court had twice dismissed the Action on falsity and scienter grounds. In these circumstances, the Settlement is a favorable result for the Settlement Class.

As detailed in the Joint Declaration, Lead Counsel vigorously pursued this Action from its outset.[2] Among their efforts, Lead Counsel conducted an extensive investigation, including interviews with dozens of former HP employees, which gave rise to two detailed complaints; successfully obtained and reviewed deposition transcripts received from the SEC in response to a Freedom of Information Act Request; opposed two rounds of Defendants' motions to dismiss through briefing and oral argument; consulted with a damages expert; and fully briefed an appeal from the Court's dismissal of the Action in the Ninth Circuit. *Id.*, ¶¶ 5, 10-41, 96. While the dismissal of the Action was on appeal, the Parties engaged in extensive hard-fought settlement negotiations, including the exchange of detailed position statements on liability and damages, with the assistance of an experienced and highly respected mediator. *Id.*, ¶¶ 42-43. Despite the dismissal of the Action twice, Lead Counsel continued to advance Lead Plaintiffs' position and this dedication of effort resulted in a favorable recovery for the Settlement Class.

As compensation for their efforts and commitment to bringing the Action to a successful conclusion with a cash recovery for the Settlement Class, Lead Counsel, on behalf of Plaintiffs' Counsel,[3] seek attorneys' fees in the amount of 18% of the Settlement Fund. Lead Counsel respectfully submit that the amount of quality legal work they dedicated to prosecuting this Action for three years—and the significant risk they assumed by prosecuting and funding this Action with no guarantee of recovery—justifies their requested fee. As set forth herein, the requested 18% fee (i.e., $1.89 million plus interest) is on the lower end of fee percentages awarded in other securities and complex class actions and is substantially less than the 25% "benchmark" accepted by the Ninth Circuit.[4] Further, if approved, an 18% fee would result in a *negative* multiplier. Thus, despite the

---

[2]   The Joint Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the procedural history of the Action (Joint Decl., ¶¶ 10-48); the nature of the claims asserted (*id.*, ¶ 16); the negotiations leading to the Settlement (*id.*, ¶¶ 42-46); the risks of continued litigation (*id.*, ¶¶ 49-71); and Lead Counsel's efforts on behalf of the Settlement Class (*id.*, ¶¶ 5, 10-46, 96).

[3]   Plaintiffs' Counsel are Lead Counsel BLB&G and KTMC and additional counsel for Lead Plaintiff Rhode Island, Lynch & Pine.

[4]   *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) ("Twenty-five percent is the 'benchmark' that district courts should award in common fund cases.").

---

MOTION FOR ATTORNEYS' FEES AND
LITIGATION EXPENSES
    3    
Case No. 3:20-cv-01260-SI

substantial contingency risk Lead Counsel faced, Lead Counsel's fee request represents *less than 50%* of the value of the time Lead Counsel dedicated to the Action. In other words, despite the fact that courts often apply positive multipliers in similar circumstances,[5] the requested fee here represents a substantial discount to Lead Counsel's lodestar. Moreover, Lead Counsel's fee request is consistent with the more restrictive of two separate retainer agreements entered into between Lead Counsel and Lead Plaintiffs at the outset of the litigation, and following their diligent supervision of the Action, Lead Plaintiffs—sophisticated, institutional investors and precisely the type of fiduciaries envisioned by Congress when enacting the PSLRA—endorse Lead Counsel's fee request.[6] Lead Counsel also request payment of $135,598.87 from the Settlement Fund for their out-of-pocket expenses as well as reimbursement to Lead Plaintiff Iron Workers, in an amount of $10,000, for its costs in representing the Settlement Class.[7]

The reaction of the Settlement Class to date also supports Lead Counsel's request for attorneys' fees and Litigation Expenses. Pursuant to the Court's Preliminary Approval Order, 634,337 Postcard Notices and 4,172 Notice Packets have been mailed to potential Settlement Class Members and Nominees, and the Summary Notice was published in *The Wall Street Journal* and transmitted over *PR Newswire*.[8] The notices advise recipients that Lead Counsel will be applying to the Court for an award of attorneys' fees in an amount not to exceed 18% of the Settlement Fund, plus payment of Litigation Expenses in an amount not to exceed $250,000. Ewashko Decl., Exs. A-C. The notices further inform Settlement Class Members that they can object to these requests until July 7, 2023. *Id*. While the deadline to object has not yet passed, to date, there have been no objections to the fee and expense amounts set forth in the notices. Joint Decl., ¶¶ 107, 116.[9]

---

[5]    *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (noting lodestar multipliers ranging from 1 to 4 are common).

[6]    *See* Cheng Decl., ¶¶ 7-8 and Tormey Decl., ¶ 7 (Exs. 2 and 3 to the Joint Declaration); *see also infra* Section II.D.6.

[7]    Lead Plaintiff Rhode Island is not seeking a PLSRA award.

