**Pages 1 - 10**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Susan Illston, Judge

IN RE:  HP INC. SECURITIES )
LITIGATION, ) **NO. C 20-01260 SI**
_____ )
San Francisco, California
Friday, July 28, 2023

**<u>TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS</u>**

**<u>APPEARANCES</u>**:  (via videoconference)

For Plaintiffs:

> KESSLER TOPAZ MELTZER & CHECK LLP
> One Sansome Street - Suite 1850
> San Francisco, California  94104
> BY:  **JENNIFER L. JOOST, ATTORNEY AT LAW**

> KESSLER TOPAZ MELTZER & CHECK LLP
> 280 King of Prussia Road
> Radnor, Pennsylvania  19087
> BY:  **JENNIFER L. ENCK, ATTORNEY AT LAW**

> BERNSTEIN LITOWITZ BERGER GROSSMANN LLP
> 1251 Avenue of the Americas - 44th Floor
> New York, New York  10020
> BY:  **JEREMY P. ROBINSON, ATTORNEY AT LAW**

For Defendant:

> GIBSON, DUNN & CRUTCHER LLP
> 555 Mission Street - Suite 3000
> San Francisco, California  94105
> BY:  **BRIAN M. LUTZ, ATTORNEY AT LAW**

> GIBSON, DUNN & CRUTCHER LLP
> 1050 Connecticut Avenue, NW
> Washington, D.C.  20036
> BY:  **LISSA M. PERCOPO, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

REPORTED BY:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter

**APPEARANCES:**   (continued, via videoconference)

For Defendant Catherine A. Lesjak:

                            WILSON SONSINI GOODRICH & ROSATI
                            650 Page Mill Road
                            Palo Alto, California  94304
                    BY:   **KATHERINE L. HENDERSON, ATTORNEY AT LAW**

**Friday - July 28, 2023**                                    **10:15 a.m.**

                          **P R O C E E D I N G S**

                              **---oOo---**

        **THE CLERK:**  Now calling civil matter 20-CV-1260, In Re: HP Incorporated Securities Litigation.

         Counsel, please state your appearances for the record starting with Plaintiff.

        **MS. ENCK:**  Good morning, Your Honor, this is Jennifer Enck from Kessler Topaz Meltzer & Check on behalf of lead Plaintiffs.

        **THE COURT:**  Good morning.

        **MS. ENCK:**  Good morning.

        **MS. JOOST:**  Good morning, Your Honor, Jennifer Joost also from Kessler Topaz and also representing lead Plaintiffs.

        **THE COURT:**  Good morning.

        **MR. ROBINSON:**  Good morning, Your Honor, Jeremy Robinson from the law firm of Bernstein Litowitz Berger & Grossmann, also colead for Plaintiffs.

        **THE COURT:**  Good morning.

        **MS. PERCOPO:**  Good morning, Your Honor, Lissa Percopo with Gibson Dunn on behalf of Defendants.

        **THE COURT:**  Good morning.

        **MR. LUTZ:**  Good morning, Your Honor, Brian Lutz, also from Gibson Dunn on behalf of the Defendants.

        **THE COURT:**  Good morning.

**MS. HENDERSON:**  Good morning, Your Honor, Katherine Henderson, Wilson Sonsini Goodrich & Rosati for Defendant Catherine Lesjak.

**THE COURT:**  Good morning.

Well, welcome to you all.  This is the hearing on final approval of the settlement of this matter, um, and motion for attorneys' fees.

I have a couple of questions that I would like you to help me with.  Nobody has -- nobody filed any objections by the July 7 deadline.  Have there been any objections since then?

**MS. ENCK:**  Your Honor, this is Jennifer Enck.  There have been no objections received.

**THE COURT:**  Okay.  In the motion for preliminary approval the claims administrator indicated that a million -- one million, 500,000 postcard notices would be sent.  And, in fact, about 634,000 were sent.  Why the difference?

**MS. ENCK:**  Again, Jennifer Enck.

So the difference is at the outset we asked all of the administrators that were going to put in bids for in action to come up with a proposed estimated class size.

We got four estimated class sizes that ranged from about 800,000 to 1.5 million.

And given that HP is a widely traded stock, we decided to go with the more conservative estimate, the 1.5 million.

They have reduced -- or they have gone back to their --

their proposed administrative cost estimate and because of the lower number of notices -- and, again, there probably will be a lower number of claims -- they are reducing their estimate to about 1.3 million.  So it's coming down about 400,000.

THE COURT:  Their estimate of -- pardon me -- how many class members there are?

MS. ENCK:  No.  Their cost estimate.  So they estimated the 1.7 million would be for the notice costs, and now they are estimating 1.3; but the class size -- the notice --

THE COURT:  I'm not sure I follow you.

MS. ENCK:  There were 665,000 notices that went out.

THE COURT:  Say that again.  I'm sorry.

MS. ENCK:  So in total there's about 665,000 notices that went out.

THE COURT:  I know that.  I just wonder how many potential class members there are.

MS. ENCK:  The 1.5 was just an estimate based on recent cases.  So that wasn't an exact number.

THE COURT:  And then what about the 1.3?

