**KESSLER TOPAZ MELTZER**
**& CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
(jjoost@ktmc.com)
Stacey M. Kaplan (Bar No. 241989)
(skaplan@ktmc.com)
One Sansome Street, Suite 1850
San Francisco, CA  94104
Telephone: (415) 400-3000

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
John J. Rizio-Hamilton (admitted *pro hac vice*)
(johnr@blbglaw.com)
Jeremy P. Robinson (admitted *pro hac vice*)
(jeremy@blbglaw.com)
1251 Avenue of the Americas
New York, NY  10020
Telephone: (212) 554-1400

*Lead Counsel for Lead Plaintiffs and*
*the Settlement Class*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE HP INC. SECURITIES LITIGATION | Case No. 3:20-cv-01260-SI |
| | <u>CLASS ACTION</u> |
| | **SUPPLEMENTAL DECLARATION OF JACK EWASHKO REGARDING MAILING OF NOTICE AND CLAIMS RECEIVED** |
| | Judge:   Hon. Susan Illston<br>Date:   September 1, 2023<br>Time:   10:00 a.m. |

I, JACK EWASHKO, hereby declare under penalty of perjury as follows:

1.    I am a Client Services Director of A.B. Data, Ltd.'s Class Action Administration Company ("A.B. Data"), the Court-approved Claims Administrator for the Settlement of the above-captioned action ("Action"). The following statements are based on my personal knowledge and information provided by other A.B. Data employees working under my supervision, and if called upon, I could and would testify competently thereto.[1]

## MAILING OF NOTICE

2.    A.B. Data has mailed a total of 665,254 Postcard Notices and 4,172 long-form Notices to potential Settlement Class Members and nominees in this Action. The details concerning the methods and dates of providing notice are described in my previously filed declarations dated June 23, 2023 (ECF No. 132-4), and July 21, 2023 (ECF No. 134-1).[2]

3.    A.B. Data has every reason to believe that the notice program for the Settlement was successfully implemented and that all Settlement Class Members who could be reasonably identified have received notice. For example, all of the larger brokers and nominees who typically provide names and addresses of potential class members in securities class actions or who typically request bulk notices to mail to their customers did so in this case, and A.B. Data promptly fulfilled all such requests. Moreover, an analysis of the Claims received further confirms that Claims have been submitted for the majority of the estimated damaged HP shares. Specifically, the Claims received, as discussed below, represent approximately 72% of Lead Plaintiffs' damages expert's estimate of the total number of damaged HP shares, a number which was provided to me by Lead Counsel.

---

[1]    All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated March 2, 2023 (ECF No. 118-1) and the Declaration of Jack Ewashko Regarding (A) Dissemination of Postcard Notice and Notice Packet; (B) Publication of Summary Notice; (C) Establishment of Telephone Helpline and Settlement Website; and (D) Report on Requests for Exclusion Received to Date, dated June 23, 2023 (ECF No. 132-4).

[2]    A.B. Data has mailed an additional 203 Postcard Notices since July 21, 2023, in response to further requests received from brokers and nominees.

SUPPL. DECL. OF JACK EWASHKO RE                    1                    Case No. 3:20-cv-01260-SI
MAILING NOTICE & CLAIMS RECEIVED

4.      I understand that the Court has asked Lead Counsel to discuss the difference between the number of notices actually mailed (roughly 665,000) and A.B. Data's initial estimate that there might be as many as 1,500,000 Postcard Notices mailed. As discussed in my declaration dated March 3, 2023, submitted with Lead Plaintiffs' motion for preliminary approval of the Settlement, that number was only a "rough estimate." March 3, 2023 Ewashko Decl. (ECF No. 118-3), ¶ 17. As explained in my March 2023 declaration, because the large majority of potential class members for any securities class action are beneficial purchasers who hold their securities in "street name" (i.e., in the name of their broker or other nominee owner), even the corporate entities themselves often do not know the identity of the vast majority of their shareholders, or the number of unique shareholders. Further, because the identities (and numbers) of potential class members are not known in securities class actions, notice programs in these cases are designed to reach the maximum number of potential class members. This typically results in notices being mailed to a substantial number of individuals and entities who are not class members, such as nominees who are not beneficial owners or individuals and entities who only held, but did not purchase, the security during the class period. Thus, in estimating the potential size of the mailing for any securities case, A.B. Data utilizes historical settlement data from other securities class action settlements that A.B. Data has administered, particularly those settlements of similar size and/or involving companies with similar market capitalization and numbers of shareholders. Based on that information and the publicly available trading history of HP common stock during the Class Period, A.B. Data estimated that it would mail approximately 1,500,000 Postcard Notices in this Action and noted that "the actual number of potential Settlement Class Members identified during the notice campaign . . . may be higher or lower than the estimate[] provided herein." *Id*.

5.      In addition, because the estimated number of Postcard Notices to be mailed was intended to be used principally for estimating the total Notice and Administration Costs, as required under the Northern District of California's Procedural Guidance for Class Action Settlements, Lead Counsel requested that A.B. Data use an estimate towards the top of the potential range of estimated notices to be mailed, in order to be conservative in estimating potential Notice

and Administration Costs in their preliminary approval papers (i.e., to avoid underestimating those costs).

6. Now that the notice program for the Settlement is complete, it appears that the 1,500,000 estimate was, in reality, too high, as indicated by the roughly 665,000 Postcard Notices actually mailed. We do believe the notice program implemented in this Action—which is identical (or substantially similar) to notice programs implemented by A.B. Data in these types of actions—was successful and that notice was mailed to all potential Settlement Class Members who could be identified through reasonable effort.

**REPORT ON CLAIMS RECEIVED**

7. To be eligible for a payment from the Settlement, Settlement Class Members were required to submit a Claim postmarked, if mailed, or online via the Settlement website, by August 14, 2023. As of August 25, 2023, A.B. Data has received a total of 163,602 Claims. This Claim count may increase if A.B. Data receives additional timely Claims that were postmarked on or before August 14, 2023, but have not yet been received due to delays in mail delivery. In addition, the Claim count may increase if late Claims are received during the processing of timely submitted Claims and the acceptance of these Claims would not delay a future distribution. Lead Counsel have the discretion to accept late Claims for processing provided such acceptance does not delay the distribution of the Net Settlement Fund to the Settlement Class, *see* Preliminary Approval Order, ¶ 11, and the Court will ultimately determine whether to accept such Claims.

8. Based on A.B. Data's review to date, the Claims received represent approximately 564,884,297 shares of HP common stock that were damaged as a result of the alleged fraud (i.e., shares which calculate to a Recognized Claim under the Plan of Allocation and will be eligible for a payment from the Settlement proceeds).

9. The above data was obtained through A.B. Data's preliminary review of the Claims received, based on the information provided by Claimants with their Claims. The complete processing of these Claims will take additional months. This process will include steps to confirm the accuracy of the transactions claimed and a review of the Claims for deficiencies, such as missing or incomplete documentation, duplicate submissions, and claimed transactions that do not

balance (i.e., where the number of shares held at the beginning of the Class Period plus purchases/acquisitions during the relevant time period do not match the number of shares sold during the relevant time period plus the number of shares held at the end of the period). A.B. Data will also provide Claimants with an opportunity to correct any deficiencies in their Claims, will conduct thorough quality control and quality assurance processes, and will perform fraud prevention reviews as part of its normal claims processing procedures in order to ensure the validity and accuracy of all Claims.  As a result of these procedures, the number of damaged shares for the Claims received and ultimately determined to be eligible for a Settlement payment is subject to change, and may increase.

10.    The possible acceptance of additional timely Claims postmarked on or before the August 14, 2023 deadline, but not received until after August 25, 2023, or additional late-filed Claims may also increase the total number of damaged shares. As noted above, Lead Counsel may, in their discretion, accept for processing late Claims provided such acceptance does not delay the distribution of the Net Settlement Fund to the Settlement Class, and acceptance of any such late-filed Claims would be decided by the Court.

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed this 25th day of August 2023.

Jack Ewashko

SUPPL. DECL. OF JACK EWASHKO RE
MAILING NOTICE & CLAIMS RECEIVED

4

Case No. 3:20-cv-01260-SI