**KESSLER TOPAZ MELTZER**
   **& CHECK, LLP**
Jennifer L. Joost (Bar No. 296164)
(jjoost@ktmc.com)
Stacey M. Kaplan (Bar No. 241989)
(skaplan@ktmc.com)
One Sansome Street, Suite 1850
San Francisco, CA  94104
Telephone: (415) 400-3000

**BERNSTEIN LITOWITZ BERGER**
   **& GROSSMANN LLP**
John J. Rizio-Hamilton (admitted *pro hac vice*)
(johnr@blbglaw.com)
Jeremy P. Robinson (admitted *pro hac vice*)
(jeremy@blbglaw.com)
1251 Avenue of the Americas
New York, NY  10020
Telephone: (215) 554-1400

[Additional Counsel Appear on Signature Page]

*Lead Counsel for Lead Plaintiffs and
the Settlement Class*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE HP INC. SECURITIES LITIGATION | Case No. 3:20-cv-01260-SI |
| | <u>CLASS ACTION</u> |
| | **LEAD PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF DISTRIBUTION PLAN, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Judge:      Hon. Susan Illston<br>Courtroom: 1 – 17th Floor<br>Date:       April 4, 2025<br>Time:       10:00 a.m. |

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ...................................................................................................ii

I.      BACKGROUND ...................................................................................................... 2

II.     CLAIMS ADMINISTRATION................................................................................. 3

        A.      No Disputed Claims.......................................................................................5

        B.      Late Claims and Final Cut-Off Date...............................................................5

III.    MODIFICATIONS TO PLAN OF ALLOCATION ................................................... 6

IV.     FEES AND EXPENSES OF CLAIMS ADMINISTRATOR ....................................... 8

V.      DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND ................................. 9

        A.      Initial Distribution of the Net Settlement Fund ............................................. 9

        B.      Additional Distribution(s) of the Net Settlement Fund........................................ 10

VI.     RELEASE OF CLAIMS........................................................................................... 11

VII.    CONCLUSION........................................................................................................ 12

# TABLE OF AUTHORITIES

CASES                                                                                                    PAGE(S)

*In re Capstone Turbine Corp. Sec. Litig.*,
　2020 WL 7889062 (C.D. Cal. Aug. 26, 2020)........................................................................ 12

*DeSilvio v. Lion Biotechnologies, Inc.*,
　No. 17-cv-02086-SI (N.D. Cal. June 30, 2021), ECF No. 152 ...................................6, 11-12

*Davis v. Yelp, Inc.*,
　No. 3:18-cv-00400 (N.D. Cal. Aug. 29, 2023), ECF No. 216 ............................................... 11

*In re Dropbox, Inc. Sec. Litig.*,
　No. 5:19-cv-06348 (N.D. Cal. May 18, 2023), ECF No. 138................................................. 11

*Smith v. NetApp, Inc. et al.*
　No. 4:19-cv-04801 (N.D. Cal. Dec. 8, 2022), ECF No. 92 ...................................................... 7

*Sanders v. The RealReal, Inc.*,
　No. 5:19-cv-07737 (N.D. Cal. June 8, 2023), ECF No. 79..................................................... 11

## MOTION FOR APPROVAL OF DISTRIBUTION PLAN

**TO: THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that in accordance with Federal Rule of Civil Procedure 23(e), Court-appointed Lead Plaintiffs the State of Rhode Island, Office of the General Treasurer, on behalf of the Employees' Retirement System of Rhode Island, and Iron Workers Local 580 Joint Funds (together, "Lead Plaintiffs")[1] will and do hereby move this Court for entry of the accompanying [Proposed] Order Approving Distribution Plan ("Class Distribution Order") that will, among other things: (i) approve the Court-authorized Claims Administrator A.B. Data, Ltd.'s Class Action Administration Company's ("A.B. Data") administrative determinations accepting and rejecting the Claims submitted in connection with the Settlement reached in the above-captioned Action; (ii) direct the Initial Distribution of the Net Settlement Fund to Claimants whose Claims are accepted by A.B. Data as valid and approved by the Court ("Authorized Claimants"); (iii) direct that Initial Distribution checks state that the check must be cashed within 90 days after the issue date; (iv) direct that Authorized Claimants will forfeit all recovery from the Settlement if they fail to cash their distribution checks in a timely manner; (v) approve the recommended plan for any funds remaining after the Initial Distribution; (vi) approve payment of A.B. Data's fees and expenses incurred in connection with the administration of the Settlement and A.B. Data's estimated fees and expenses for the work to be performed in connection with the Initial Distribution of the Net Settlement Fund; and (vii) release claims related to the administration process.

Lead Plaintiffs settled the Action in exchange for a cash payment of $10,500,000 for the benefit of the Settlement Class, which was deposited into the Escrow Account and has been earning interest for the benefit of the Settlement Class. The Settlement was approved by the Court on September 6, 2023, following a rigorous notice program and without objection to any aspect of the Settlement by any class members. Following the Court's approval, Lead Plaintiffs and Lead

---

[1] Unless otherwise indicated in this Motion and the following Memorandum of Points and Authorities, all terms with initial capitalization shall have the meanings ascribed to them in the Ewashko Declaration (defined below) or in the Stipulation and Agreement of Settlement dated as of March 2, 2023 (ECF No. 118-1) ("Stipulation").

Counsel have overseen the Court-authorized claims administration process, in which A.B. Data carefully reviewed the Claims received and provided any Claimants with deficiencies in their Claims a chance to cure those defects. The Claims Administrator has completed processing the Claims received for the Settlement and, through this current Motion, Lead Plaintiffs seek the Court's approval to distribute the Net Settlement Fund to Settlement Class Members who submitted eligible Claims. This Motion is supported by the Memorandum of Points and Authorities below, the Declaration of Jack Ewashko ("Ewashko Declaration" or "Ewashko Decl."), submitted on behalf of A.B. Data, and exhibits, the previous filings and orders in this Action, and such other materials as the Court may consider.

There are no disputed Claims by any Settlement Class Member requiring Court review. Further, Lead Counsel have provided Defendants' Counsel advance notice of this Motion and Defendants do not oppose this Motion.[2] As such, the Motion is ripe for determination, subject to the Court's preference on whether to hold a hearing on this unopposed Motion.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the Court should enter the proposed Class Distribution Order, which will, among other things, approve the Claims Administrator's administrative determinations accepting and rejecting Claims submitted in connection with the Settlement, direct the Initial Distribution of the Net Settlement Fund to eligible Claimants, approve the recommended plan for any funds remaining after the Initial Distribution, and approve the Claims Administrator's fees and expenses.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    BACKGROUND**

On September 6, 2023, the Court entered the Judgment Approving Class Action Settlement (ECF No. 143) approving the $10.5 million Settlement of this Action as well as the Order Approving Plan of Allocation of Net Settlement Fund (ECF No. 141) approving the plan for allocating the Net Settlement Fund to the Settlement Class. The Settlement's "Effective Date"

---

[2] Pursuant to the Stipulation, Defendants have no role in or responsibility for the administration of the Settlement Fund or processing of Claims, including determinations as to the validity of Claims or the distribution of the Net Settlement Fund. *See* Stipulation ¶¶ 18, 22, 24; *see also* Initial Mailing Decl. Ex. B (Notice) ¶¶ 39, 85.

under paragraph 32 of the Stipulation has now occurred, and accordingly the Net Settlement Fund may now be distributed to Authorized Claimants. In accordance with paragraph 27 of the Stipulation, Lead Plaintiffs respectfully request that the Court enter the Class Distribution Order and approve the proposed Distribution Plan set forth in the Ewashko Declaration submitted herewith.

In accordance with the Court's Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 124) ("Preliminary Approval Order"), A.B. Data mailed the Postcard Notice and the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses ("Notice") and the Proof of Claim and Release Form ("Claim Form" and, collectively with the Notice, the "Notice Packet") to potential Settlement Class Members and Nominees. Ewashko Decl. ¶ 2. In total, A.B. Data mailed 665,051 Postcard Notices and 4,172 Notice Packets to potential Settlement Class Members and Nominees. *Id.* ¶ 4. A.B. Data also sent 39,628 emails to potential Settlement Class Members to whom a Postcard Notice was also sent. *Id.* The notices informed Settlement Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit a properly executed Claim postmarked (if mailed) or online no later than August 14, 2023. *Id.* ¶ 7.

## II.    CLAIMS ADMINISTRATION

As set forth in the Ewashko Declaration, through January 31, 2025, A.B. Data received and processed 244,834 Claims. Ewashko Decl. ¶ 7. All Claims received through January 31, 2025, have been fully processed in accordance with the Stipulation and the Court-approved Plan of Allocation included in the Notice (*see id.*), and A.B. Data has worked with Claimants to help them perfect their Claims in order to be eligible to receive a payment from the Settlement. *See id.* ¶¶ 19-32. Many of the Claims received were initially deficient or ineligible to participate in the Settlement for one or more reasons, including being incomplete, not signed, not properly documented, or otherwise deficient, which required substantial follow-up work by A.B. Data. *Id.* ¶¶ 19, 22.

MOTION FOR APPROVAL OF                     3                     CASE NO. 3:20-CV-01260-SI
DISTRIBUTION PLAN & MEMORANDUM

If A.B. Data determined a Claim to be defective or ineligible, A.B. Data sent a letter (if the Claimant or filer submitted a paper Claim or a Claim via the Settlement Website) or an email (if the Claimant or filer submitted an Electronic Claim) to the Claimant or filer, as applicable, describing the defect(s) or condition(s) of ineligibility in the Claim and the steps necessary to cure any curable defect(s) in the Claim ("Deficiency Notices"). *Id*. ¶¶ 20, 22. The Deficiency Notices advised the Claimant or filer that the appropriate information or documentary evidence to complete the Claim had to be sent within twenty (20) days from the date of the Deficiency Notice or A.B. Data would recommend the Claim for rejection to the extent the deficiency or condition of ineligibility was not cured. *Id*. ¶¶ 20, 23. Example Deficiency Notices are attached as Exhibits A, B, and C to the Ewashko Declaration.

Of the 244,834 Claims that are the subject of Lead Plaintiffs' Motion, A.B. Data has determined that 77,857 Claims are acceptable in whole or in part, and that 166,977 Claims should be rejected because they are ineligible for payment from the Net Settlement Fund. Ewashko Decl. ¶¶ 34-38. The Rejected Claims were found to be invalid for various reasons, including, for example, that the Claim did not result in a Recognized Claim pursuant to the Court-approved Plan of Allocation, the Claim was made by or on behalf of a person or entity who was not a Settlement Class Member, or the Claim was a duplicate or withdrawn. *Id*. ¶ 37.[3] The Claims recommended for acceptance include a total of approximately 675 million damaged shares of HP common stock, *see id*. ¶ 36, which represents approximately 86% of the total number of damaged shares as estimated by Lead Plaintiffs' damages expert—demonstrating that the notice and claims processing procedures here were highly successful. Lead Plaintiffs respectfully request that the Court approve A.B. Data's administrative determinations accepting and rejecting the Claims as set forth in the Ewashko Declaration.

[3] The majority of the Rejected Claims were made by persons or entities that were not Settlement Class Members or who did not possess a Recognized Claims under the Plan of Allocation. *See* Ewashko Decl. ¶ 37. Given the relative ease with which electronic Claims can be made given modern technology, one noticeable recent trend in these types of cases is that many claimants will submit a claim without carefully checking whether they are a class member or qualify for payment under the settlement, just to err on the side of caution. This trend likely contributed to the large number of Rejected Claims here. *Id*.

## A. No Disputed Claims

A.B. Data carefully reviewed Claimants' and filers' responses to the Deficiency Notices and worked with them to resolve deficiencies where possible. Ewashko Decl. ¶¶ 21, 26. Consistent with paragraph 25(e) of the Stipulation, the Deficiency Notices specifically advised the Claimant or filer of their right, within twenty (20) days after the mailing or emailing of the Deficiency Notice, to contest the rejection of their Claim and request Court review of A.B. Data's administrative determination of the Claim. *Id*. ¶¶ 20, 23, & Exhibits A and B.

With respect to the fully processed Claims, A.B. Data received five (5) requests for Court review of its administrative determinations. *Id*. ¶ 28. To resolve these disputes without necessitating the Court's intervention, A.B. Data contacted the Claimants requesting Court review and attempted to answer all questions, to explain A.B. Data's administrative determination with respect to their Claim, and to facilitate the submission of missing information or documentation where applicable. *Id.* As a result of these efforts, three (3) Claimants resolved their deficiencies and their Claims are recommended for approval, and two (2) Claimants withdrew their requests for Court review after receiving further explanation of the reasons for A.B. Data's determination. *Id*. Accordingly, there are no outstanding requests for Court review by any Claimants. *Id.*

## B. Late Claims and Final Cut-Off Date

The 244,834 Claims received through January 31, 2025 include 105,050 Claims that were postmarked or received after August 14, 2023, the Court-approved Claim submission deadline. *Id*. ¶¶ 29, 35. These late Claims have been fully processed, and 39,539 of them are, but for their late submission, otherwise eligible to participate in the Settlement. *Id*. Although these 39,539 Claims were late, they were received while the processing of timely Claims was ongoing. *Id*. Due to the amount of time needed to process the timely Claims received, the processing of these late Claims did not delay the completion of the administration process or the distribution of the Net Settlement Fund. *Id*. ¶ 29. The Court has discretion to accept Claims received after the Claim submission deadline. *See* Preliminary Approval Order ¶ 11; Notice ¶ 40. Lead Plaintiffs respectfully submit that, when the equities are balanced, it would be unfair to prevent an otherwise eligible Claim from participating in the distribution of the Net Settlement Fund solely because it

was received after the Court-approved Claim submission deadline if it were submitted while timely Claims were still being processed.

To facilitate the efficient distribution of the Net Settlement Fund, however, there must be a final cut-off date after which no other Claims may be accepted. Accordingly, Lead Plaintiffs respectfully request that the Court order that any *new* late Claims (and any requested adjustments to previously submitted Claims that would result in an increased Recognized Claim) received after January 31, 2025, shall be barred (*see also* Ewashko Decl. ¶ 41(f))—subject to the proviso that if Lead Counsel later determine that an additional distribution is not cost-effective (*see id.* ¶ 41(e)), then any post-January 31, 2025 Claimants may, at the discretion of Lead Counsel (and to the extent possible after paying remaining administrative fees and expenses owed), be paid on their new (or adjusted) Claims on a *pro rata* basis so as to bring them into parity with other Authorized Claimants who have cashed their distribution checks (*see id.* ¶ 30).

### III.   MODIFICATIONS TO PLAN OF ALLOCATION

In connection with this Motion to distribute the Net Settlement Fund to eligible Claimants, Lead Plaintiffs and Lead Counsel recommend the following two modifications to the Court-approved Plan of Allocation: (1) to permit payment of additional Claims that would receive payments between $5.00 and $10.00 and (2) to change the potential *cy pres* recipient for any residual funds, because the previously designated recipient has ceased operations.

The Plan of Allocation approved by the Court established a $10.00 minimum payment threshold for Claims. Notice ¶ 83. Lead Counsel and A.B. Data have analyzed the Claims received and have found that a substantial number of otherwise eligible Claims would be affected by this provision in the Action. Specifically, A.B. Data has determined, based on the expected amount available for distribution, that reducing the minimum payment threshold from $10.00 to $5.00 would allow an additional approximately 7,500 Authorized Claimants to be eligible for payment. Ewashko Decl. ¶ 39. These additional payable Claims would receive a total of about $52,000 (out of roughly $7.9 million in total available for distribution) and, therefore, would have only a negligible impact on the *pro rata* payment amounts received by all other Authorized Claimants. *Id.* Accordingly, Lead Plaintiffs and Lead Counsel recommend that the Court approve this change.

*See* Appendix A at Exhibit 1, Order Modifying and Approving Distribution Plan at 3, *DeSilvio v. Lion Biotechnologies, Inc.*, No. 17-cv-02086-SI (N.D. Cal. June 30, 2021), ECF No. 152 (approving similar reduction in minimum payment threshold from $10.00 to $5.00).

The Plan of Allocation approved by the Court in September 2023 designated the Investor Protection Trust ("IPT") as the potential *cy pres* recipient of any residual balance once further distributions to Authorized Claimants are no longer feasible. Notice ¶ 84. However, since that time, the IPT has ceased operations (this occurred in the Spring of 2024) and it is no longer accepting *cy pres* awards. Therefore, Lead Plaintiffs recommend that the Court designate another potential *cy pres* recipient. Specifically, Lead Plaintiffs recommend that the Court designate the Howard University School of Law Investor Justice and Education Clinic ("IJEC"). The IJEC is a law school clinic that provides law students with the opportunity to represent clients in securities cases against securities broker-dealers in FINRA arbitrations. The IJEC also provides investor education and outreach programs for underserved investing communities. *See* HOWARD UNIVERSITY, https://law.howard.edu/academics/clinical-law-center/investor-justice-and-education-clinic-ijec (last visited Feb. 5, 2025). Lead Plaintiffs believe the IJEC is an appropriate *cy pres* recipient because of the nature of the securities fraud claims at issue in this Action. At least one other court in this District has approved the IJEC as a *cy pres* recipient in a similar action. *See* Appendix A at Exhibit 2, Order Granting Plaintiff's Motion for Distribution of Class Action Settlement Funds at 2-3, *Smith v. NetApp, Inc.*, No. 4:19-cv-04801-JST (N.D. Cal. Dec. 8, 2022), ECF No. 92. The Parties have no connection to IJEC. To reiterate, at most only a small residual amount would be paid to IJEC, if and when further distributions to eligible Settlement Class Members are no longer cost-effective.

Accordingly, Lead Plaintiffs respectfully request that the Court modify the Plan of Allocation in these two minor respects. The proposed Class Distribution Order submitted with this Motion reflects these changes. As expressly indicated in the Notice, modifications to the Plan of Allocation such as these do not require further notice to the Settlement Class, other than by publication on the Settlement website. *See* Notice ¶ 86 ("The Court . . . may modify the Plan of Allocation without further notice to the Settlement Class. Any Orders regarding any modification

of the Plan of Allocation will be posted on the Settlement website, www.HPSecuritiesSettlement.com.").

## IV.    FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

The Court-authorized Claims Administrator for the Settlement, A.B. Data, was responsible for, among other things, disseminating notice of the Settlement to the Settlement Class, creating and maintaining a website and toll-free telephone helpline, and processing Claims received for the Settlement. Ewashko Decl. ¶ 2. A.B. Data is also responsible for allocating and distributing the Net Settlement Fund to Authorized Claimants. *Id*. ¶ 40. Consistent with the Stipulation, AB Data provided notice to over 665,000 potential Settlement Class Members and received and processed over 244,000 Claims. The Stipulation authorizes the payment of

> up to $1,000,000 for Notice and Administration Costs actually incurred and paid or payable . . . . Notice and Administration Costs shall include, without limitation, the actual costs of printing and mailing the Postcard Notice, developing the Settlement Website and posting the Notice and Claim Form, publishing the Summary Notice, reimbursements to nominee owners for searching and providing the names/addresses of prospective Settlement Class Members for noticing or forwarding the Postcard Notice directly to their beneficial owners, the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and administering the Settlement (including processing the submitted Claims) . . . .

Stipulation ¶ 14; *see also* Preliminary Approval Order ¶ 22. A.B. Data's fees and expenses for its work performed through January 31, 2025, are $864,730.46. Ewashko Decl. ¶ 40. A.B. Data's estimated fees and expenses for the work to be performed in connection with the Initial Distribution of the Next Settlement Fund are $26,622.56. *Id*.[4] Therefore, A.B. Data's total fees and expenses are $891,353.02. This amount is substantially below the amount of administrative fees and expenses that were estimated at the outset of the process. *See* ECF No. 118 at 23.

To date, A.B. Data has received payment in the amount of $755,357.48 for its fees and expenses. Ewashko Decl. ¶ 40. Accordingly, there is an outstanding balance of $135,995.54 payable to A.B. Data, which amount includes the estimated fees and expenses to be incurred by A.B. Data in connection with the Initial Distribution. *Id*. Lead Counsel have reviewed A.B. Data's

---

[4] Should the estimate of fees and expenses to conduct the Initial Distribution exceed the actual cost, the excess will be returned to the Net Settlement Fund and will be available for subsequent distribution to Authorized Claimants. *Id*.

invoices and respectfully request on behalf of Lead Plaintiffs that the Court approve all of A.B. Data's fees and expenses.

## V.    DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

### A.    Initial Distribution of the Net Settlement Fund

Under the proposed Distribution Plan, A.B. Data will distribute 95% of the Net Settlement Fund after deducting (i) all payments previously allowed, (ii) payments approved by the Court on this Motion, and (iii) any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees (i.e., the Initial Distribution). *See* Ewashko Decl. ¶ 41(a). In the Initial Distribution, A.B. Data will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now. *Id*. ¶ 41(a)(1). A.B. Data will first determine each Authorized Claimant's *pro rata* share of the total Net Settlement Fund based on the Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. *Id*. A.B. Data will eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share calculates to less than $5.00, as these Claimants will not receive any payment from the Net Settlement Fund and will be so notified by A.B. Data. *Id*. ¶ 41(a)(2). A.B. Data will then recalculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $5.00 or more based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants who would have received $5.00 or more. *Id*. ¶ 41(a)(3). This *pro rata* share is the Authorized Claimant's Distribution Amount. *Id*. Authorized Claimants whose Distribution Amount calculates to less than $200.00 will be paid their full Distribution Amount in the Initial Distribution ("Claims Paid in Full"). *Id*. ¶ 41(a)(4). These Authorized Claimants will receive no additional funds in subsequent distributions. *Id*. After deducting the payments to the Claims Paid in Full, 95% of the remaining balance of the Net Settlement Fund will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $200.00 or more. *Id*. ¶ 41(a)(5). The remaining 5% of the Net Settlement Fund will be held in reserve (the "Reserve") to address any tax liability and claims administration-related contingencies that may arise following the Initial Distribution. *Id*. To the extent the Reserve is not depleted, the remainder will be distributed in the Second Distribution. *Id*.

To encourage Authorized Claimants to cash their checks promptly, Lead Plaintiffs propose that all Initial Distribution checks bear the notation, "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY DATE [90 DAYS AFTER ISSUE DATE]." *Id*. ¶ 41(b). Authorized Claimants who do not cash their checks within the time allotted or on the conditions stated in paragraph 41(b) of the Ewashko Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to these stale-dated checks will be available to be redistributed to other Authorized Claimants in a subsequent distribution, as described below. *Id*. ¶ 41(c).

**B.       Additional Distribution(s) of the Net Settlement Fund**

After A.B. Data has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, but not earlier than seven (7) months after the Initial Distribution, if sufficient funds remain in the Net Settlement Fund as a result of uncashed or returned checks and the Reserve, A.B. Data will, after consulting with Lead Counsel, conduct a second distribution of the Net Settlement Fund ("Second Distribution"). *Id.* ¶ 41(d). In the Second Distribution, any amount remaining in the Net Settlement Fund, after deducting any unpaid administrative fees and expenses incurred, will be distributed to all Authorized Claimants (other than Claims Paid In Full) who cashed their Initial Distribution checks and would receive at least $5.00 from the Second Distribution based on their *pro rata* share of the remaining funds. *Id*. If any funds remain in the Net Settlement Fund after the Second Distribution, and if cost-effective, subsequent distributions will take place at six-month intervals. *Id*. When Lead Counsel, in consultation with A.B. Data, determine that a further distribution is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after January 31, 2025, A.B. Data will process the Claims. *Id*. ¶ 41(e). Any of the Claims received after January 31, 2025, that are otherwise valid, as well as any earlier received Claims for which an upward adjustment was received after January 31, 2025, may be paid in accordance with paragraph 41(f) of the Ewashko Declaration. *Id*. ¶ 41(e). As discussed above, if any funds remain in the Net Settlement Fund after payment of these Claims and any unpaid administrative fees and expenses, Lead Counsel propose

that any remaining residual funds be contributed to Howard University School of Law Investor Justice and Education Clinic.

## VI.    RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to (i) bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and (ii) provide that all persons involved in any aspect of Claims processing, or who are involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from all claims arising out of that involvement. *See* Stipulation ¶ 29. Accordingly, Lead Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from all claims arising out of that involvement, and bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to Authorized Claimants.

Courts in this District, including this Court, have repeatedly approved similar releases in connection with the distribution of settlement proceeds. *See, e.g.*, Appendix A, Exhibit 3, Class Distribution Order, *Davis v. Yelp, Inc.*, No. 3:18-cv-00400-EMC (N.D. Cal. Aug. 29, 2023), ECF No. 216 (approving substantially similar language in the order authorizing distribution of settlement proceeds); *Id.* at Exhibit 4, Order Granting Plaintiffs' Motion for Distribution of Class Action Settlement Funds, *Sanders v. The RealReal, Inc.*, No. 5:19-cv-07737-EJD (N.D. Cal. June 8, 2023), ECF No. 79 (same); *Id.* at Exhibit 5, Order Granting Plaintiffs' Motion for Authorization to Distribute Net Settlement Fund, *In re Dropbox, Inc. Sec. Litig.*, No. 5:19-cv-06348-BLF (N.D. Cal. May 18, 2023), ECF No. 138 (same); *Id.* at Exhibit 1, Order Modifying and Approving

Distribution Plan, *DeSilvio v. Lion Biotechnologies, Inc.*, No. 17-cv-02086-SI (N.D. Cal. June 30, 2021), ECF No. 152 (same); *In re Capstone Turbine Corp. Sec. Litig.*, 2020 WL 7889062, at *2 (C.D. Cal. Aug. 26, 2020) (same).

## VII.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant their Unopposed Motion for Approval of Distribution Plan and enter the [Proposed] Order Approving Distribution Plan.

Dated:  February 28, 2025

Respectfully Submitted,

**KESSLER TOPAZ MELTZER
    & CHECK, LLP**

*/s/ Jennifer L. Joost*
Jennifer L. Joost (Bar No. 296164)[5]
(jjoost@ktmc.com)
Stacey M. Kaplan (Bar No. 241989)
(skaplan@ktmc.com)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000

-and-

Gregory M. Castaldo (admitted *pro hac vice*)
(gcastaldo@ktmc.com)
280 King of Prussia Rd.
Radnor, PA 19087
Telephone: (610) 667-7706

*Counsel for Lead Plaintiff the State of Rhode Island, Office of the General Treasurer, on behalf of the Employees' Retirement System of Rhode Island and Co-Lead Counsel for the Settlement Class*

**BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP**

*/s/ Jeremy P. Robinson*
John J. Rizio-Hamilton (admitted *pro hac vice*)
(johnr@blbglaw.com)

---

[5] In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from the signatories.

MOTION FOR APPROVAL OF
DISTRIBUTION PLAN & MEMORANDUM

12

CASE NO. 3:20-CV-01260-SI

Jeremy P. Robinson (admitted *pro hac vice*)
(jeremy@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (215) 554-1400

-and-

Jonathan D. Uslaner (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470

*Counsel for Lead Plaintiff Iron Workers Local 580 Joint Funds and Co-Lead Counsel for the Settlement Class*