[8]    *See* Declaration of Jack Ewashko Regarding (A) Dissemination of Postcard Notice and Notice Packet; (B) Publication of Summary Notice; (C) Establishment of Telephone Helpline and Settlement Website; and (D) Report on Requests for Exclusion Received to Date ("Ewashko Decl.") attached as Ex. 4 to the Joint Declaration, ¶¶ 8-10.

[9]    Lead Counsel will address any objections received in their reply to be filed on July 21, 2023.

MOTION FOR ATTORNEYS' FEES AND                    4                    Case No. 3:20-cv-01260-SI
LITIGATION EXPENSES

For the reasons discussed herein, Lead Counsel respectfully submit that their requested fee is fair and reasonable under the applicable legal standards. Lead Counsel also respectfully submit that the Litigation Expenses incurred by Lead Counsel and the costs incurred by Lead Plaintiff Iron Workers are reasonable in amount and were necessary for the successful prosecution of the Action. Accordingly, Lead Counsel request that their Motion for Attorneys' Fees and Litigation Expenses be granted in full.

## II.    LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE AND SHOULD BE APPROVED

### A.    Lead Counsel Are Entitled to a Reasonable Fee from the Common Fund Created by the Settlement

Courts in this Circuit recognize that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016). Further, the Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The policy rationale for awarding attorneys' fees from a common fund is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

In addition to providing just compensation, an award of fair attorneys' fees from a common fund ensures that "competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000). The Supreme Court has emphasized that private securities actions, such as this Action, provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *see also Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 313 (2007).

**B.       The Court Should Calculate the Fee as a Percentage of the Common Fund**

Where a settlement produces a common fund, courts in this Circuit have discretion to employ either the percentage-of-recovery method or the lodestar method in awarding attorneys' fees. *See WPPSS*, 19 F.3d at 1296; *Vizcaino*, 290 F.3d at 1047. Notwithstanding that discretion, the percentage-of-recovery method has become the prevailing method used in this Circuit. *See, e.g.*, *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456-57 (9th Cir. 2009) (affirming district court's use of percentage-of-recovery method to award 25% fee); *In re Apple Inc. Device Performance Litig.*, 2021 WL 1022866, at *2 (N.D. Cal. Mar. 17, 2021) (finding "use of the percentage-of-the-fund method in common-fund cases [to be] prevailing practice in the Ninth Circuit for awarding attorneys' fees"), *vacated and remanded on other grounds*, 50 F.4th 769 (9th Cir. 2022), *remanded on other grounds*, 2023 WL 2090981 (N.D. Cal. Feb. 17, 2023).

Additionally, courts have found the percentage-of-recovery method for awarding attorneys' fees preferable in cases with a common-fund recovery because it: (i) parallels the use of percentage-based contingency fee contracts, which are the norm in private litigation; (ii) aligns the lawyers' interests with those of the class in achieving the maximum possible recovery; and (iii) reduces the burden on the court by eliminating the detailed and time-consuming lodestar analysis. *See, e.g.*, *Apple*, 2021 WL 1022866, at *2; *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374-77 (N.D. Cal. 1989) (collecting authority and describing benefits of the percentage method over the lodestar method). The use of the percentage-of-recovery method also comports with the language of the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *see also Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney's fees are reasonable.").

**C.    A Fee of 18% of the Settlement Fund Is Reasonable Under Either the Percentage-of-Recovery Method or Lodestar Method**

Whether assessed under the prevailing percentage-of-recovery method or the lodestar method, the 18% fee request in this case—which represents *less than one half* of Lead Counsel's lodestar—is fair and reasonable.

**1.    Lead Counsel's 18% Fee Request Is Substantially Less Than the 25% "Benchmark Percentage" Commonly Approved in This Circuit**

The Ninth Circuit has established that, in common-fund cases such as this one, the "benchmark" percentage attorney fee award is 25% of the settlement fund. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("[I]n this circuit, the benchmark percentage is 25%."); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Fischel v. Equitable Life Assurance Soc'y of the United States*, 307 F.3d 997, 1006 (9th Cir. 2002) ("We have established a 25 percent 'benchmark' in percentage-of-the-fund cases[.]"). As a result, courts in this District have found 25% fee awards to be "presumptively reasonable." *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *4 (N.D. Cal. Aug. 17, 2018) ("[I]t is well established that 25% of a common fund is a presumptively reasonable amount of attorneys' fees.").

While the Ninth Circuit has counseled that courts should consider adjustments to the 25% benchmark where a fee "would yield windfall profits for class counsel in light of the hours spent on the case," *Bluetooth*, 654 F.3d at 942, no such concerns are present here. To start, the 18% fee requested is already well below the 25% benchmark and is thus presumptively reasonable. Indeed, the requested 18% fee represents a meaningful reduction from the benchmark or, in absolute figures, $735,000 below the amount that would be represented by a 25% fee. Moreover, as noted and discussed further below, the fact that the 18% fee results in a payment that is substantially *less* than the total lodestar value of Lead Counsel's time in this case eliminates any concern of "windfall profits" as articulated in *Bluetooth*.

A review of fee percentages awarded by courts in this Circuit shows that an 18% fee is on the lower end of percentage fees awarded in securities and other complex class actions with comparable recoveries and confirms that an 18% fee is more than reasonable here. *See, e.g.*, *In re Bofl Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at *3, *14 (S.D. Cal. Oct. 14, 2022) (awarding 25% of $14.1 million settlement); *Rodriquez v. Nike Retail Servs., Inc.*, 2022 WL 254349, at *6 (N.D. Cal. Jan. 27, 2022) (awarding 33% of $8.25 million settlement); *Vataj v. Johnson*, 2021 WL 5161927, at *10 (N.D. Cal. Nov. 5, 2021) (awarding 25% of $10 million settlement); *In re Banc of Cal. Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% of $19.75 million settlement); *Edenborough v. ADT, LLC*, 2019 WL 4164731, at *4 (N.D. Cal. July 22, 2019) (awarding 25% of $16 million settlement); *Sudunagunta v. Nantkwest, Inc.*, 2019 WL 2183451, at *5-6 (C.D. Cal. May 13, 2019) (awarding 25% of $12 million settlement); *Kmiec v. Powerwave Techs., Inc.*, 2016 WL 5938709, at *7 (C.D. Cal. July 11, 2016) (awarding 25% of $8.2 million settlement); *Roberti v. OSI Sys., Inc.*, 2015 WL 8329916, at *7 (C.D. Cal. Dec. 8, 2015) (awarding 20% of $15 million settlement); *Rieckborn v. Velti PLC*, 2015 WL 468329, at *21-22 (N.D. Cal. Feb. 3, 2015) (awarding 25% of $9.5 million partial settlement); *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *2, *4 (D. Nev. Oct. 19, 2012) (awarding 25% of $12.5 million settlement); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1175-76 (S.D. Cal. May 31, 2007) (awarding 25% of $10 million settlement).

Thus, Lead Counsel respectfully submits that its 18% fee request is reasonable in relation to fees awarded in these types of cases.

### 2. The Requested Fee Reflects a *Negative* Multiplier and Thus a Substantial Discount to Lead Counsel's Lodestar

To ensure the reasonableness of a fee awarded under the percentage-of-recovery method, courts in this Circuit may cross-check the proposed fee award against counsel's lodestar, although such a cross-check is not required. *See In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness."); *In re Extreme Networks, Inc. Secs. Litig.*, 2019 WL 3290770,

at *10 (N.D. Cal. July 22, 2019) (noting that "lodestar may provide a useful perspective on the reasonableness of a given percentage award"). Under the lodestar method, courts routinely award positive multipliers to account for the contingent nature or risk involved in a case and the quality of the attorneys' work. *See Vizcaino*, 290 F.3d at 1051 (noting "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases").

As detailed in the Joint Declaration, Lead Counsel exerted substantial effort in this Action over the past three years in the face of an aggressive and determined defense.[10] Through March 2, 2023, Lead Counsel have spent nearly 9,000 hours of attorney and other professional support staff time prosecuting the Action for the benefit of the Settlement Class. Joint Decl., ¶¶ 9, 93, 99.[11] Lead Counsel's lodestar, derived by multiplying the hours spent on the Action by each attorney and professional support staff employee by their current hourly rates, is $5,462,506.75. *See id.*[12]

The hourly rates utilized by Lead Counsel in calculating their lodestar range from: (i) $795 to $1,250 per hour for partners; (ii) $440 to $825 per hour for other attorneys; (iii) $300 to $600 per hour for in-house investigators; and (iv) $275 to $600 per hour for paralegals and other support staff. Joint Decl., ¶ 98 n9.[13] These hourly rates are within the range of reasonable rates for attorneys working on sophisticated class action litigation in this District. *See, e.g.*, *Hefler v. Wells Fargo &*

---

[10]    A breakdown of Lead Counsel's lodestar by task category is attached as Exhibit 6 to the Joint Declaration.

[11]    For purposes of this fee request, Lead Counsel have only included time through the execution of the Stipulation on March 2, 2023. Lead Counsel have spent an additional 195 hours in connection with this Action since that date. Lead Counsel will continue to perform legal work on behalf of the Settlement Class should the Court approve the Settlement. Additional resources will be expended assisting Settlement Class Members with their Claim Forms and related inquires and working with the Claims Administrator, A.B. Data, Ltd. ("A.B. Data") to ensure the smooth progression of claims processing and distribution of the Net Settlement Fund. No additional legal fees will be sought for this work.

[12]    It is well established and appropriate to calculate counsel's lodestar based on current, rather than historical rates, as a method of compensating for the delay in payment and the loss of interest on the funds. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Fischel*, 307 F.3d at 1010; *White v. Experian Info. Solutions, Inc.*, 2018 WL 1989514, at *15 (C.D. Cal. Apr. 6, 2018) ("Courts in this Circuit regularly apply current billing rates in evaluating fee requests in multi-year litigation to account for the delay in payment."), *aff'd in part, rev'd in part sub nom.*, *Radcliffe v. Hernandez*, 794 F. App'x 605 (9th Cir. 2019).

[13]    *See* KTMC Fee and Expense Decl., Ex. 1 and BLB&G Fee and Expense Decl., Ex. 1, attached as Exs. 5A and 5B to the Joint Declaration.

---

*Co.*, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (approving fee based on rates from $650 to $1,250 for partners or senior counsel and $400 to $650 for associates); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee following lodestar cross-check calculated using "billing rates ranging from $275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals").[14]

Accordingly, the requested fee of 18% of the Settlement Fund, which equates to $1,890,000 (before interest), represents a multiplier of approximately 0.35 on Lead Counsel's lodestar. In other words, the requested fee represents 35% of the lodestar value of the time that Lead Counsel dedicated to the Action or a discount of 65%. This "negative" or fractional multiplier is well below the range of multipliers—often between one and four—commonly awarded in comparable litigation. *See Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases.").

Courts repeatedly recognize that a percentage fee request that is less than counsel's lodestar provides strong confirmation of the reasonableness of the award. *See, e.g., Davis v. Yelp, Inc.*, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) ("[A] multiplier of less than one suggests that the negotiated fee award is reasonable."); *Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *10 (S.D. Cal. Nov. 30, 2021) (where 33% fee requested resulted in a fractional multiplier of 0.528, the court found that the "lodestar cross-check [] provides a strong indication of the reasonableness of Lead Counsel's requested percentage award"); *Amgen*, 2016 WL 10571773, at *9 ("[C]ourts have recognized that a percentage fee that falls below counsel's lodestar strongly supports the reasonableness of the award."); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515

---

[14] By way of comparison, one of the firms representing Defendants in the Action, Gibson, Dunn & Crutcher LLP, had their billing rates referenced in *Roma Landmark Theaters, LLC v. Cohen Exhibition Co. LLC*, 2021 WL 5174088, at *5-6 (Del. Ch. Nov. 8, 2021), where the court approved a partner's rate of $1,645 and cited recent decisions "finding partner rates ranging from $1,225 to $1,775 and associate rates of $695 to $1,120 to be reasonable." *See also* Summary of Sixth Monthly and Final Application of Gibson, Dunn & Crutcher LLP as Attorneys for the Debtors and Debtors-In-Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the Monthly Period From February 1, 2022 through March 3, 2022 and the Final Period from August 31, 2021 through March 3, 2022 at, *In re Sequential Brands Group, Inc.*, No. 21-11194 (JTD) (Bankr. Del. May 5, 2022), ECF No. 552 (reporting hourly rates ranging from $1,350 to $1,860 for partners and $960 to $1,050 for associates). These rates substantially exceed Lead Counsel's rates.

---

MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES

10

Case No. 3:20-cv-01260-SI

(S.D.N.Y. 2009) (finding "no real danger of overcompensation" given that the requested fee represented a discount to counsel's lodestar).

In sum, Lead Counsel's requested fee award is reasonable, justified, and well within the range of fees that courts in this Circuit regularly award in class actions, under either the percentage-of-recovery method or lodestar method. Moreover, as discussed below, each of the additional factors considered by courts in the Ninth Circuit when evaluating a request for attorneys' fees also weighs in favor of finding an 18% fee reasonable here.

**D.    Additional Factors Considered by Courts in the Ninth Circuit Support Approval of the Requested Fee**

Courts in this Circuit also consider the following factors when determining whether a fee is fair and reasonable: (1) results achieved; (2) risks of litigation; (3) skill required and quality of work; (4) contingent nature of the fee and financial burden carried by the plaintiffs; (5) awards made in similar cases; and (6) reaction of the class. *See Vizcaino*, 290 F.3d at 1048-50.[15] Each of these factors confirms the requested fee is fair and reasonable.

### 1.    The Result Achieved Supports the Fee Request

Courts consider the results achieved in assessing a fee request. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting "the most critical factor is the degree of success obtained"); *Vizcaino*, 290 F.3d at 1048 (noting "[e]xceptional results are a relevant circumstance" in awarding attorneys' fees). Here, at the time of settlement, all of Lead Plaintiffs' claims had been dismissed with prejudice. Lead Plaintiffs' ability to recover anything for the Settlement Class—was entirely dependent on the pending appeal. Under these challenging circumstances, Lead Counsel were able to secure a $10.5 million recovery for the Settlement Class. Lead Counsel respectfully submit that this is a favorable result achieved through their dedication to prosecuting the Settlement Class's claims.

---

[15]    "The relative degree of importance to be attached to any particular factor will depend upon . . . the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Atlas v. Accredited Home Lenders Holding Co.*, 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009) (alteration in original).

In terms of size, the $10.5 million Settlement exceeds the median securities class action settlement in the Ninth Circuit between 2013 and 2022—i.e., $7.6 million.[16] In terms of damages, the Settlement represents a small portion of the maximum theoretically available damages range estimated by Lead Plaintiffs' damages expert (i.e., $1.3 billion to $1.9 billion). Joint Decl., ¶ 70. However, this damages range assumes that Lead Plaintiffs prevailed on appeal and then achieved complete success at trial and in the inevitable appeal—surviving *all* liability and damages challenges on remand. The damages range is further based on the *entire* abnormal price declines following *all three* alleged corrective disclosures at the high end of the estimate and the entire abnormal price decline following the first alleged corrective disclosure at the low end. Joint Decl., ¶ 70. A more realistic assessment of the Settlement's value in terms of damages should take into account the likelihood of success on the dismissed claims. For example, applying the Ninth Circuit's overall reversal rate in private civil appeals (12.8%)[17] to the estimated damages range produces a "risk-adjusted" potential damages range of approximately $166 million to $243 million. Joint Decl., ¶ 71. In this context, the Settlement represents a recovery of 4% to 6% of the "risk-adjusted" damages range—a range comparable to recovery percentages seen in other securities class actions. *See, e.g.*, *Vataj*, 2021 WL 5161927, at *6 (approving settlement recovering "slightly more than 2% of [] estimated damages"); *Extreme Networks*, 2019 WL 3290770, at *9 (approving settlement representing between 5% and 9.5% of "maximum potential damages"); *Int'l Game Tech.*, 2012 WL 5199742, at *3 (approving settlement recovering approximately 3.5% of maximum damages). Accordingly, Lead Plaintiffs and Lead Counsel believe this certain, near-term recovery for the Settlement Class is fair, reasonable, and adequate under the circumstances, and in the Settlement Class's best interest.

---

[16] *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2022 Review and Analysis*, Cornerstone Research, at 19 (2022), https://www.cornerstone.com/insights/reports/securities-class-action-settlements-2022-review-and-analysis/.

[17] *See* U.S. Courts of Appeals—Decisions in Cases Terminated on the Merits, by Circuit and Nature of Proceeding, During the 12-Month Period Ending June 30, 2022, Table B-5, U.S. Courts of Appeal Statistical Tables for The Federal Judiciary (June 30, 2022), https://www.uscourts.gov/statistics/table/b-5/statistical-tables-federal-judiciary/2022/06/30.

---

MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES          12          Case No. 3:20-cv-01260-SI

### 2.      The Substantial Risks of the Litigation Support the Fee Request

Another factor courts consider in determining an appropriate fee is the risks of litigation. *Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) (approving fee request and noting "[a]s to the second factor . . . the risks associated with this case were substantial given the challenges of obtaining class certification and establishing the falsity of the misrepresentations and loss causation").

From the outset, Lead Counsel faced significant risks in bringing this Action. As an initial matter, the PSLRA's heightened pleading standards presented significant risks. Since Congress passed the PSLRA in 1995, courts in this Circuit and across the country have increasingly dismissed cases at the pleading stage. *See Johnson v. US Auto Parts Network, Inc.*, 2008 WL 11343481, at *3 (C.D. Cal. Oct. 9, 2008) (noting that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA"). Here, the Court dismissed this Action at the pleading stage *twice*, finding that the facts alleged in the Complaint (and later, the Amended Complaint) did not meet the PSLRA's heightened pleading standards for alleging securities fraud.

As discussed in greater detail in the Joint Declaration and the Settlement Motion, there were many substantial challenges to succeeding in the litigation. Most notably, when the Settlement was reached, Lead Plaintiffs' appeal of the Court's dismissal of the Action was pending before the Ninth Circuit. Even if successful on appeal, Lead Plaintiffs would face an uphill battle on remand.

If the Action continued, Defendants would continue to assert substantial arguments to each of Lead Plaintiffs' claims. For example, Defendants would argue that Lead Plaintiffs failed to establish an actionable misstatement. Defendants would assert, as they did throughout the case, that they made no misrepresentations about HP's supplies business, the Company's shift from a push to a pull model, or the reliability of HP's Four Box Model, had assumed no duty to disclose certain facts that Lead Plaintiffs claimed were misleadingly omitted, and that any omissions did not render their statements materially misleading. Joint Decl., ¶¶ 54-58. Additionally, Defendants would argue that many of the statements at issue were either covered by the PSLRA's safe harbor provision for forward-looking statements and accompanied by cautionary language, or were inactionable opinion

statements. *Id.*, ¶ 59. Defendants also would argue that Lead Plaintiffs could not prove scienter, because Defendants did not know or have any reason to believe that HP had not switched to a pull model, the assumptions fed into the Four Box Model were flawed and the Company's projections based on such model unreliable, or that the supplies business had not stabilized. *Id.*, ¶¶ 60-63. Even if Lead Plaintiffs were able to establish falsity and scienter, they would still need to overcome Defendants' challenges to loss causation and damages. *Id.*, ¶¶ 64-68; *see Nguyen*, 2014 WL 1802293, at *1-2 (approving requested attorneys' fee and noting the particular challenges of proving and calculating damages).

The substantial risks faced in prosecuting the securities fraud claims at issue, which Lead Counsel did on a purely contingency fee basis without any payment for three years, further support the requested fee.

### 3. The Skill Required and the Quality of the Work Performed Supports the Fee Request

"The experience of counsel is also a factor in determining the appropriate fee award." *In re Heritage Bond Litig.*, 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005). Indeed, courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities." *Destefano*, 2016 WL 537946, at *17; *see also Vizcaino*, 290 F.3d at 1048. "This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Destefano*, 2016 WL 537946, at *17.

Here, Lead Counsel are among the most experienced and skilled practitioners in the securities litigation field, and both KTMC and BLB&G have a long and successful track record in securities cases throughout the country, including within this Circuit. *See* Ex. 5A-5 and 5B-5 to the Joint Declaration for Lead Counsel's resumes. That experience and skill was demonstrated by the effective prosecution of this Action, culminating in the Settlement.

The quality of opposing counsel is also important in evaluating the quality of services rendered by Lead Counsel. *See, e.g.*, *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013). Defendants in this case were represented by experienced counsel from the nationally prominent defense firms Gibson, Dunn & Crutcher LLP, Sidley Austin LLP, and Wilson Sonsini

Goodrich & Rosati. These firms spared no effort or cost in vigorously defending their clients. Notwithstanding this formidable opposition, Lead Counsel's vigorous and skilled advocacy helped secure the Settlement, even after the case had been dismissed twice. *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("[P]laintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly"). Accordingly, this factor supports Lead Counsel's fee request.

**4.      The Contingent Nature of the Fee Supports the Fee Request**

It is well-recognized that a premium is appropriate where attorney fees are contingent in nature, given the risk that counsel will receive no compensation or less compensation for their efforts. *See WPPSS*, 19 F.3d at 1299 ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."); *see also Apple*, 2021 WL 1022866, at *6 ("When counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award."). As noted above, the Supreme Court has emphasized that private securities actions, like this one, "provide a most effective weapon in the enforcement of securities laws and are a necessary supplement to [SEC] action." *Tellabs*, 551 U.S. at 318-19.

As courts recognize, there have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expending thousands of hours and millions of dollars, yet received no remuneration whatsoever despite their diligence and expertise. *See, e.g.*, *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 504 (2d Cir. 2010) (affirming grant of summary judgment in favor of defendant on loss-causation grounds after years of litigation); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants after eight years of litigation), *aff'd*, 627 F.3d 376 (9th Cir. 2010). Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1446, 1449 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for

judgment as a matter of law following plaintiffs' verdict), *aff'd on other grounds*, 688 F.3d 713 (9th Cir. 2012).

Here, for nearly three years, Lead Counsel committed significant resources, time, and money to prosecute this Action for the Settlement Class's benefit without any payment or any guarantee of a fee. Lead Counsel's fees and expenses in this Action have always been at risk—a risk that was amplified with the Court's dismissal of the Action *twice*—and contingent on the result achieved and on this Court's discretion in awarding fees and expenses. If Lead Counsel had been unsuccessful in their appeal to the Ninth Circuit, Lead Counsel would have received nothing for their years of diligent advocacy for the benefit of the Settlement Class. The significant contingency-fee risks support the requested fee.

### 5.    The Requested Fee Is Supported by Awards in Similar Cases

Lead Counsel's fee request is also supported by awards made in similar cases. As discussed above, Lead Counsel are seeking a fee that is below the Ninth Circuit's well-established benchmark fee award. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."). To avoid repetition, Lead Counsel refer the Court to *supra* Section II.C.1, which demonstrates that an 18% fee is reasonable when compared to the fee percentages regularly awarded in complex litigation. The resulting "negative" multiplier further underscores the reasonableness of Lead Counsel's fee request.

### 6.    The Settlement Class's Reaction to Date and the Approval of Lead Plaintiffs Support the Fee Request

The reaction of the class to a proposed settlement and fee request is also a relevant factor. *See Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009); *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal 2008). Here, A.B. Data began mailing Postcard Notices and Notice Packets to potential Settlement Class Members and Nominees on April 28, 2023. Ewashko Decl., ¶¶ 3-4. To date, 634,337 Postcard Notices and 4,172 Notice Packets have been mailed. *Id.*, ¶ 8. The notices inform recipients of Lead Counsel's intent to apply to the Court for an award of attorneys' fees in an amount not to exceed 18% of the Settlement Fund and payment of Litigation Expenses in an amount not to exceed $250,000, including up to $20,000 in

reimbursement for Lead Plaintiffs. *See* Ewashko Decl., Exs. A-C. The notices further advise Settlement Class Members of their right to object to these requests. While the time to object does not expire until July 7, 2023, to date, no objections have been received. Joint Decl., ¶ 78.

In addition, Lead Plaintiffs, who took an active role in the Action and closely supervised the work of Lead Counsel, support the approval of the requested fee based on the result obtained, the efforts of Lead Counsel, and the risks in the Action. *See* Cheng Decl., ¶¶ 5, 7; Tormey Decl., ¶¶ 5, 7. Lead Plaintiffs' endorsement of the fee request further supports its approval. *See, e.g.*, *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("Significantly, the Lead Plaintiffs, both of whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request.").

Moreover, while the decision on the appropriate fee is left to the sound discretion of the Court, the fact that the fee request is based on an *ex ante* fee agreement entered into at the outset of the Action provides support for the reasonableness of the request. Joint Decl., ¶ 9; *see also* Cheng Decl., ¶ 8. Courts have found that, in light of Congress's intent to empower lead plaintiffs under the PSLRA to select and supervise attorneys on behalf of the class, the fact that a fee request is based on a fee agreement entered into by a PSLRA lead plaintiff and its counsel at the outset of the litigation weighs in favor of the reasonableness of the fee. *See, e.g.*, *In re Cardinal Health, Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 759 (S.D. Ohio 2007) (strongly endorsing presumption of reasonableness for *ex-ante* fee agreements); *In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001) (*ex ante* fee agreements in securities class actions should be given "a presumption of reasonableness").

### III. LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

"Attorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Vincent v. Reser*, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013). In assessing whether counsel's expenses are compensable in a common fund case, courts look to whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See OmniVision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."); *Harris v.*

---

*Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (plaintiff may recover "those out-of-pocket expenses that would normally be charged to a fee-paying client").

The expenses sought by Lead Counsel are of the type that are charged to hourly paying clients and were required to prosecute the litigation. These expense items were incurred separately by Lead Counsel, and such charges are not duplicated in the firms' hourly rates. From the beginning of the Action, Lead Counsel were aware that they might not recover any of their expenses and would not recover anything unless and until the Action was successfully resolved. Lead Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate them for the lost use of the funds advanced to prosecute this Action. Thus, Lead Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action. Joint Decl., ¶ 109.

As discussed in the Joint Declaration, Lead Counsel have incurred a total of $135,598.87 in expenses in prosecuting the Action on behalf of the Settlement Class over the past three years. *Id.*, ¶¶ 110-16. These include expenses associated with, among other things, online research, experts/consultants, and mediation. *Id.* Courts routinely approve litigation expenses such as these. *See, e.g.*, *Destefano*, 2016 WL 537946, at *22 ("[C]ourts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation."); *Vincent*, 2013 WL 621865, at *5 (granting reimbursement of costs for "three experts and the mediator, photocopying and mailing expenses, travel expenses, and other reasonable litigation related expenses").[18]

---

[18]    *See also, e.g.*, *Bofl Holding*, 2022 WL 9497235, at *3, *10 (awarding $1,258,225.85 in expenses from $14.1 million settlement); *Avila v. LifeLock Inc.*, 2020 WL 4362394, at *1-2 (D. Ariz. July 27, 2020) (awarding $350,000 in expenses from $20 million settlement); *Milbeck v. Truecar, Inc.*, No. 18-cv-02612-SVW-AGR, slip op. at 2-3 (C.D. Cal. Jan. 27, 2020), ECF No. 185 (awarding $424,910.42 in expenses from $28.25 million settlement); *Kenny v. Montage Tech. Grp. Ltd.*, No. 3:14-cv-00722-SI, slip op. at 1 (N.D. Cal. Dec. 15, 2017), ECF No. 149 (Illston, J.) (awarding $429,359.83 in expenses from $7.25 million settlement).

Of the total expenses, Lead Counsel incurred $41,655.00 (or approximately 31% of total expenses) on an expert in the areas of financial economics, loss causation, and damages. Joint Decl., ¶ 111. Lead Counsel consulted with this expert during various stages of the Action, e.g., in preparing the Complaint and Amended Complaint, during the Parties' settlement negotiations, and in developing the proposed Plan of Allocation. *Id.* Lead Counsel also incurred $60,501.72 (or approximately 45% of total expenses) for online factual and legal research and $9,797.50 (or approximately 7% of total expenses) for their share of the cost of retaining Mr. Melnick to assist in the Parties' settlement negotiations. *Id.*, ¶¶ 112-13 and Ex. 7. A breakdown by category of the Litigation Expenses incurred by Lead Counsel is set forth in Exhibit 7 to the Joint Declaration. All of these costs were essential for the successful resolution of the Action.

The notices informed Settlement Class Members that Lead Counsel intended to apply for the payment of litigation expenses in an amount not to exceed $250,000. Joint Decl., ¶ 74; Ewashko Decl., Exs. A-C. The total amount of expenses sought ($145,598.87), including $135,598.87 in expenses incurred by Lead Counsel and $10,000 in costs sought by Lead Plaintiff Iron Workers, is substantially less than the amount stated in the notices and, to date, there have been no objections. Accordingly, the requested Litigation Expenses are reasonable and appropriate.

## IV. LEAD PLAINTIFF IRON WORKER SHOULD BE AWARDED ITS REASONABLE COSTS UNDER 15 U.S.C. § 78u-4(a)(4)

As part of their request for Litigation Expenses, Lead Counsel also seek an award for one of the Lead Plaintiffs, Iron Workers, for costs incurred directly related to its representation of the Settlement Class. Lead Plaintiff Rhode Island is not seeking an award for its costs.

The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Moreover, courts in this Circuit have routinely granted such awards to plaintiffs. *See, e.g.*, *Bofl Holding*, 2022 WL 9497235, at *8, *11 (awarding $15,000 to institutional lead plaintiff); *In re Restoration Robotics, Inc. Sec. Litig.*, 2021 WL 4124089, at *1 (N.D. Cal. Sept. 9, 2021) (awarding $15,000 to lead plaintiff); *Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, at *12 (S.D. Cal. July 24, 2020) (awarding $10,569 and $60,000 to

institutional lead plaintiffs); *Kenny*, No. 3:14-cv-00722-SI, slip op. at 1, ECF No. 149 (awarding $10,000 to each lead plaintiff); *Immune Response*, 497 F. Supp. 2d at 1173 (approving $40,000 reimbursement to lead plaintiff).

As detailed in the declaration from Iron Worker's Fund Director (Exhibit 3 to the Joint Declaration), Iron Workers is seeking reimbursement for the value of the time its employees and fund counsel dedicated to the Action. *Id.*, ¶¶ 9-10. Here, both Lead Plaintiffs—the *only* movants at the lead plaintiff stage—have been fully committed to pursuing the Settlement Class's claims over the past three years. Lead Plaintiffs' efforts included ongoing communications with Lead Counsel, reviewing significant pleadings and briefs filed in the Action, and consulting with Lead Counsel during the Parties' settlement negotiations. Cheng Decl., ¶¶ 2, 5; Tormey Decl., ¶¶ 5, 10. As stated in the declaration submitted on behalf of Iron Workers and in support of its request for a PSLRA award, these efforts required Iron Workers' employees and fund counsel to dedicate substantial time to the Action. Tormey Decl., ¶¶ 5, 9-10. For its efforts on behalf of the Settlement Class, Lead Plaintiff Iron Workers seeks reimbursement of $10,000 for the time expended in connection with the Action by its employees, including its former Fund Director Sean Boyle, and fund counsel who collectively devoted dozens of hours to the Action, including time communicating with Lead Counsel and reviewing pleadings and motion papers. *Id.*, ¶¶ 9-10.[19]

The Notice advises Settlement Class Members that Lead Plaintiffs may seek reimbursement of their reasonable costs in an aggregate amount not to exceed $20,000. To date, there have been no objections to this request. Joint Decl., ¶ 116. For the foregoing reasons, the amount sought here is reasonable and justified under the PSLRA, and should be granted.

## V.    CONCLUSION

For the reasons stated herein and in the Joint Declaration, Lead Counsel respectfully request the Court award attorneys' fees in the amount of 18% of the Settlement Fund, approve payment of

---

[19]    Based on the amount of time dedicated to the Action by Iron Workers' staff and counsel, the requested $10,000 award represents a reasonable rate of $200 or less for the value of 50 or more hours dedicated by those employees and attorneys.

MOTION FOR ATTORNEYS' FEES AND                          20                          Case No. 3:20-cv-01260-SI
LITIGATION EXPENSES

Lead Counsel's Litigation Expenses in the amount of $135,598.87, and approve reimbursement to Lead Plaintiff Iron Workers in the amount of $10,000.

Dated:  June 23, 2023

Respectfully Submitted,

**KESSLER TOPAZ MELTZER & CHECK, LLP**

*/s/ Jennifer L. Joost*
Jennifer L. Joost (Bar No. 296164)[20]
(jjoost@ktmc.com)
Stacey M. Kaplan (Bar No. 241989)
(skaplan@ktmc.com)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000

-and-

Gregory M. Castaldo (admitted *pro hac vice*)
(gcastaldo@ktmc.com)
280 King of Prussia Rd.
Radnor, PA 19087
Telephone: (610) 667-7706

*Counsel for Lead Plaintiff the State of Rhode Island, Office of the General Treasurer, on behalf of the Employees' Retirement System of Rhode Island and Co-Lead Counsel for the Settlement Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Jeremy P. Robinson*
John J. Rizio-Hamilton (admitted *pro hac vice*)
(johnr@blbglaw.com)
Jeremy P. Robinson (admitted *pro hac vice*)
(jeremy@blbglaw.com)
Alexander T. Payne (admitted *pro hac vice*)
(alex.payne@blbglaw.com)
Benjamin W. Horowitz (admitted *pro hac vice*)
(will.horowitz@blbglaw.com)
1251 Avenue of the Americas

---

[20] In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that concurrence in the filing of this document has been obtained from the signatories.

| MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES | 21 | Case No. 3:20-cv-01260-SI |

New York, NY 10020
Telephone: (215) 554-1400

-and-

Jonathan D. Uslaner (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470

*Counsel for Lead Plaintiff Iron Workers Local
580 Joint Funds and Co-Lead Counsel for the
Settlement Class*