MS. ENCK:  Sorry.  The 1.3 was the estimated notice costs.

THE COURT:  Okay.  I'm not concerned right now about the costs.  I'm concerned right now about people getting notice, and so that's what I would like you to explain is

whether you think all the folks who needed to get notice got it.

MS. ENCK: I do. I do. At the outset, the 1.5 is just an estimate. A.B. Data, you know, they got the list from HP. They mailed to those potential settlement class members.

They mailed notice to all of their brokers and nominees that usually provide notice. And, you know, they fulfilled those requests.

So, yes, we are confident that this notice got to the people that it should go to.

We also published a summary notice in the Wall Street Journal and over PR Newswire.

So there were various ways that potential settlement class members could get the notice.

THE COURT: Okay. Does -- I am sounding ignorant here, but doesn't HP know how many shareholders it has?

MS. ENCK: The list they provide us are only their registered holders that purchase through the company.

So most people hold their shares in street name through brokers and other nominees, so that's how the majority of names and addresses come in.

THE COURT: I understand that but I mean, does -- does HP know how many shareholders it has even -- even so? I mean, do you -- can HP tell me the answer to that question?

MS. PERCOPO: The company would have records of shares

outstanding; but as far as the numbers of shareholders that are held in brokerage names --

THE COURT:  They don't know that really?

MS. PERCOPO:  That isn't something that we can provide.

THE COURT:  Okay.  Well, let me ask a different question.  It was anticipated that there would be a total of 375,000 claims.  And, in fact, there are 6,830.  Why do you think there's such a low number?

MS. ENCK:  As of yesterday that number went up to 7,146.  We still have a little over two weeks until the claims submission deadline on August 14th.

Most -- most of these cases, the large majority of claims will come in right before or at the deadline and this is especially true for institutional investors and third-party filers.  They usually wait until the deadline to submit their claims.

So we anticipate there's going to be a lot more claims that come in over the next two weeks.

THE COURT:  Okay.  And the plan of allocation would provide that after whatever fees you get and whatever administrative costs there are, the balance is allocated among the claimants; right?

MS. ENCK:  Correct, correct.  Pro rata based on their losses.

**THE COURT:** So, I mean, if we don't get many more claims, they could be getting huge amounts of money.

**MS. ENCK:** Well, actually I did -- I did the math, and right now I think our estimate in the notice was .0013 per share and now it's .18.

So they would be getting more -- and that's if everybody, all the shares claimed. So they most likely may be getting more than what's estimated in the notice, but we won't know that until we have all the claims.

**THE COURT:** Yeah. Well, I mean, that's a pretty big discrepancy. You said .001. Was that the estimate?

**MS. ENCK:** Yes, that was based on --

**THE COURT:** And .1 is the expectation. That's, like, a hundred times --

**MS. ENCK:** That's where we are right now with the 7,000 claims.

**THE COURT:** Okay. Do you have an estimate right now of what the average recovery would be?

Assume you get whatever you are asking me for, what would the average recovery be in your estimation?

**MS. ENCK:** Um, I mean, I don't know because I'm just not sure how many claims will come in by August 14th, so it would be a guess at this point.

**THE COURT:** All right. And you think a larger number are likely to come in than have already come in?

**MS. ENCK:** Correct.  Almost all of these cases, most of the claims will come in, you know, the day or two before or right at the deadline.

**THE COURT:** Okay.  You know, this is a case where I erroneously dismissed the case altogether at the beginning, and then it was -- that was reversed by the Court of Appeal; and then you came back and you settled.

So I'm not really quibbling with any of you about this settlement, but I don't understand quite how we can be where we are given our expectations.

So what I plan to do is kick this hearing over for four weeks, and we will come back and we will talk about all these same issues.

And, Ms. Enck, you can tell me what the number of total claims is and what the expected recovery would be and all of that more clearly then.  All right?

**MS. ENCK:** Okay, Your Honor.

**THE COURT:** Is there any -- is there any huge problem with doing that?

**MS. ENCK:** I don't have a problem, no, none here.

**THE COURT:** Oh, okay.  How about September 1 as a hearing?

**MS. ENCK:** That works for me.

**MS. PERCOPO:** Your Honor, no problem with the day.  I just want to note this case was not reversed on appeal.  It was

on appeal when the parties reached a settlement.

**THE COURT:**  Oh, okay.  Okay, thank you.  I had -- I had not realized that or I had been thinking something else.

In any event, as I say, I truly don't mean to be quibbling with any of you about the settlement or the fairness; but I'm just concerned about the disparity among the numbers that we had been talking about and that we see here.

So I just would like to know what the -- what the full -- full factual predicate will be when we make this final ruling.

So, all right.  So September 1 works for people.  Is that a Friday?  That would be at 10:00 o'clock.  And if we are allowed to do so by then, I would be happy to do it by video if that would be convenient for you.  All right.  Thank you very much.

**MS. ENCK:**  Thank you, Your Honor.

**THE CLERK:**  That concludes our civil law and motion calendar.

(Proceedings adjourned at 10:26 a.m.)

---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   August 8, 2023

_____

Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter